# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 1:11-cr-00003-JAW |
| v. | ) | 1:16-cr-00167-JAW |
| | ) | |
| ROBERT GOGUEN | ) | |

## ORDER ON DEFENDANT'S MOTION TO RECUSE

I reject a defendant's motion to recuse because, having reviewed his reasons for my recusal, I find they are not supported by the record and do not present a sufficient basis to conclude that an objective, reasonable member of the public, fully informed of all the relevant facts, would fairly question my impartiality.

## I. BACKGROUND

### A. *United States v. Goguen*, 1:11-cr-00003-JAW: Failure to Register as a Sex Offender

On October 25, 1996, Robert Goguen was convicted of Sexual Assault in the Second Degree in the state of Connecticut, a violation of Connecticut General Statute § 53a.71(a)(3). *Prosecution Version* at 1 (ECF No. 42) (*Pros. Version*). Mr. Goguen was sentenced to ten years in prison, all but four years suspended, followed by five years of probation. *Id.* Mr. Goguen was released from custody for the 1996 conviction on April 1, 2000. *Id.* Mr. Goguen's sexual assault conviction required him to register as a sex offender, and Connecticut corrections officers advised him of this obligation before his release. *Id.*

On August 31, 2009, Mr. Goguen applied for and obtained a driver's license from the Maine Bureau of Motor Vehicles. *Id.* at 2–3. On July 29, 2010, Mr. Goguen

met with police officers and informed them that he had lived in Maine for the previous sixteen months. *Id.* at 3. Mr. Goguen failed to register as a sex offender in Maine during that time. *Id.* Accordingly, on January 12, 2011, a federal grand jury issued an indictment charging Mr. Goguen with one count of failing to register in violation of 18 U.S.C. § 2250. *Indictment* (ECF No. 1).

Mr. Goguen pleaded guilty on July 14, 2011, to one count of failing to register as a sex offender. *Minute Entry* (ECF No. 43). There was no plea agreement between the Government and Mr. Goguen. *Tr. of Proceedings, Rule 11 Proceedings* at 14:4-6 (ECF No. 156). On January 31, 2013, I sentenced Mr. Goguen to thirty-seven months of imprisonment, three years of supervised release, a $100.00 special assessment, and no fine.[1] *Am. J.* (ECF No. 90). Mr. Goguen appealed neither his conviction nor sentence.

### B.     Mr. Goguen's First Supervised Release Revocation

Mr. Goguen's term of supervised release commenced on May 11, 2013. *Pet. for Warrant or Summons for Offender under Supervision* at 1 (ECF No. 96). On August 16, 2013, the United States Probation Office filed a petition for warrant or summons for offender under supervision, alleging that Mr. Goguen had failed to comply with Special Condition #2, participation in sex offender treatment, by accessing adult pornography at law library computers at the Penobscot County Judicial Center. *Id.*

---

[1]     The original judgment stated that the sentence was sixteen months with a credit for time served from April 11, 2012. *J.* (ECF No. 80). After the imposition of judgment, Mr. Goguen moved to change the sentence to thirty-seven months so that he could get Bureau of Prisons credit for the entire term. *Def.'s Mot. to Amend Sentence* (ECF No. 88). The Government consented to the motion. *Id.* On January 30, 2013, I granted the motion to amend judgment. *Order Granting Mot. to Amend J.* (ECF No. 89). I issued an amended judgment reflecting the thirty-seven month sentence the next day. *Am. J.* (ECF No. 90).

at 1-2. On September 23, 2013, Mr. Goguen admitted violating the term of his supervised release that required him to participate in sex offender treatment, *id.* at 1–2; *Min. Entry* (ECF No. 112), and on the same day, I sentenced Mr. Goguen to five months of imprisonment and thirty-one months of supervised release. *Revocation J.* (ECF No. 113).

Mr. Goguen appealed this revocation judgment, *Notice of Appeal* (ECF No. 116), and moved me to appoint new counsel. *Pro Se Mot. to Appoint New Counsel* (ECF No. 117). He claimed that his waiver of rights at the revocation hearing was not knowing and voluntary and that I erred in imposing a sex offender treatment condition as one of his conditions of supervised release. *J. of Ct. of Appeals for the First Circuit* at 1 (ECF No. 142). On October 9, 2014, the Court of Appeals for the First Circuit affirmed the revocation judgment, concluding that I committed "no error, let alone plain error." *Id.*

## C.     Robert Goguen's Second Supervised Release Revocation

Mr. Goguen's supervised release recommenced on January 15, 2014. *Pet. for Warrant or Summons for Offender under Supervision* (ECF No. 144). On November 13, 2015, the Probation Office moved for me to issue a warrant for Mr. Goguen's arrest, alleging that on November 10, 2015, Mr. Goguen possessed a laptop computer containing child pornography in violation of his supervised release and 18 U.S.C. § 2252A(a)(5) and that by possessing images of child pornography, he failed to fully participate in sex offender treatment. *Id.* at 1-2. The Magistrate Judge authorized the issuance of the arrest warrant, *Order Granting Mot. for Warrant* (ECF No. 145),

and Mr. Goguen was arrested on November 13, 2015. *Min. Entry* (ECF No. 148). On November 17, 2015, I ordered him detained. *Order of Detention* (ECF No. 152).

On January 21, 2016, Mr. Goguen filed a motion raising a significant question as to whether the five-year statutory mandatory minimum applied to this revocation petition. *Def.'s Mem. in Opp'n to Gov't's Req. to Apply the Penalty Ranges under 18 U.S.C. § 3583(k)* (ECF No. 163) (*Def.'s Mandatory Minimum Mot.*). The issue was thoroughly briefed and on November 2, 2016, I ruled in favor of Mr. Goguen. *Order on Mem. in Opp'n to the Gov't's Req. to Apply the Penalty Ranges under 18 U.S.C. § 3583(k)* (ECF No. 170) (*Mandatory Minimum Order*).[2]

Following the November 2, 2016, order, Mr. Goguen filed a motion to suppress evidence on January 22, 2017, as discussed in the following subsection. On September 15, 2017, Mr. Goguen appeared before me and admitted counts one and two of his supervised release violations. *Min. Entry* (ECF No. 193). Despite his having admitted the two violations on September 15, 2017, for a number of reasons, I have not yet sentenced Mr. Goguen on these violations.

### D. *United States v. Goguen*, 1:16-cr-00167-JAW: Possession of Child Pornography

On December 14, 2016, a federal grand jury indicted Mr. Goguen for possession of child pornography depicting at least one prepubescent minor or minor under twelve

---

[2]      On June 26, 2019, the United States Supreme Court decided *United States v. Haymond*, 588 U.S. __, 139 S. Ct. 2369 (2019), and concluded that the five-year mandatory minimum provision of 18 U.S.C. § 3583(k) was unconstitutional because it violated a defendant's right to a jury trial. *Id.* at 2384-85.

years old, an alleged violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2252A(b)(2), and 2256(8)(A). *Indictment* (ECF No. 1).

On January 17, 2017, the Government filed a motion in limine seeking a ruling that it could admit into evidence at trial images of child erotica and files containing bestiality. *Gov't's Mot. in Limine to Admit Evid. of the Def.'s Possession of Child Erotica and Bestiality* (ECF No. 18). On July 5, 2017, I issued an order on the motion in limine, finding that evidence of child erotica on Mr. Goguen's laptop computer was admissible, deferring ruling on the admissibility of three photographs of child erotica, and concluding that evidence of images of bestiality were not admissible. *Order on Mot. in Limine to Admit Evid. of Possession of Files Containing Child Erotica & Bestiality* (ECF No. 54).

On January 22, 2017, Mr. Goguen filed a motion to suppress evidence. *Def.'s Mot. to Suppress Evid. Regarding New Criminal Charges and Supervised Release Revocation Hr'g* (ECF No. 174; ECF No. 21).[3] After holding an evidentiary hearing on March 31, 2017, *Min. Entry* (ECF No. 183; ECF No. 41), the Magistrate Judge issued a recommended decision on May 5, 2017, recommending that I deny the motion to suppress. *Recommended Decision on Mot. to Suppress* (ECF No. 186; ECF No. 44). On May 19, 2017, Mr. Goguen objected to the recommended decision. *Def.'s Obj. to Magistrate's Recommended Decision on Mot. to Suppress* (ECF No. 187; ECF No. 45). On June 19, 2017, I affirmed the recommended decision. *Order Affirming Recommended Decision of Magistrate Judge* (ECF No. 190; ECF No. 48).

---

[3]     When there are two ECF numbers listed in a citation, the first ECF number refers to docket number 1:11-cr-00003-JAW and the second to docket number 1:16-cr-00167-JAW.

On September 15, 2017, Mr. Goguen pleaded guilty to this charge. *Min. Entry* (ECF No. 64). Attorney Tzovarras, Mr. Goguen's former counsel, repeatedly moved to extend the time for filing objections to the presentence report and to continue the sentencing hearing. *Def.'s Mot. for Enlargement of Time for Initial Disclosure of Pre-Sentence Report* (ECF No. 68); *Def.'s Mot. for Extension of Time to File Objs. to PSR Before Initial Disclosure to Ct.* (ECF No. 70); *Def.'s Mot. to Continue Sentencing* (ECF No. 214; ECF No. 77); *Def.'s Mot. for Enlargement of Time to File Sentencing Mem.* (ECF No. 79); *Def.'s Mot. to Enlarge Time to File Sentencing Mem.* (ECF No. 84); *Def.'s Mot. for Enlargement of Time to Reply to Gov't's Resp. on Appl. of Mandatory Minimum* (ECF No. 88); *Def.'s Mot. to Continue Conference of Counsel* (ECF No. 262; ECF No. 94); *Def.'s Mot. for Enlargement of Time to File Sentencing Mem.* (ECF No. 101); *Def.'s Mot. to Enlarge Time and Accept Filing of Sentencing Mem. as Timely* (ECF No. 272; ECF No. 103); *Def.'s Mot. to Continue Sentencing Hr'g* (ECF No. 274; ECF No. 106).

With two exceptions, I granted every motion.[4] *Order Granting Mot. to Extend Time for Initial Disc. of Pre-Sentence Report* (ECF No. 69); *Order Granting Mot. to*

---

[4]     One exception was Mr. Goguen's motion to continue his sentencing hearing pending the resolution of his pending habeas corpus petition and at least until July 2018. *Def.'s Mot. to Continue Sentencing* (ECF No. 77). I denied the motion because I thought the imposition of a sentence for new criminal conduct and a new violation of his supervised release should not await the disposition of a petition for post-conviction review. *Order Denying Mot. to Continue Sentencing Hr'g* (ECF No. 87). As it turns out, I have still not sentenced Mr. Goguen for either the new criminal conduct or the violation of the terms of his supervised release. Now about two and one-half years after his guilty plea and admission of violation, I have not been able to sentence Mr. Goguen.
        I denied another motion for extension because I was concerned that Mr. Goguen was drawing me into a dispute between his former counsel and himself. *Order on Def.'s Mot. to Extend* at 2 (ECF No. 129). Also, I was concerned that the dispute between Mr. Goguen and his lawyers would be drawn out. *Id.* I was unclear why Mr. Goguen needed his attorneys' files in order to proceed with his motion. *Id.* at 2-3. Finally, I was concerned (and continue to be) about the delay in sentencing Mr. Goguen.

*Extend Time* (ECF No. 71); *Order Denying Mot. to Continue Sentencing Hr'g* (ECF No. 229; ECF No. 87); *Order Granting Mot. to Extend Time to File Sentencing Me.* (ECF No. 80); *Order Granting Mot. to Extend Time to File Sentencing Mem.* (ECF No. 82); *Order Granting Mot. to Extend Time to File Sentencing Mem.* (ECF No. 85); *Order Granting Mot. to Extend Time to Reply to Gov't's Resp. on Appl. of Mandatory Minimum* (ECF No. 89); *Order Granting Mot. to Continue Conf. of Counsel* (ECF No. 264; ECF No. 95); *Order Granting Mot to Continue Time to File Def.'s Sentencing Mem.* (ECF No. *Order Granting Mot. to Extend Time* (ECF No. 272; ECF No. 104); *Order Granting Mot. to Continue* (ECF No. 275; ECF No. 107). The result has been that even though Mr. Goguen pleaded guilty to new criminal conduct and admitted his supervised release violation on September 15, 2017, he has not yet been sentenced for either.

### E. Post-Plea Developments for both the Revocation and New Criminal Charge

At a January 3, 2019, conference of counsel, the Clerk's Office for the United States District Court for the District of Maine (Clerk's Office) scheduled Mr. Goguen's sentencing hearing for February 6, 2019, on both the new criminal charge and the petition for supervised release revocation. *Notice of Sentencing Hr'g* (ECF No. 268; ECF No. 99). The parties filed sentencing memoranda and it appeared that the two cases were proceeding to a sentencing hearing. *Gov't's Mem. in Aid of Sentencing* (ECF No. 270; ECF No. 100); *Def.'s Sentencing Mem.* (ECF No. 271; ECF No. 102).

But on February 5, 2019, Attorney Tzovarras, Mr. Goguen's then-defense counsel, moved for leave to withdraw as his attorney based on Mr. Goguen's request

that Attorney Tzovarras withdraw as his counsel and the likelihood that Attorney Tzovarras would be a potential witness in a contemplated motion to withdraw Mr. Goguen's guilty plea. *Def.'s Ex Parte Mot. for Leave to Withdraw as Counsel* (ECF No. 277; ECF No. 109). On February 7, 2019, I granted Attorney Tzovarras' motion to withdraw as counsel in both cases. *Order Granting Ex Parte Mot. for Leave to Withdraw as Counsel* (ECF No. 278; ECF No. 110). Given the need for new defense counsel, I also granted a motion to continue the sentencing hearing scheduled for February 6, 2019. *Order Granting Mot. to Continue* (ECF No. 275; ECF No. 107). The date changed to February 13, 2019. *Notice of Sentencing Hr'g* (ECF No. 268; ECF No. 108). Also on February 7, 2019, I appointed Attorney Ronald Bourget to represent Mr. Goguen in both cases. *CJA 20.*

On April 22, 2019, Attorney Bourget filed a motion to allow Mr. Goguen to withdraw his guilty plea. *Mot. to Withdraw Guilty Plea* (ECF No. 289; ECF No. 113).[5] On May 13, 2019, the Government filed its opposition to Mr. Goguen's motion. *Gov't Resp. to Def.'s Mot. to Withdraw Plea* (ECF No. 290; ECF No. 114). On May 28, 2019, Mr. Goguen filed his reply along with a motion for oral argument or hearing. *Def.'s Reply to Gov't's Resp. to Mot. to Withdraw Guilty Plea* (ECF No. 291; ECF No. 115); *Mot. for Oral Arg./Hr'g* (ECF No. 292; ECF No. 116). On September 6, 2019, I issued an order denying the motion to withdraw guilty plea. *Order on Def.'s Mot. to*

---

[5] The Motion to Withdraw Guilty Plea was originally only filed in 1:16-cr-00167-JAW. *Id.* Yet, the caption for the motion included both case numbers. *Id.* At my request, the Clerk's Office contacted Attorney Bourget, Mr. Goguen's current counsel, to clear up the discrepancy between the motion identifying that it was being filed under both 1:11-cr-00003-JAW as well as 1:16-cr-00167-JAW and the docket reflecting that it was only actually filed in 1:16-cr-00167-JAW. Attorney Bourget confirmed that he intended to file the motion in both cases and therefore, in accordance with his statement, the Clerk's Office filed the motion, the subsequent documents, and the order in both case dockets.

*Withdraw Guilty Plea* (ECF No. 293; ECF No. 120) (*Withdrawal Order*). After the September 6, 2019, Order, on September 10, 2019, the Clerk's Office set November 13, 2019 as the date for the sentencing hearing on both the new criminal charge and the revocation petition. *Notice of Sentencing Hr'g* (ECF No. 294; ECF No. 121).

### F. The Post-Conviction Petition

On November 28, 2017, Mr. Goguen filed a motion to vacate, set aside, or correct his sentence, *Mot. to Vacate, Set Aside or Correct Sentence*, *United States v. Goguen*, 1:11-cr-00003-JAW (ECF No. 194),[6] and on December 22, 2017, he filed a supplemental post-conviction motion. *Suppl. to Mot. to Vacate, Set Aside or Correct Sentence*, *United States v. Goguen*, 1:11-cr-00003-JAW (ECF No. 199). These motions were not filed using the proper form, so on January 25, 2018, the Magistrate Judge characterized them as being a motion to vacate, set aside or correct sentence. *Order*, *United States v. Goguen*, 1:11-cr-00003-JAW (ECF No. 198). On February 1, 2018, Mr. Goguen filed a motion to amend relief on the pending motion to vacate. *Mot. to Amend Relief*, *United States v. Goguen*, 1:11-cr-00003-JAW (ECF No. 204).

On March 1, 2018, Mr. Goguen moved to continue the sentencing hearing on the revocation petition and the new criminal case pending the resolution of the post-conviction petition. *Def.'s Mot. to Continue Sentencing* (ECF No. 214; ECF No. 77).

---

[6]     Though the docket reflects that this motion was not docketed until December 15, 2017, the prison mailbox rule controls the date of filing of incarcerated individuals' filings under 28 U.S.C.§ 2255. *See Morales-Rivera v. United States*, 184 F.3d 109, 109-10 (1st Cir. 1999) (holding that the prison mailbox rule applies to motions under 28 U.S.C. §§ 2255). Mr. Goguen's motion does not include a declaration regarding when it was mailed. However, Mr. Goguen dated his response on November 28, 2017, *id.* at 1, and I adopt that date as the date of filing. I apply this logic to further related filings by Mr. Goguen that do not include declarations regarding when they mailed for the purpose of this Order.

Arguing that the "outcome of the post-conviction petition could effect the pending sentencing hearings," Mr. Goguen urged me to delay his sentencings on both the new criminal charge and the revocation of supervised release until July 2018. *Id.* at 2-3. On April 26, 2018, I denied the motion to continue the sentencing hearing. *Order Den. Mot. to Continue Sentencing Hr'g* (ECF No. 229; ECF No. 87).

Meanwhile, Mr. Goguen's post-conviction petition continued to proceed, and on September 28, 2018, the Magistrate Judge issued a recommended decision, recommending that I deny the post-conviction petition. *Recommended Decision on 28 U.S.C. § 2255 Mot.*, *United States v. Goguen*, 1:11-cr-00003-JAW (ECF No. 253). On November 27, 2018, Mr. Goguen objected. *Obj. to the Magistrate's Recommendation*, *United States v. Goguen*, 1:11-cr-00003-JAW (ECF No. 261). On February 7, 2019, I affirmed the Magistrate Judge's recommended decision over his objection. *Order Affirming Recommended Decision on 28 U.S.C. § 2255 Mot.*, *United States v. Goguen*, 1:11-cr-00003-JAW (ECF No. 280). On February 11, 2019, Mr. Goguen appealed the denial of his § 2255 petition to the Court of Appeals for the First Circuit. *Notice of Appeal*, *United States v. Goguen*, 1:11-cr-00003-JAW (ECF No. 281). Mr. Goguen's appeal remains pending in the First Circuit.

### G.    The October 22, 2019, Hearing

As his sentencing date approached, on September 23, 2019, Mr. Goguen filed an ex parte motion requesting authorization to proceed pro se. *Ex Parte Filing Mot. Requesting Authorization to Proceed Pro Se* (ECF No. 296; ECF No. 123). I held a hearing on the motion on October 22, 2019, and, even though Attorney Bourget

continues to represent Mr. Goguen, I authorized Mr. Goguen to file a pro se motion to withdraw his guilty pleas. *Min. Entry* (ECF No. 300; ECF No. 125); *Oral Order Granting in Part Ex Parte Mot. to Appear Pro Se* (ECF No. 301; ECF No. 126). In consultation with Mr. Goguen, I set December 16, 2019, as the deadline for the pro se motion to withdraw the guilty pleas, a date Mr. Goguen said he could meet. *See Order on Def.'s Mot. to Extend* (ECF No. 305; ECF No. 129).

### H.    The Defendant's Motion to Recuse

Mr. Goguen applied for two extensions for the filing of his motion to withdraw his guilty pleas. He first applied for an extension on November 18, 2019. *Pro Se Mot. to Cont. Filing the Mot. to Withdraw the Guilty Pleas*, *United States v. Goguen*, 1:16-cr-00167-JAW (ECF No. 128). I denied the first motion. *Order on Def.'s Mot. to Extend* (ECF No. 305; ECF No. 129). Mr. Goguen filed a second motion to extend which I granted, fixing the due date at January 16, 2019. *Def.'s Second Mot. to Extend* (ECF No. 306; ECF No. 130); *Order on Def.'s Second Mot. to Extend* (ECF No, 308; ECF No. 131).

On January 10, 2020, Mr. Goguen filed a motion to withdraw his guilty pleas and added a motion for me to recuse myself from his cases. *Def.'s Pro Se Mot. to Withdraw the Guilty Plea(s) and Request for an Order to Disqualify Hon. John A. Woodcock, Jr.* (ECF No. 309; ECF No. 132) (*Def.'s Mot.*). On February 4, 2020, the Government responded to the motion to recuse only.[7] *Gov't's Obj. to Def.'s Mot. to*

---

[7]    Regarding the Government's response to the motion to withdraw guilty pleas, on January 23, 2020, the Government filed a motion asking me to authorize Attorney Tzovarras to voluntarily disclose information that relates to Mr. Goguen's claim of ineffective assistance of counsel. *Gov't's Mot. for Ct. Order Authorizing Disclosure of Confidential Communications* (ECF No. 313; ECF No. 136). Mr.

*Recuse* (ECF No. 317; ECF No. 139) (*Gov't's Opp'n*). On February 11, 2020, Mr. Goguen replied. *Def.'s Reply to the Gov't's Obj. to Def.'s Mot. to Recuse* (ECF No. 320; ECF No. 142) (*Def.'s Reply*).

Meanwhile, the sentencing hearing on both the revocation petition and the new criminal conduct, which had been scheduled for February 18, 2020, has now been continued while this motion for recusal and the motion to withdraw guilty pleas are resolved. *Notice of Cancelled Hr'g* (ECF No. 314; ECF No. 137).

## II.    THE PARTIES' POSITIONS

### A.    Robert Goguen's Position

In his first argument for recusal, Mr. Goguen points to language in an order I issued on the applicability of the five-year mandatory minimum term of incarceration under 18 U.S.C. § 3583(k). *Def.'s Mot.* at 27. Although he has not specified the actual order, I assume Mr. Goguen must be discussing my November 2, 2016, Order on Memorandum in Opposition to the Government's Request to Apply the Penalty Ranges Under 18 U.S.C. § 3583(k). *Mandatory Minimum Order.* Acknowledging that the order "at first glance appears to be one of equity," Mr. Goguen complains that I "enlightened the Government to an alternative means of redressing its, and the Court's, earlier mistakes concerning judgment of conviction." *Def.'s Mot.* at 27. He

Goguen's response to that motion was due on February 13, 2020. *See id.* By letter dated February 4, 2020, Mr. Goguen wrote Assistant United States Attorney Todd Lowell and indicated that he intended to object to the Government's January 23, 2020 motion. *Letter from Robert Goguen to Assistant U.S. Att'y Todd Lowell* at 2 (ECF No. 319; ECF No. 141). On February 12, 2020, Mr. Goguen replied to the January 23, 2020, Government motion. *Def.'s Obj. to Disclosure of Confidential Communications* (ECF No. 321; ECF No. 143). On February 4, 2020, I granted the Government a delay in responding to the motion to withdraw no later than twenty-one days after the Court rules on the Government's January 23, 2020, motion. *Order Granting Motion to Extend Time* (ECF No. 318; ECF No. 140).

notes that I wrote that I was "highly [conscious] of [his] past and recent history" and that he had had a "[demonstrably] difficult time obeying society's laws and judicially imposed supervised release conditions." *Id.* Mr. Goguen's main criticism is that I "explicitly encouraged the government to initiate new criminal charges when underscoring 'the restrictions on the imposed penalties described in this opinion would not apply' to new criminal charges." *Id.* (quoting *Mandatory Minimum Order* at 36). Noting that he was indicted the next month for possessing child pornography, Mr. Goguen says that I "[i]llustrat[ed] for the Government an alternative means to accomplish its objectives in this particular manner" and this established my "strong appearance of bias." *Id.*

Mr. Goguen then points to my affirmance of a report and recommended decision of the Magistrate Judge as evidence of my bias. *Id.* He alleges that seven of the Magistrate Judge's factual findings were erroneous and that I should not have affirmed them. *Id.* at 27-28. He also makes several other complaints about the Magistrate Judge's factual findings, which he says I should not have affirmed. *Id.* at 28.

Next, Mr. Goguen attacks my order denying his earlier motion to withdraw his guilty plea. *Id.* Mr. Goguen objects to my statement that the search of his computer was performed pursuant to an agreed-upon release condition. *Id.* Mr. Goguen maintains there was no such release condition and my statement to the contrary demonstrates my bias. *Id.* Mr. Goguen also disagrees with my characterization of a tip that led the Probation Office to search his computer. *Id.* Mr. Goguen further says

that my September 6, 2019, order denying his motion to withdraw his guilty plea erroneously states that his then-defense lawyer, Attorney Tzovarras, raised the fact that Mr. Goguen had talked to him about withdrawing as counsel and that Attorney Tzovarras wanted more time to discuss this issue with him. *Id.* Mr. Goguen insists that he did not request or suggest to Attorney Tzovarras that he withdraw as counsel and that when Attorney Tzovarras did so, Mr. Goguen was "utterly shocked." *Id.* Mr. Goguen also objects to my comment on October 22, 2019, that his requests for new counsel seem to be a pattern with him. *Id.*

Finally, Mr. Goguen says that my February 7, 2019, affirmance of the Magistrate Judge's recommended decision in which the Magistrate Judge recommended denial of his post-conviction relief petition is another example of my bias against him. *Id.* at 29.

## B.    The Government's Response

On February 4, 2020, the Government objected to Mr. Goguen's Motion to Recuse. *Gov't's Opp'n.* The Government writes that "there is no basis to conclude that the Court's impartiality might reasonably be questioned or that recusal is in order." *Id.* at 2. First, the Government states that "it is clear that the defendant's motion to recuse is not timely." *Id.* at 4. The Government points out that Mr. Goguen cites the November 2, 2016, ruling as the first basis of his motion to recuse and that the issues with the Magistrate Judge's recommended decision and my affirmance would have been apparent as of June 2017. *Id.* The Government says that the Court should dismiss Mr. Goguen's recusal motion to the extent it is based on claims that

he should have raised long ago because, in the Government's view, the delay reveals Mr. Goguen's "true and dilatory purpose." *Id.* at 5.

Regarding the charge that language in my November 2, 2016, ruling encouraged the Government to file a charge against Mr. Goguen, the Government observes that it is "independent of the court and makes [its] charging decisions based on evidence." *Id.* In fact, the Government says that it was contemplating a new criminal charge against Mr. Goguen before I issued the November 2, 2016, ruling. *Id.* at 5-6.

Turning to Mr. Goguen's allegation that the recommended decision contained inaccuracies, the Government maintains that each of the contested factual findings in the recommended decision was in fact accurate, with the possible exception of the fact that Probation Officer Moloney, not Probation Officer Oswald, may have first noticed the laptop. *Id.* at 6-8. Furthermore, the Government argues that Mr. Goguen has provided "no clear indication as to why any of these inaccuracies reveal any bias of the part of the court." *Id.* at 8.

Finally, the Government disputes that any of Mr. Goguen's remaining claims of bias should be proper grounds for recusal. *Id.*

### C. Robert Goguen's Reply

Mr. Goguen filed a reply on February 11, 2020. *Def.'s Reply.* Regarding the timeliness of his motion, Mr. Goguen asserts that the Government's position is based on "a selective reading of circuit law" and that "the Government misrepresents the facts cited as instances of bias and impropriety." *Id.* at 2. In his reply, he reiterates

his earlier claims of bias and says that his motion is not barred because the bases of his motion for recusal were cumulative. *Id.* at 3-4. Mr. Goguen insists that at the time of November 20, 2015, seizure and search of his computer, there was no search condition that allowed the seizure and search. *Id.* at 5. To his complaints of bias, Mr. Goguen now adds my Order Affirming Recommended Decision on 28 U.S.C. § 2255 (ECF No. 280), criticizing my conclusions that his assertions were highly inaccurate. *Id.* at 7-9. Also, Mr. Goguen asserts that my comments "implicitly rendered [him] less credible" compared to my praise of his defense lawyers, such as calling Attorney Haddow "one of the finest lawyers in all of Maine . . .." *Id.* at 7-9. Moreover, Mr. Goguen protests my refusal to accept his actual innocence claims concerning his 1996 conviction for sexual assault in the second degree and his SORNA violation. *Id.* at 9-11. Finally, Mr. Goguen quotes various First Circuit cases on recusal and asserts their holdings as facts compelling my recusal. *Id.* at 11-13.

## III. LEGAL STANDARDS

A United States judge is required to recuse "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a); *United States v. Reynolds*, 646 F.3d 63, 74 (1st Cir. 2011). The First Circuit has held that the standard for recusal under § 455(a) is "whether an objective, reasonable member of the public, fully informed of all the relevant facts, would fairly question the trial judge's impartiality." *In re United States*, 441 F.3d 44, 56-57 (1st Cir. 2006) (internal quotation marks omitted).

Recusal under 28 U.S.C. § 455(a)[8] is generally warranted only when the judge's alleged bias or prejudice can be traced to "a source outside the judicial proceeding at hand . . .."  *Liteky v. United States*, 510 U.S. 540, 545, 554-56 (1994); *see also In re United States*, 441 F.3d at 66-68.  The *Liteky* Court noted that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion . . . . and can only in the rarest circumstances evidence the degree of favoritism or antagonism required [for recusal] . . . when no extrajudicial source is involved."  *Liteky*, 510 U.S. at 555.  Though it is possible that a judge might develop and display such "deep-seated and unequivocal antagonism" toward a party that fair judgment would become "impossible" and recusal necessary, *Liteky*, 510 U.S. at 556, "a judge's rulings and statements in the course of proceedings before him or her rarely provide a basis for recusal under § 455(a)."  *In re United States*, 441 F.3d at 67.

Although the rule about judicial rulings not forming the basis for a recusal is strong, it is not absolute.  The First Circuit adopted the view that, even if a judge's alleged bias comes from events at trial, "judicially acquired information can form the basis of a judge's disqualification . . .."  *United States v. Chantal*, 902 F.2d 1018, 1022 (1st Cir. 1990) (quoting *Panzardi-Alvarez v. United States*, 879 F.2d 975, 983-84 (1st Cir. 1989)).  In the First Circuit, the standard for recusal is "whether the charge of lack of impartiality is grounded on facts that would create a reasonable doubt

---

[8]     There is a separate statutory provision on recusal, 28 U.S.C. § 144, that involves the filing of an affidavit by a party.  Mr. Goguen is not proceeding under § 144, only under 28 U.S.C. § 455.  *Def.'s Mot.* at 30 ("I request the Court, pursuant to 28 [U.S.C.] [§] 455, for an order disqualifying the Honorable John A. Woodcock, Jr. US District Judge of Maine, from hearing the above entitled cause and proceedings related to the entitled docket, on the ground that his personal prejudice and bias against me precludes me from obtaining a fair and impartial trial").

concerning the judge's impartiality, not in the mind of the judge himself or even necessary in the mind of the litigant filing the motion under 28 U.S.C. § 455, but rather in the mind of the reasonable [person] . . .." *Id.* at 1022 (quoting *Panzardi-Alvarez*, 879 F.2d at 983).

At the same time, the First Circuit has observed that "the defendant's claim and its implications cannot themselves alone suffice to require the judge's recusal, lest the law confer a veto power on the assignment of his trial judge to any heckling defendant who merely levels a charge that implicates a judge's defensive or vicariously defensive reaction." *In re Bulger*, 710 F.3d 42, 46-47 (1st Cir. 2013) (Souter, J.). Justice Souter went on to write for the First Circuit that "[t]he recusal standard must be more demanding because 'the disqualification decision must reflect *not only* the need to secure public confidence through proceedings that appear impartial, *but also* the need to prevent parties from too easily obtaining the disqualification of a judge, thereby potentially manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking." *Id.* at 47 (quoting *In re Allied-Signal, Inc.*, 891 F.2d 967, 970 (1st Cir. 1989)). Indeed, "[t]he trial judge has a duty not to recuse himself or herself if there is no objective basis for recusal." *In re United States*, 441 F.3d at 67.

## IV.  DISCUSSION

### A.  Favorable Rulings

I do not know what to make of Mr. Goguen's motion for me to recuse myself from his cases. In his motion, Mr. Goguen fails to mention the numerous rulings that

I have made in his favor during the extended course of the first and second criminal cases, but to place his allegations of bias into perspective, it is important to set forth the full context.

### 1. Initial Sentence: 1:11-cr-00003-JAW

On September 14, 2012, at the original sentencing hearing, I calculated Mr. Goguen's guideline sentence range at thirty-seven to forty-six months of incarceration, supervised release of at least two and no more than three years, a fine of $6,000 to $60,000, and a special assessment of $100. *Statement of Reasons*, Attach. 1, *Findings Affecting Sentencing* at 2 (ECF No. 81); *Tr. of Proceedings*, *Sentencing Proceedings* 22:25-23:13 (ECF No. 197). Attorney Haddow, Mr. Goguen's then-defense counsel, recommended that I sentence him at the bottom of the guideline range. *Id.* at 20:19-22. Despite the fact that Mr. Goguen received without objection an eight-level enhancement for the sexual touching of a seven-year-old girl, I accepted his lawyer's recommendation and sentenced him to the bottom of the guideline range. *Id.* at 32:25-38:12; *Am. J.* (ECF No. 90).

### 2. First Revocation Sentence: 1:11-cr-00003-JAW

At his first revocation hearing on September 23, 2013, Mr. Goguen faced a guideline sentence of five to eleven months. *Tr. of Proceedings*, *Final Revocation Hr'g* 7:22-8:5 (ECF No. 139). Again, despite the fact Mr. Goguen viewed pornography at the County Law Library while under supervised release, I agreed with the Probation Office's recommendation and sentenced him to five months incarceration, once again at the bottom of the guideline sentence range. *Id.* at 7:9-21, 20:14-16.

### 3. Second Revocation Mandatory Minimum Ruling: 1:11-cr-00003-JAW

When the Government brought the second petition to revoke Mr. Goguen's supervised release, it asserted that Mr. Goguen's new criminal conduct, the possession of child pornography, subjected him to a mandatory five-year period of incarceration under 18 U.S.C. § 3583(k). *Gov't's Resp. to Def.'s Mem. in Opp'n to Gov't's Req. to Apply Penalty Ranges Under 18 U.S.C. § 3583(k)* (ECF No. 164). Although the legal question was a close one, on November 2, 2016, I ruled in Mr. Goguen's favor and instead of facing a five-year mandatory minimum term of incarceration, he faced a maximum period of two years of incarceration. *Mandatory Minimum Order.*

### 4. Ruling on Motion in Limine: 1:16-cr-00167-JAW

On July 5, 2017, I issued an order on a motion in limine filed by the Government, finding that evidence of child erotica on Mr. Goguen's laptop computer was admissible, deferring ruling on the admissibility of three photographs of child erotica, and concluding that evidence of images of bestiality were not admissible. *Order on Mot. in Limine to Admit Evid. of Possession of Files Containing Child Erotica & Bestiality* (ECF No. 54). Although Mr. Goguen did not win every issue, my order handed him significant victories in keeping images of bestiality out of his trial and in deferring ruling on three images of child erotica.

### 5. Multiple Defense Counsel

As I will discuss later, I have assigned Mr. Goguen four different defense lawyers to represent him throughout these cases. *See, e.g.*, *Min. Entry*, *United States*

*v. Goguen*, 1:11-cr-00003-JAW (ECF No. 13); *Min. Entry, United States v. Goguen,* 1:11-cr-00003-JAW (ECF No. 101); *Def.'s Mot. for Extension of Time to File Mem. on Appl. Of Mandatory 5 Year Penalty for Supervised Release Revocation, United States v. Goguen*, 1:11-cr-00003-JAW (ECF No. 161); *Mot. to Withdraw Guilty Plea, United States v. Goguen*, 1:16-cr-00167-JAW (ECF No. 113). Although in other cases I have allowed lawyers to withdraw and appointed new ones, my appointment of four different lawyers for him is unusual solicitude in favor of Mr. Goguen.

### 6.     Allowing Pro Se Motions

Mr. Goguen is acting pro se in filing his motion to recuse and his motion to withdraw his guilty pleas. This is during the time that Attorney Bourget still represents him. For a number of reasons, I have been extremely reluctant to allow defendants who are represented by counsel to file their own motions with the Court. To my recollection, I have allowed pro se filings for a represented defendant in only one other case. I made a second exception for Mr. Goguen and allowed him to file motions directly with the Court. I did so because I thought Mr. Goguen would not be satisfied that I had heard and considered his views on issues of law affecting his case if he did not prepare and file his own motions.

### 7.     Granting Countless Motions to Continue

Federal Rule of Criminal Procedure 32(b)(1) requires a court to impose a sentence "without unnecessary delay." Mr. Goguen pleaded guilty to the new criminal charge and admitted the violations of his supervised release on September 15, 2017, *Min. Entry, United States v. Goguen*, 1:11-cr-00003-JAW (ECF No. 193);

*Min. Entry*, *United States v. Goguen*, 1:16-cr-00167-JAW (ECF No. 64), and he has still not been sentenced on either matter. I can recall no other case where I have allowed a defendant to control the court calendar as I have Mr. Goguen.

### 8. Summary

Because I have been so consistently solicitous of Mr. Goguen over the years his cases have been pending before me, I am baffled why he believes I have harbored a bias or prejudice against him that mandates my recusal.

### B. Timeliness

The Government has a point about the timeliness of Mr. Goguen's motion to recuse. *See Gov't's Opp'n* at 4-5. I first dealt with Mr. Goguen on April 12, 2011, when I held an ex parte hearing on a motion for subpoena at Government expense. *Min. Entry*, *United States v. Goguen*, 1:11-cr-00003-JAW (ECF No. 24). I have presided over his 2011 and his 2016 cases since then. As the Government notes, there is First Circuit authority that a person like Mr. Goguen cannot "manipulate the circumstances to his benefit" because the "potential waste of judicial resources alone requires that a motion for disqualification be timely filed." *Gov't's Opp'n* at 4 (quoting *In re United States*, 666 F.2d at 694). It is also notable that Mr. Goguen's first claim of bias did not occur until my ruling of November 2, 2016, meaning that having presided over Mr. Goguen's case for five years without bias, in Mr. Goguen's view, I became biased against him in the fall of 2016. Anyway, even though timeliness is an issue, I will respond to the contentions in Mr. Goguen's motion to recuse as if they were timely filed.

### C.    Specific Issues

#### 1.    The November 2, 2016, Order

##### a.    Robert Goguen's Past and Recent History

Mr. Goguen's first claim of bias arises from my November 2, 2016, Order that substantially favored him in which I refused to apply a five-year mandatory minimum term of incarceration to the pending petition for revocation of supervised release and instead ruled that his term of incarceration should be limited to two-years. It is hard to see how such a ruling suggests that I am biased against him.

Mr. Goguen takes umbrage at a sentence in the November 2, 2016, Order:

> To add to this point, the Court is highly conscious of Mr. Goguen's past and recent history. Mr. Goguen has had a demonstrably difficult time obeying society's laws and judicially-imposed supervised release conditions.

*Mandatory Minimum Order* at 32. But Mr. Goguen does not mention that immediately after this comment, I explain why I made it:

> The Court has discussed Mr. Goguen's 1996 sexual assault in Connecticut, when at the age of 20, he sexually assaulted an intoxicated sixteen-year-old victim who was passed out. This crime was one of eight crimes Mr. Goguen committed from age 18 through age 32. One of those convictions was in 2006 in the commonwealth of Massachusetts for failure to register as a sex offender.
>
> On January 12, 2011, Mr. Goguen was indicted federally for his failure to register as a sex offender when he came to Maine, and on September 14, 2012, he was sentenced to 37 months of incarceration with three years of supervised release to follow. Before the federal charge was initiated, Mr. Goguen had been arrested on July 29, 2010, on a state charge of unlawful sexual contact with a minor. In calculating Mr. Goguen's guideline sentence range, the Court imposed an eight-level enhancement under U.S.S.G. § 2A3.5(b)(1)(C) because Mr. Goguen had committed a sex offense against a minor while he was in failure-to-register status. The state charge was dismissed on July 10, 2012.

> Mr. Goguen was initially released from incarceration on May 11, 2013. On May 23, 2013, the Probation Office filed a consented-to modification of the terms of his supervised release because Mr. Goguen was found in possession of a computer with numerous pornographic images and videos. On May 28, 2013, [I] modified the terms of supervised release to require Mr. Goguen to comply with the requirements of the District's computer and internet monitoring program.
>
> On August 16, 2013, the Probation Office filed a petition for warrant for offender under supervision. This time the Probation Office alleged that Mr. Goguen accessed pornography on the law library computers at the Penobscot County Judicial Center. On September 23, 2013, Mr. Goguen admitted the violation, and the Court imposed a five-month sentence.
>
> On January 17, 2014, Mr. Goguen was released from incarceration and began his most recent term of supervised release. On November 13, 2015, the Probation Office brought another petition to revoke Mr. Goguen's supervised release. This time, the Probation Office alleged that Mr. Goguen had committed the offense of possession of child pornography and had possessed other types of pornography in violation of the terms of his sex offender treatment program. It is this petition that is currently pending before the Court.

*Id.* at 32-34 (internal citations omitted).

My recitation of Mr. Goguen's history was based strictly on the record before me. Mr. Goguen may not like his history and he is now separately attacking some of the underlying facts that, as of November 2016, appeared in the record. *See Def.'s Reply* at 9-11. I reject his claim that I am biased against him because I set forth what the record of his cases, as it stood then, revealed.

### b.  Criminal Prosecution

Mr. Goguen's second claim of bias comes in a sentence in this Order that states:

> This decision neither prevents the Government from initiating a new criminal charge against Mr. Goguen for this new conduct nor encourages the Government to do so.

*Id.* at 36. Mr. Goguen argues that "the Court explicitly encouraged the government to initiate new criminal charges . . .." *Def.'s Mot.* at 27. But this is exactly what I expressly wrote that I was not doing. *Mandatory Minimum Order* at 36 (adding "nor encourages the Government to do so").

The Government was obviously aware that Mr. Goguen may have committed new criminal conduct by possessing child pornography because the petition for revocation alleged he did so. *Pet. for Warrant or Summons for Offender under Supervision* at 2 (ECF No. 144) ("**Violation of Preamble**: The defendant shall not commit another federal, state, or local crime. Beginning on an unknown date, and continuing until November 10, 2015, the defendant committed the offense of Possession of Child Pornography, in violation of federal law. On November 10, 2015, during a home inspection, the undersigned officer found the defendant in possession of a laptop computer, which was found to contain at least three (3) images and at least five (5) videos of child pornography").

Once I issued my opinion that there was a bar against obtaining a period of incarceration of more than two years, the question naturally arose whether my order would affect any new criminal charge from the conduct alleged in the revocation petition. I was merely clarifying that my ruling on the mandatory term of incarceration related solely to the revocation petition and not to any new criminal charge. I also reminded the Government that if it brought a new criminal charge, the burden of proof would be beyond a reasonable doubt. *Mandatory Minimum Order* at 36.

In fact, Mr. Goguen's pending motion to withdraw his guilty plea claims that my observation about the beyond a reasonable doubt burden of proof on any new criminal charge clarified the issue for Mr. Goguen himself, because he now asserts in his motion to withdraw guilty plea that Attorney Tzovarras misinformed him that the burden of proof standard for the new criminal conduct would be more likely than not. *Def.'s Mot.* at 21 ("Attorney Tzovarras misadvised me the more likely than not standard would be applied to both revocation and new criminal conduct proceedings. It was only after obtaining one of the Court's decisions from Lexis Nexis in early 2018, that I learned 'unlike the more probabl[e] than not standard for a violation of supervised release, the Government would be compelled to prove his new criminal conduct beyond a reasonable doubt'" (quoting *Mandatory Minimum Order* at 36)).

Moreover, as the Government represented in its response, the Government had contemplated filing a new criminal charge against Mr. Goguen before I issued the November 2, 2016, Order. *Gov't's Opp'n* at 5-6. The Government stresses that it made its own decision to bring the charge. *Id.*

Finally, the Government does not have the authority to bring felony charges against a defendant without presenting the matter to a grand jury, which it did in this case, and it was the grand jury, not the Government, that indicted Mr. Goguen for new criminal conduct. *Indictment*, *United States v. Goguen*, 1:16-cr-00167 (ECF No. 1).

I reject his claim that I encouraged, instigated, or affected his prosecution.

## 2. Affirmance of a Recommended Decision

Mr. Goguen's third claim of bias is that on de novo review, I affirmed factual findings that the Magistrate Judge had made in a recommended decision following a suppression hearing before the Magistrate Judge. *See Def.'s Mot.* at 27-28. I am perplexed by this claim. As I affirmed another judge's findings, any bias, if it existed, would rest with the judge who made the findings, not the judge who affirmed them.

The Magistrate Judge held an evidentiary hearing on the motion to suppress on March 31, 2017. *Tr. of Proceedings, Mot. Hr'g* (ECF No. 189; ECF No. 47). The Magistrate Judge received exhibits into evidence and heard the testimony of Probation Officer Mitchell Oswald. *Id.* at 4:14-50:14. The Magistrate Judge also held argument on the legal issues presented by the motion. *Id.* at 52:19-61:19. On May 5, 2017, the Magistrate Judge issued an eight-page opinion in which he made factual findings and drew legal conclusions. *Recommended Decision on Mot. to Suppress.*

On May 19, 2017, Attorney Tzovarras objected to the recommended decision. *Def.'s Obj. to Magistrate's Recommended Decision on Mot. to Suppress* at 1-2. Attorney Tzovarras' entire objection is:

> The Defendant, Robert Goguen, respectfully objects to the Magistrate's Recommended Decision to Deny the Motion to Suppress. An evidentiary hearing was held on March 31, 2017. The Court issued a recommended decision dated May 5, 2017.
>
> The Defendant objects to the Recommended Decision's finding that reasonable suspicion was established to seize and search the laptop computer at Mr. Goguen's home. The Defendant incorporates the arguments raised in his motion to suppress and reply memorandum filed in this matter. In particular, the Defendant objects to the finding of reasonable suspicion based on an anonymous source tip that was not sufficient[ly] detailed or corroborated and received fourteen days before the supervise[d] release search.

Therefore, it is respectfully requested that the Court not adopt the Recommended Decision and grant the motion to suppress.

*Id.* at 1-2.

In his motion to recuse, Mr. Goguen lists seven found facts in which he says the Magistrate Judge made factual mistakes. *Def.'s Mot.* at 27-28. But how the Magistrate Judge's mistakes, if they are mistakes, demonstrate my bias against Mr. Goguen is beyond me.[9] Moreover, as is evident in Attorney Tzovarras' objection, set forth in full above, none of the alleged errors that Mr. Goguen now claims the Magistrate Judge made was brought to my attention in Attorney Tzovarras' objection. It is difficult to understand why my failure to correct alleged errors in the Magistrate Judge's factual findings that were not brought to my attention when I reviewed the general objection to the Magistrate Judge's recommended decision means that I am biased against Mr. Goguen.

I reject Mr. Goguen's claim that my affirmance of the Magistrate Judge's recommended decision reflects any bias on my part.

### 3. The Search Condition

In his reply, Mr. Goguen criticizes me for saying in my September 6, 2019, order denying Attorney Bourget's Motion to Withdraw Guilty Plea that the Probation Office's search of his laptop was performed pursuant to an agreed-upon supervised

---

[9] In the Government's response, it asserts that, contrary to Mr. Goguen's contentions, each of the Magistrate Judge's factual findings was in fact accurate except the possible tangential point about whether Probation Officer Oswald or Probation Officer Moloney first noticed the laptop computer. *Gov't's Opp'n* at 6-8.

release condition. *Def.'s Reply* at 5. He says that the following portion of my order is inaccurate:

> As the search of Mr. Goguen's computer was performed pursuant to an agreed to supervised release condition after receiving word that Mr. Goguen possessed a blue computer that contained child pornography . . . it is difficult to imagine what legal basis there could be to challenge "the legality of the conditions that improperly 'authorized' the search and seizure of his laptop to take place."

*Def.'s Reply* at 5 (quoting *Withdrawal Order* at 37).[10] On November 10, 2015, Officers Oswald and Moloney appeared at Mr. Goguen's apartment to conduct a home visit, aware that a tipster had said Mr. Goguen was downloading pornography on his blue laptop and smart phone. *Recommended Decision on Mot. to Suppress* at 2-4. Officer Oswald seized a blue laptop, opened it, and noted that the computer contained images of child pornography. *Id.* at 4-5. He later obtained a federal search warrant to search the laptop. *Id.*

In the history of this case, on May 23, 2013, Mr. Goguen agreed to a search condition of supervised release that allowed a probation officer to search his computers "based on reasonable suspicion of contraband evidence or a violation of supervision." *Req. for Modifying the Conditions or Term of Supervision* at 1, *United States v. Goguen*, 1:11-cr-00003-JAW (ECF No. 93); *id.*, Attach. 1, *Waiver of Hr'g to Modify Conditions of Probation/Supervised Release or Extend Term of Supervision*. I granted this condition on May 28, 2013. *Order Granting Pet. to Modify Supervised Release*, *United States v. Goguen*, 1:11-cr-00003-JAW (ECF No. 95). On August 16,

---

[10]    In his reply, Mr. Goguen omits language that notes that the search was pursuant to a federal search warrant. *Def.'s Reply* at 5; *see Order on Def.'s Mot. to Withdraw Guilty Plea* at 37 (including "and as the later search was conducted pursuant to a federal search warrant" in the sentence).

2013, the Probation Office filed a petition for revocation based on an allegation that he had violated the sex offender treatment condition of the terms of his supervised release. *Pet. for Warrant or Summons for Offender under Supervision* at 1, *United States v. Goguen*, 1:11-cr-00003-JAW (ECF No. 96). After Mr. Goguen admitted his violation on January 24, 2013, I imposed a five-month period of incarceration followed by thirty-one months of supervised release. *J.*, *United States v. Goguen*, 1:11-cr-00003-JAW (ECF No. 113). At the revocation hearing, I announced the conditions of supervised release applicable to Mr. Goguen:

> The defendant shall comply with all standard and special conditions previously imposed in this case on the amended judgment dated January 31, 2013, and subsequently amended on May 28, 2013.

*Tr. of Proceedings*, *Final Revocation Hr'g* 20:20-23, *United States v. Goguen*, 1:11-cr-00003-JAW (ECF No. 139). My reference to the May 28, 2013, amended special conditions included Mr. Goguen's agreement to allow his computers to be searched. *Order Granting Pet. to Modify Supervised Release*.

Despite my order, the May 23, 2013, additional computer search condition did not make its way into the revocation judgment. *J.* at 4. Instead the judgment contains a more generalized search condition:

> Defendant shall at all times readily submit to a search of his residence, and of any other premises under his dominion and control, by his supervising officer, upon the officer's request when the officer has reasonable basis to believe that such a search will lead to the discovery of evidence of violation of the terms of supervised release, including pornographic materials that Defendant is prohibited from possessing under the rules of his sex offender treatment program. Failure to submit to such a search may be grounds for revocation [of release] . . ..

*Id.*

I don't recall whether when I wrote that the November 2015 search was done "pursuant to an agreed to supervised release condition," *Withdrawal Order* at 37, I thought the May 23, 2013, search condition that I ordered on September 23, 2013, was still effective in November 2015 or whether I was referring to the more general search condition of September 24, 2013. I suspect that in using the phrase "agreed upon," I thought the earlier condition was in the revocation judgment.

It does not matter. The September 24, 2013, condition allowed the search that Officer Oswald performed since Officer Oswald was performing a search that led "to the discovery of evidence of violation of the terms of supervised release," namely whether Mr. Goguen possessed "pornographic materials that [he] is prohibited from possessing under the rules of his sex offender treatment program." *J.* at 4. This is particularly true because the Government obtained a federal search warrant allowing a search of Mr. Goguen's blue laptop.

In any event, if I did think the May 23, 2013, search condition that I ordered at the revocation hearing was in the revocation judgment, this is no basis to conclude that I should recuse myself from his case.

### 4. Praise for Lawyers

As Mr. Goguen's filings reveal, he holds some of his prior lawyers in low regard. *See Def.'s Mot.* at 2 (stating that "conviction judgment attorneys (Brown and Haddow) . . . deliberately misinformed [him] as to their investigative efforts and the availability of exculpatory, impeaching and mitigating evidence" and that "Attorney Tzovarras started filing random sentencing objections without [his] knowledge and

against [his] instructions, and which inferred a concession of guilt"); *id.* at 10 ("Had it not been for Attorney Tzovarras's deficient performance, there is more than a reasonable probability I would not have pled guilty"); *id.* at 11 ("Attorney Tzovarras misrepresented I was prohibited from raising any challenges against the 1996 conviction"); *id.* at 13 ("To my knowledge, Attorney Tzovarras failed to investigate nearly every material issue"); *id.* at 23 ("Attorney Bourget's failure to research the case, facts, and law in relation to those facts, or otherwise adequately prepare before conducting legal consultation and misrepresenting material facts and controlling law was deficient performance").

Having long experience with each of Mr. Goguen's lawyers, I have a very different view of their competence and professionalism. Although he does not provide many citations as to my specific statements, *see Def.'s Reply* at 7-9, I have no doubt that Mr. Goguen is correct when he says that I praised the education and ability of his defense lawyers. Each of the attorneys who has represented Mr. Goguen has been a member of the defense attorneys' panel, the group of criminal defense lawyers the District of Maine has recognized upon recommendation of the local federal defense bar as capable of representing defendants in federal criminal cases. I often compliment criminal defense lawyers, prosecutors, and civil lawyers when they do something well in order to recognize and encourage good lawyering. In particular, in the field of criminal law, because there are often adverse consequences to a defendant when he or she demands the defense lawyer withdraw, at a hearing on a motion to withdraw counsel, I often assure the defendant that I respect his or her attorney. I

reject Mr. Goguen's notion that in praising a lawyer, I am exhibiting a bias for or against the case before me.

### 5. Attorney Tzovarras' Withdrawal

In his motion to recuse, Mr. Goguen makes three allegations concerning my characterizing Attorney Tzovarras' withdrawal. First, he criticizes my September 6, 2019, order in which I denied his motion to withdraw his guilty plea. *Def.'s Mot.* at 28. He alleges that I "misstated that on 25 January 2018, Attorney Tzovarras 'raised the fact [Mr. Goguen] recently talked to him about his withdrawing as counsel,' and had he requested time to see [Mr. Goguen] again to decide whether [Mr. Goguen] still wanted Attorney Tzovarras 'to withdraw as [his] counsel." *Id.* He says that the "transcripts reflect that Attorney Tzovarras explicitly stated to the court I did not request him to withdraw as counsel." *Id.*

Mr. Goguen goes on to say that I "inaccurately stated that on 4 February 2019 [he] filed a motion requesting that the court allow Attorney Tzovarras to withdraw as counsel." *Id.* Instead, Mr. Goguen assets that he has "never requested nor suggested Attorney Tzovarras to withdraw as counsel, and when he did so [Mr. Goguen] was utterly shocked." *Id.*

Finally, Mr. Goguen says that on October 22, 2019, I "reiterated erroneously that [he] had requested new counsel emphasizing there seems to be a pattern with [him] and now holds these inaccuracies as a result of [his] actions." *Id.*

I re-reviewed my September 6, 2019, order and the transcript of the January 25, 2018, conference of counsel and I disagree with Mr. Goguen that my order

mischaracterizes the transcript. The backdrop is that by letter dated December 25, 2017, Mr. Goguen filed a pro se motion to withdraw his guilty plea and his admission to the supervised release violations. *Withdrawal Order* at 40-41. In accordance with the District of Maine's practice, when a judge receives a letter or motion from a represented defendant, the Clerk of Court sends the letter to defense counsel to see whether the lawyer wishes to adopt the letter or motion and, if not, to determine what should be done. *Id.* at 41. This procedure is an effort to protect the criminal defendant since the contents of such a letter might well be admissible in evidence and could undercut the defense. In Mr. Goguen's case, the Clerk of Court sent the pro se motion to withdraw to Attorney Tzovarras. *Id.*

The persistent subtext in many motions to withdraw guilty plea is the question of timing and furthermore a defendant may make allegations against his own lawyer—for example, that he earlier asked the lawyer to file a motion to withdraw—which may require the lawyer's testimony and thereby present a conflict of interest that precludes continued representation.

The issue of Attorney Tzovarras withdrawing as Mr. Goguen's counsel came up at the January 25, 2018, conference of counsel:

> MR. TZOVARRAS: - - [M]aybe I should address an issue that came up particularly yesterday when I met with Mr. Goguen that raised some concerns about whether I should continue to represent Mr. Goguen and also perhaps some concerns about where his - - his mental health state at the current time. He's not asking me to withdraw, but he is also not - - I wouldn't think ready to go forward to sentencing. He has some thoughts about what direction the case should go in.
>
> And I guess rather than just withdraw after that meeting yesterday, I think it would make sense if I met with him again and if things haven't

34

changed, then a motion to withdraw might be in order and then go from there.

*Tr. of Proceedings, Conference of Counsel* 2:13-24 (ECF No. 287; ECF No. 118) (*Conf. Tr.*). Attorney Tzovarras said:

> [S]o it could be some three to four weeks before I can see him again . . . . I guess if we push it off a month or so that might give enough time to kind of, I guess, get more direction about what's - - how to proceed.

*Id.* 3:9-13. Attorney Tzovarras summarized:

> I think it's either meet with him again or just withdraw, and I think it would make more sense to meet with him again before making that decision.

*Id.* 4:2-4.

In my September 6, 2019, order, I characterized Attorney Tzovarras' comments as follows:

> At a January 25, 2018, conference of counsel, Attorney Tzovarras raised the fact that his client recently talked to him about his withdrawing as counsel. Mr. Tzovarras asked for three or four weeks to see Mr. Goguen again and decide whether Mr. Goguen still wanted him to file a motion to withdraw as his counsel.

*Withdrawal Order* at 41 (internal citations omitted).

Despite Mr. Goguen's objections, I do not believe my order mischaracterizes what happened on January 25, 2018. Mr. Tzovarras was constrained to maintain client confidences, so I had to read between the lines of what he was saying. *Conf. Tr.* 2:25 ("I don't know how much you want me to elaborate"). I interpreted his statements as conveying that he and Mr. Goguen discussed his withdrawal as counsel but they had reached no final decision, and he needed another meeting with his client

to make a final decision. Obviously, I was not present at the conference between Mr. Goguen and Attorney Tzovarras and could only go by what Attorney Tzovarras told me. In any event, I do not consider my characterization of what Attorney Tzovarras said at the conference of counsel to require my recusal.

As far as saying that Mr. Goguen filed a motion to allow Attorney Tzovarras to withdraw, Mr. Goguen misunderstands the use of language in the Order. It is true that Mr. Goguen himself did not file the motion to withdraw on February 5, 2019; Attorney Tzovarras did. *Def.'s Ex Parte Mot. for Leave to Withdraw as Counsel* (ECF No. 277; ECF No. 109) (*Tzovarras Mot. to Withdraw*). But in the Order, when I referred to Mr. Goguen, I was referring to him as a party defendant, not pro se litigant, thus the statement in the order is accurate. In fact, Mr. Goguen must know what I meant because in the very next sentence, I quoted Attorney Tzovarras as the author of the motion. *Withdrawal Order* at 43. I also attributed the motion to Attorney Tzovarras when I wrote that "Mr. Goguen's defense counsel moved for leave to withdraw as his attorney" at the beginning of the Order. *Id.* at 4.

Regarding Mr. Goguen's statement that he never requested that Attorney Tzovarras withdraw as his lawyer, I did not say in the Order that Mr. Goguen asked Attorney Tzovarras to withdraw; however, by insisting that a motion to withdraw guilty plea be filed, Mr. Goguen assured that Attorney Tzovarras would be compelled to withdraw because Attorney Tzovarras would potentially be a witness in any hearing on the motion to withdraw. Attorney Tzovarras himself confirmed as much in his motion to withdraw as defense counsel. *Tzovarras Mot. to Withdraw* at 1-2

("Undersigned counsel cannot adequately represent Mr. Goguen on a motion to withdraw his plea, and replacement counsel should be appointed to assess the viability of such a motion any witnesses or supporting materials necessary, and proceed accordingly").  Whatever Mr. Goguen and Attorney Tzovarras said to each other on this subject, I have no reason to believe that my description of what happened displays any bias against Mr. Goguen.

Lastly, I turn to my comment at the October 22, 2019, hearing about Mr. Goguen requesting new counsel and there seeming to be a pattern with him.  First, I do not believe I used the word "pattern" at the October 22, 2019 hearing.  Second, I am not sure what Mr. Goguen means by the phrase "now holds these inaccuracies as a result of my actions."  *Def.'s Mot.* at 28.

Turning to the October 22, 2019, hearing, on September 6, 2019, I issued a fifty-page opinion, denying a motion to withdraw Mr. Goguen's guilty plea that his attorney, Ronald Bourget, filed on his behalf.  *Withdrawal Order* at 49.  On September 23, 2019, Mr. Goguen filed a request to be allowed to proceed pro se and to file his own motion to withdraw his guilty plea.  *Ex Parte Filing Mot. Requesting Authorization to Proceed Pro Se.*  At the hearing, I had a long discussion with Mr. Goguen warning him of the dangers of proceeding pro se.  This extended discussion was my effort to protect him from his decision to represent himself.

I mentioned to Mr. Goguen that I had allowed a represented defendant to file his own motions only one other time, when I was convinced that the defendant harbored strong views about legal arguments that he thought should have been

brought forward but his lawyers had refused to file.  I told Mr. Goguen that I thought he would not be satisfied that he had received justice until he was given an opportunity to file his own motion.  As in the other case where I permitted a direct filing from a represented defendant, I mentioned that Mr. Goguen had been represented by several fine lawyers, Donald F. Brown, Jon Haddow, Hunter Tzovarras, and Ronald Bourget.  Despite representation by four lawyers, each extremely competent, I thought it was significant that Mr. Goguen still thought he should represent himself.  So, for the second time in my judicial career, I allowed a represented defendant to represent himself and file a motion with the Court.  I did not say that I intended to hold the fact he has had four lawyers against him.  As my course of conduct with Mr. Goguen has reflected, I have not done so and will not do so.

It is still baffling.  My entire dialogue with Mr. Goguen on October 22, 2019, was an effort to protect him from what seemed and still seems to be an ill-advised decision to represent himself in a serious federal case.  Again, I am nonplussed that Mr. Goguen thinks that my solicitude toward him should be a basis for my recusal.

## V.    CONCLUSION

I DENY Robert Goguen's motion to recuse (ECF No. 309; ECF No. 132) as failing to meet the legal standards for a judge's recusal.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 24th day of February, 2020