## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:11-cr-00003-JAW |
| | ) | 1:16-cr-00167-JAW |
| ROBERT GOGUEN | ) | |

### ORDER ON MOTION TO WITHDRAW GUILTY PLEA AND ADMISSION

The Court rejects a pro se defendant's motion to withdraw guilty plea and to withdraw admission to a revocation petition. The Court concludes that the defendant knowingly, intelligently, and voluntarily pleaded guilty to new criminal conduct and admitted to violating the conditions of supervised release imposed on an older criminal judgment. Applying the five-factor First Circuit test for evaluating motions to withdraw pleas, the Court concludes that the defendant failed to sustain his burden to demonstrate a fair and just reason for withdrawal of the plea and admission.

## I.    BACKGROUND

### A.    Failure to Register as Sex Offender: 1:11-cr-00003-JAW

On January 12, 2011, a federal grand jury indicted Robert Goguen for violating the Sex Offender Notification and Registration Act (SORNA), 18 U.S.C. § 2250(a), by failing to register as a sex offender after having been convicted of a sex offense in Connecticut in 1996. *Indictment* (ECF No. 1). On July 14, 2011, Mr. Goguen pleaded guilty to the charge in the indictment, *Min. Entry* (ECF No. 43), and on September 14, 2012, the Court sentenced Mr. Goguen to sixteen months of incarceration with credit for time served from April 11, 2012, three years of supervised release, and a

$100 special assessment; the Court imposed no fine.  *Min. Entry* (ECF No. 79); *J.* (ECF No. 80).  By agreement, on January 30, 2013, the Court amended the judgment to clarify that the sentence was thirty-seven, not sixteen, months of incarceration. *Order Granting Mot. to Amend J.* (ECF No. 89); *Am. J.* (ECF No. 90).  Mr. Goguen did not appeal his conviction or sentence.

For purposes of this motion, the next significant docket event was a petition to revoke his supervised release, based on an alleged failure to comply with the conditions of supervised release by accessing pornography at a county law library. *Pet. for Warrant or Summons for Offender under Supervision* (ECF No. 96) (*First Warrant Pet.*).  On September 23, 2013, Mr. Goguen admitted the violation, *Min. Entry* (ECF No. 112), and the Court sentenced him to five months of incarceration and thirty-one months of supervised release.  *Revocation J.* (ECF No. 113).  On October 1, 2013, Mr. Goguen appealed the revocation judgment to the Court of Appeals for the First Circuit.  *Re: Notice of Appeal* (ECF No. 116) (*Revocation Notice of Appeal*).  On October 9, 2014, the First Circuit affirmed the revocation judgment, *J. of United States Ct. of Appeals for the First Circuit* (ECF No. 142) (*First Circuit J.*), and on November 6, 2014, it issued its mandate.  *Mandate* (ECF No. 143).

On November 13, 2015, the United States Probation Office (USPO) initiated a second petition for revocation of supervised release, alleging that Mr. Goguen violated the terms of his supervised release by committing new criminal conduct by possessing child pornography and that, in doing so, he violated the condition of his supervised release that required he comply with the terms of his sex offender treatment program

(SOTP).[1] *Pet. for Warrant or Summons for Offender under Supervision* (ECF No. 144) (*Second Warrant Pet.*).  On September 15, 2017, Mr. Goguen admitted counts one and two of his supervised release violations.  *Min. Entry* (ECF No. 193).  Despite his having admitted the two violations on September 15, 2017, for a variety of reasons, mostly related to Mr. Goguen's active litigation, the Court has not yet sentenced Mr. Goguen on these violations.

Mr. Goguen has extensively litigated his case.  There are now three-hundred and forty-nine docket entries on this case alone.  In addition to other matters, on November 28, 2017, Mr. Goguen file a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  *Mot. to Vacate, Set Aside or Correct Sentence (2255)* (ECF No. 194) (*Mot. to Vacate*).[2]  On September 28, 2018, the Magistrate Judge recommended that the Court deny Mr. Goguen's habeas corpus petition and deny a certificate of appealability, *Recommended Decision on 28 U.S.C. § 2255 Mot.* (ECF No. 253) (*Recommended Decision*), and on February 7, 2019, the Court affirmed the Magistrate Judge's recommended decision over Mr. Goguen's objection.  *Order Affirming Recommended Decision on 28 U.S.C. § 2255 Mot.* (ECF No. 280).  Mr.

---

[1]     As will be seen, a federal grand jury indicted Mr. Goguen on December 14, 2016, for new criminal conduct, namely possession of child pornography. *Indictment*, *United States v. Goguen*, 1:16-cr-00167-JAW (D. Me. Dec. 14, 2016), ECF No. 1.  On September 15, 2017, Mr. Goguen pleaded guilty to this new criminal charge. *Min. Entry*, *Goguen*, 1:16-cr-00167-JAW (D. Me. Sept. 15, 2017), ECF No. 64.  His motion to withdraw plea and admission seeks to withdraw his guilty plea to the new criminal charge and his admission to the supervised release violations.

[2]     Though the docket reflects that this motion was not docketed until December 15, 2017, the prison mailbox rule controls the date of filing of incarcerated individuals' filings in certain contexts, including under 28 U.S.C.§ 2255. *See Morales-Rivera v. United States*, 184 F.3d 109, 109-10 (1st Cir. 1999) (holding that the prison mailbox rule applies to motions under 28 U.S.C. § 2255).  Mr. Goguen's motion does not include a declaration regarding when it was mailed.  However, Mr. Goguen dated his response on November 28, 2017, *Mot. to Vacate* at 1, and the Court adopts that date as the date of filing.  The Court applies this logic to further related filings by Mr. Goguen that do not include declarations regarding when they were mailed for the purpose of this Order.

Goguen appealed. *Notice of Appeal* (ECF No. 281). On February 24, 2020, the Court of Appeals for the First Circuit affirmed this Court's denial of a certificate of appealability, *J. of United States Ct. of Appeals for the First Circuit* (ECF No. 324) (*2020 First Circuit J.*), on June 8, 2020, the First Circuit denied Mr. Goguen's petition for rehearing and petition for rehearing en banc, *Order of Court*, *United States v. Goguen*, 19-1164 (1st Cir. June 8, 2020), and on June 15, 2020, the First Circuit issued its mandate on the judgment. *Mandate* (ECF No. 348).

While the appeal of his habeas corpus petition was pending, on April 22, 2019, Mr. Goguen through counsel filed a motion to withdraw his guilty plea on a new criminal charge reflected in *United States v. Goguen*, 1:16-cr-00167-JAW, as well as his admission to his violations of supervised release in *United States v. Goguen*, 1:11-cr-00003-JAW. *Mot. to Withdraw Guilty Plea* (ECF No. 289; ECF No. 113) (*First Mot. to Withdraw Plea and Admission*).[3] On September 6, 2019, the Court denied Mr. Goguen's motion to withdraw his guilty plea and admission. *Order on Def.'s Mot. to Withdraw Guilty Plea* (ECF No. 293; ECF No. 120) (*Order on Mot. to Withdraw Plea and Admission*).

As his November 13, 2019, sentencing hearing date approached, *see Notice of Hr'g* (ECF No. 294; ECF No. 121), on September 23, 2019, Mr. Goguen filed an ex parte motion requesting authorization to proceed pro se. *Ex Parte Filing Mot. Requesting Authorization to Proceed Pro Se* (ECF No. 296; ECF No. 123). The Court

---

[3]   When a document appears on both of Mr. Goguen's criminal dockets, the first ECF number is a citation to 1:11-cr-00003-JAW and the second is a citation to 1:16-cr-00167-JAW. Citations to a single docket number reference the docket for 1:11-cr-00003-JAW unless otherwise designated in the section heading.

held a hearing on the motion on October 22, 2019. *Min. Entry* (ECF No. 300; ECF No. 125). At the hearing, Mr. Goguen complained about the failure of his attorney to pursue legal arguments in the motion to withdraw guilty plea and admission that Mr. Goguen was convinced were meritorious. Of the view that Mr. Goguen would harbor a sense of injustice unless the Court allowed him to file his own motion, the Court authorized Mr. Goguen to file a pro se motion to withdraw his guilty plea and admission. *Id.*; *Oral Order Granting in Part Ex Parte Mot. to Appear Pro Se* (ECF No. 301; ECF No. 126). Mr. Goguen did so on January 10, 2020. *Def.'s Pro Se Mot. to Withdraw Guilty Plea(s) and Req. for Order to Disqualify Hon. John A. Woodcock, Jr.* (ECF No. 309; ECF No. 132) (*Def.'s Mot.*).[4]

On January 23, 2020, the Government filed a motion to gain access to Attorney Tzovarras' confidential communications. *Gov't's Mot. for Ct. Order Authorizing Disclosure of Confidential Communications* (ECF No. 313; ECF No. 136). On February 12, 2020, Mr. Goguen objected to the disclosure. *Def.'s Obj. to Disclosure of Confidential Communications* (ECF No. 321; ECF No. 143). On February 27, 2020, the Government filed a reply. *Gov't's Reply to Def.'s Obj. Gov't's Mot. for Ct. Order Authorizing Disclosure of Confidential Communications* (ECF No. 325; ECF No. 145). On April 2, 2020, the Court issued an order, essentially granting the Government's

---

[4]    On February 24, 2020, I denied the part of Mr. Goguen's motion that requested I recuse myself. *Order on Def.'s Mot. to Recuse* (ECF No. 323; ECF No. 144) (*Recusal Order*). On February 27, 2020, Mr. Goguen filed a notice of interlocutory appeal of the recusal order to the Court of Appeals for the First Circuit. *Def.'s Notice of Appeal* (ECF No. 326; ECF No. 146). On May 20, 2020, the Court of Appeals dismissed Mr. Goguen's interlocutory appeal at his request. *J. of United States Ct. of Appeals for the First Circuit* (ECF No. 342; ECF No. 156); *Mandate* (ECF No. 343; ECF No. 155).
    On January 19, 2020, Mr. Goguen filed corrections for some of the pages of his motion. *Corrections* (ECF No. 312; ECF No. 135); *id.*, Attach. 1, *Cover Letter*. The Court incorporates the corrected pages into its citations to the original motion.

request for the disclosure of otherwise confidential communications. *Order on Gov't's Mot. for Ct. Order Authorizing Disclosure* (ECF No. 330; ECF No. 150).

On May 14, 2020, the Government filed an objection to Mr. Goguen's pro se motion to withdraw guilty plea and admission. *Gov't's Obj. to Def.'s Pro Se Mot. to Withdraw Plea(s)* (ECF No. 339; ECF No. 154) (*Gov't's Opp'n*). On May 23, 2020, Mr. Goguen filed a reply. *Def.'s Reply to Gov't's Obj. to Def.'s Pro Se Mot. to Withdraw Plea(s)* (ECF No. 347; ECF No. 158) (*Def.'s Reply*).

Finally, although not expressly authorized to do so, Mr. Goguen filed an additional pro se motion on April 13, 2020. *Req. for Article III Judge to Provide by Any Equitable Means Necessary by Indicative Ruling Relief in Expedited Manner* (ECF No. 331). On May 12, 2020, the Government responded. *Gov't's Obj.S to Def.'s Req. for Article III Judge to Provide by Any Equitable Means Necessary by Indicative Ruling Relief in Expedited Manner* (ECF No. 337). On May 18, 2020, Mr. Goguen replied to the Government's response. *Def.'s Reply to Gov't's Resp. Regarding Mot. for Relief* (ECF No. 344). Contemporaneously with this order, the Court is issuing an order on Mr. Goguen's April 13, 2020, pro se motion for indicative ruling.

### B. Possession of Child Pornography: 1:16-cr-00167-JAW

On December 14, 2016, a federal grand jury indicted Mr. Goguen for possession of child pornography depicting prepubescent minors or minors under twelve years old, an alleged violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2252A(b)(2), and 2256(8)(A). *Indictment* (ECF No. 1) (*Possession Indictment*). On September 15, 2017, after the Court resolved a motion to suppress evidence and a motion in limine, *Order Affirming*

6

*Recommended Decision of Magistrate Judge* (ECF No. 190; ECF No. 48) (*Suppression Order*); *Order on Mot. in Limine to Admit Evid. of Possession of Files Containing Child Erotica & Bestiality* (ECF No. 54) (*Mot. in Limine Order*), Mr. Goguen pleaded guilty to this new charge. *Min. Entry* (ECF No. 64).

The same sequence of delay in the imposition of sentence for the revocation violations that the Court explained above applies to the imposition of sentence on the new criminal conduct. In addition, Attorney Tzovarras, Mr. Goguen's former counsel, repeatedly moved to extend the time for filing objections to the presentence report and to continue the sentencing hearing, in some cases on both the revocation and the new criminal conduct. *Def.'s Mot. for Enlargement of Time for Initial Disclosure of Pre-Sentence Report* (ECF No. 68); *Def.'s Mot. for Extension of Time to File Objs. to PSR Before Initial Disclosure to Ct.* (ECF No. 70); *Def.'s Mot. to Continue Sentencing* (ECF No. 214; ECF No. 77); *Def.'s Mot. for Enlargement of Time to File Sentencing Mem.* (ECF No. 79); *Def.'s Mot. to Enlarge Time to File Sentencing Mem.* (ECF No. 84); *Def.'s Mot. for Enlargement of Time to Reply to Gov't's Resp. on Appl. of Mandatory Minimum* (ECF No. 88); *Def.'s Mot. to Continue Conference of Counsel* (ECF No. 262; ECF No. 94); *Def.'s Mot. for Enlargement of Time to File Sentencing Mem.* (ECF No. 101); *Def.'s Mot. to Enlarge Time and Accept Filing of Sentencing Mem. as Timely* (ECF No. 272; ECF No. 103); *Def.'s Mot. to Continue Sentencing Hr'g* (ECF No. 274; ECF No. 106). Finally, on January 30, 2019, the Court scheduled Mr. Goguen's sentencing hearing for February 13, 2019, *Notice of Hr'g* (ECF No. 276; ECF No. 108), but on February 5, 2019, Mr. Goguen's defense counsel moved for leave to

withdraw as his attorney. *Def.'s Ex Parte Mot. for Leave to Withdraw as Counsel* (ECF No. 277; ECF No. 109). On February 7, 2019, the Court granted Attorney Tzovarras' motion to withdraw as counsel and on the same day appointed Attorney Ronald Bourget to represent Mr. Goguen. *Order Granting Ex Parte Mot. for Leave to Withdraw as Counsel* (ECF No. 278; ECF No. 110).

Mr. Goguen's sentencing hearing was also substantially delayed while the Court considered whether his prior Connecticut conviction in 1996 for sexual assault in the second degree triggered § 2252A(b)(2)'s mandatory minimum. On November 16, 2018, the Court concluded that Mr. Goguen's prior Connecticut conviction of sexual assault in the second degree constitutes a qualifying prior offense that triggers the mandatory ten-year imprisonment penalty under § 2252A(b)(2). *Order on Def.'s Mem. in Opp'n to Appl. of Mandatory Minimum Under 18 U.S.C. § 2252A(b)(2)* (ECF No. 92). For these reasons, the Court has not yet sentenced Mr. Goguen on the December 14, 2016, indictment for possession of child pornography.

Mr. Goguen's April 22, 2019, motion to withdraw his guilty plea and admission also applied to his guilty plea to the new criminal conduct. *First Mot. to Withdraw Plea and Admission*. On September 6, 2019, in a forty-nine-page decision, the Court denied Mr. Goguen's motion to withdraw guilty plea to the new criminal conduct. *Order on Mot. to Withdraw Plea and Admission*.

In this order, the Court addresses Mr. Goguen's January 10, 2020, pro se motion to withdraw his guilty plea and admission.

## II.    THE PARTIES' POSITIONS

### A.    Robert Goguen's Motion

In his pro se motion to withdraw his guilty plea and admission, Mr. Goguen says that his filings amend and supplement a filing that he made on December 25, 2017. *Def.'s Mot.* at 1.

#### 1.    Timing of the Motion

In his pro se motion, Mr. Goguen acknowledges that the timing of a motion to withdraw a guilty plea may "cast doubt on the entitlement to a plea withdrawal, unless a defendant seeks to withdraw his plea based on knowledge obtained after the plea." *Id.* He writes that the "relevant temporal gap is the time between discovering the new information and the filing of the defendant's motion." *Id.* (citing *United States v. Forest*, 08-cr-155-B-W, 2010 U.S. Dist. LEXIS 58216, at *30-31 (D. Me. June 11, 2010) (citing *United States v. Gonzalez*, 202 F.3d 20, 24 (1st Cir. 2000), *abrogated on other grounds by Padilla v. Kentucky*, 559 U.S. 356 (2010))). Mr. Goguen then says that "[w]hile housed in Dover-Foxcroft, with similarly charged inmates, it was brought to [his] attention that the evidence upon which [he] pled guilty did not constitute 'child pornography' pursuant to 18 U.S.C. [§] 2256[](2)(A)." *Id.* This discovery led him, he says, to try and contact Attorney Tzovarras without initial success. *Id.*

Mr. Goguen says that when Attorney Tzovarras visited him to discuss the Presentence Investigation Report (PSR) interview, he told Attorney Tzovarras that he wanted to move to withdraw his guilty plea. *Id.* He says that Attorney Tzovarras

discouraged him from mentioning this during the upcoming PSR interview because he could lose a reduction under the United States Sentencing Commission Guidelines for acceptance of responsibility.  *Id.*

Mr. Goguen says that after the PSR interview, he obtained a copy of this Court's decision on the motion to suppress evidence and the decision revealed that Attorney Tzovarras "failed to investigate and raise several material issues [Mr. Goguen] thought [Attorney Tzovarras] had argued."  *Id.*

According to Mr. Goguen, this led him to write Attorney Tzovarras on November 25, 2017, and again on December 18, 2017, saying that he wished to meet with Attorney Tzovarras to consult over "urgent matters . . .."  *Id.* at 1-2. Mr. Goguen says he then filed a letter with the Court that he acknowledges was "incoherent" in which he asked to withdraw his guilty plea and admission.  *See Order on Mot. to Withdraw Guilty Plea and Admission* at 35, 40-46 (describing in detail the circumstances surrounding the December 25, 2017, Goguen letter).  Mr. Goguen details his unsuccessful efforts to get Attorney Tzovarras to file a motion to withdraw guilty plea and admission from January 2018 to February 2019, when Attorney Tzovarras moved to withdraw as Mr. Goguen's counsel.  *Def.'s Mot.* at 2-3.  He argues that "the pro se motion to withdraw the guilty plea is timely, or in the alternative, notwithstanding temporal restraints 'the reasons for withdrawal [are] bonafide' and principles of equity permit plea withdrawal."  *Id.* at 3 (some alterations in original) (quoting *United States v. McTiernan*, 546 F.3d 1160, 1169 (9th Cir. 2008)).

### 2.    Legal Innocence

In his motion to withdraw, Mr. Goguen asserts that he is actually innocent of the new criminal conduct and of violating the conditions of supervised release. *Id.* at 4-5.  Mr. Goguen first argues that the image the Government contended constituted child pornography does not meet the legal definition of child pornography. *Id.* at 4. He claims that the image is "a 'depiction[] of nudity, without more.'" *Id.* (alteration in original) (quoting *Osborne v. Ohio*, 495 U.S. 103, 112 (1990)).  He alleges that Attorney Tzovarras "misrepresented the evidence—a naked girl, sitting outside — constituted 'child pornography' . . .." *Id.*  This means, he contends, that his guilty plea is legally deficient because there is no factual basis for the child pornography element of the crime of possession of child pornography. *Id.*

Mr. Goguen next argues that he is actually innocent of the possession of child pornography charge because he had no knowledge that there was any child pornography on his laptop computer. *Id.* at 5.  Mr. Goguen asserts that the laptop on which the pornography was located was not his, that "Shannon," the laptop's owner, corroborated that she had left the laptop at Mr. Goguen's residence, and that the laptop had been her ex-boyfriend's. *Id.*  Mr. Goguen further maintains that there was a password issue with the laptop, that he allowed "the computer kid," Brandon, to access the laptop to fix the password issue, that Brandon had gone on the internet with the laptop, and that Brandon is not only a convicted sex offender but also subsequently robbed Mr. Goguen's apartment. *Id.*  Mr. Goguen points to caselaw that suggests that the Government must prove that the defendant had exclusive access to

the computer before it attributes child pornography found on the computer to a particular defendant.  *Id.*

### 3. Constitutionally Infirm Predicate for the New Criminal Charge and Revocation

It is difficult to understand Mr. Goguen's point on this subheading.  *Id.* at 6. As best the Court understands it, Mr. Goguen is arguing that because the underlying conviction is unconstitutional, the Government may not proceed with a violation of supervised release premised on an illegal conviction or a new criminal charge premised on evidence obtained through search and arrest warrants based on the illegal conviction and related supervised release conditions.  *Id.*  The Court is not clear whether by conviction, Mr. Goguen is referring to his 1996 Connecticut conviction, his 2012-13 federal conviction, or both.  In any event, Mr. Goguen believes that he should have the right to challenge the validity of the predicate convictions in this case.  *Id.*

### 4. Double Jeopardy

Mr. Goguen maintains that a punishment both for new criminal conduct and for violating the terms of supervised release constitutes a violation of the Double Jeopardy Clause of the United States Constitution.  *Id.* at 7.  Citing *Johnson v. United States*, 529 U.S. 624, 700 (2000), Mr. Goguen argues that the Government may not charge the same conduct as a violation of supervised release and a new criminal offense.  *Def.'s Mot.* at 7.  Mr. Goguen claims this Court "views revocation as 'serv[ing] to punish the violation of the supervised release," not the original offense.  *Id.*

(alteration in original) (quoting *United States v. Goguen*, 218 F. Supp. 3d 111, 126-27 (D. Me. 2016)).

### 5.   The Sex Offender Treatment Program:   Adult Pornography Prohibition

Mr. Goguen focuses on the provision of his SOTP that prohibits him from possessing adult pornography.  *Id.* at 8.  Mr. Goguen contends that courts have expressed skepticism whether a court could order as a condition of supervised release that an adult be prohibited from possessing adult pornography and he argues that it is equally improper for a court to do so through conditions of a SOTP.  *Id.*  He adds that the SOTP contract was void because it was procured or induced by fraud and deceit.  *Id.*

### 6.   The Sex Offender Treatment Program: No Prohibition After September 2013 Against Adult Pornography

Mr. Goguen says that, as a factual matter, after September 2013, there was no contract in effect between his SOTP and himself that prohibited his possession of adult pornography.  *Id.* at 9.  He contends that the Court terminated his SOTP contract when it earlier terminated his supervised release.  *Id.*

### 7.   The Sex Offender Treatment Program: The May 2013 Contract's Enforceability

Mr. Goguen says that his consent to the search condition as an added condition of supervised release was caused by coercion and duress by the USPO and is neither binding nor enforceable.  *Id.*  He again asserts that the SOTP contract is void because of inducement by fraud and deceit, specifying a threat of criminal prosecution as the improper means of inducing him to enter the contract.  *Id.*

>  **8.      Attorney      Tzovarras'     Deficient     Performance     as
>          Justification   for   a   Withdrawal   of   Guilty   Plea   and
>          Admission Before Sentencing**

Mr. Goguen asserts that a defense lawyer's deficient performance may justify the withdrawal of a guilty plea before the imposition of sentence. *Id*. at 10 (citing *United States v. Fernández-Santos*, 856 F.3d 10, 17-18 (1st Cir. 2017)). Mr. Goguen claims that Attorney Tzovarras' representation was ineffective because he failed or refused to challenge Mr. Goguen's 1996 conviction for Sexual Assault in the Second Degree. *Id*. at 11-12.

Next, Mr. Goguen criticizes Attorney Tzovarras for failing to investigate the conditions of supervised release in effect as of November 2015. *Id*. at 12. Mr. Goguen asserts that Attorney Tzovarras erroneously conceded that the Government had the right to search his computer in November 2015 if reasonable suspicion of contraband existed. *Id*. Mr. Goguen also claims that Attorney Tzovarras "adamantly misrepresented" to him the issues Attorney Tzovarras had raised in a motion to suppress. *Id*. Mr. Goguen says that Attorney Tzovarras failed to adequately investigate the credibility of a key Government informant and to develop facts that would have corroborated Mr. Goguen's defense. *Id*. at 13. These matters include what Mr. Goguen knew about the laptop on which the Government found the child pornography, whether Mr. Goguen worked at the Together Place Food Pantry in September or October 2015, who the confidential informant was, and whether the confidential informant had an improper motive. *Id*. Mr. Goguen also observes that the probation officer (PO) searched the laptop before a search warrant was obtained

14

and, in his view, Attorney Tzovarras did not know the conditions for a search of the computer and failed to perform an adequate investigation of the facts leading to the search. *Id.* at 14. In addition, citing *Riley v. California*, 573 U.S. 373 (2014), Mr. Goguen maintains that Attorney Tzovarras failed to press whether the PO legally seized and searched his computer without first obtaining a search warrant. *Def.'s Mot.* at 14.

> Mr. Goguen claims that the USPO
>
> engaged in a relentless pattern of unethical, unlawful, and outrageous misconduct since [PO] Oswald first illegally and unlawfully seized [Mr. Goguen's] laptop on 23 May 2013; threats to seize [his] freedom if [he] did not consent to surrender [his] Fourth Amendment rights; illegal sentencing schemes; fraud on the court; illicit exploitation of SOTP to circumvent due process; and a number of other acts of misconduct including deliberately interfering with and depriving [him] of [his] religious freedom.

*Id.* at 15. Contending that the November 2015 search and seizure was precipitated by an illegal search and seizure in May 2013, Mr. Goguen says that Attorney Tzovarras should have argued that the fruit of the poisonous tree must be excluded. *Id.* Mr. Goguen also says that Attorney Tzovarras should have challenged the search of his residence, including his computer, because there was no corroboration of the tip by an anonymous informant. *Id.* at 16-17. Further, Mr. Goguen faults Attorney Tzovarras for failing to move for a *Franks* hearing, *see Franks v. Delaware*, 438 U.S. 154 (1978), seeking to discredit not only the informant but also the USPO. *Def.'s Mot.* at 18-19. He next argues that Attorney Tzovarras should have pressed a trespassory test and the argument that the USPO violated his reasonable expectation of privacy in his own home. *Id.* at 20.

15

Mr. Goguen is also critical of Attorney Tzovarras' performance during the Federal Rule of Criminal Procedure 11 hearing in the new criminal case and the admission in the revocation case. *Id.* at 21. First, he says that Attorney Tzovarras misinformed him as to the viability of many of the theories listed above as well as the possibility of entering into a conditional plea of guilty, reserving the right to challenge these issues on appeal. *Id.* He also claims that Attorney Tzovarras advised him that the more probable than not standard of proof would be applicable not only to the revocation petition but also to the new criminal charge. *Id.*

To support this part of his motion, Mr. Goguen attached various letters to or from Attorney Tzovarras to his motion. *Def.'s Mot.*, Attachs. 1-4.

### 9. Attorney Bourget's Deficient Performance as Justification for a Withdrawal of Guilty Plea and Admission Before Sentencing

Mr. Goguen is also sharply critical of Attorney Ronald Bourget's representation. *Def.'s Mot.* at 22-23. He contends that Attorney Bourget had a conflict of interest. *Id.* at 22. He charges that Attorney Bourget was not familiar with the law and not interested in investigating the facts. *Id.* Mr. Goguen is also displeased with Attorney Bourget's formulation of the earlier motion to withdraw guilty plea and admission that the Court denied. *Id.* In Mr. Goguen's view, Mr. Bourget's selection of the arguments and his refusal to present issues Mr. Goguen thought were important, including a duress argument, contributed to the failure of the earlier-rejected motion to withdraw. *Id.* at 22-23.

16

To support this part of his argument, Mr. Goguen attached three letters he wrote Attorney Bourget to his motion. *Def.'s Mot.*, Attachs. 5-7.

### 10.   Governmental and Judicial Misconduct

Citing *Ferrara v. United States*, 456 F.3d 278 (1st Cir. 2006), Mr. Goguen argues that the government's failure to disclose material evidence may be sufficient for a court to grant a motion to withdraw guilty plea. *Def.'s Mot.* at 24.  Mr. Goguen contends that "a history of both governmental misconduct and judicial misconduct was material to [Mr. Goguen's] choice of whether to plead guilty" and so the misconduct satisfies this standard.  *Id.*

Specifically, Mr. Goguen argues that a PO made multiple false statements that resulted in the illegal search and seizure of the laptop, the failure of his motion to suppress evidence, and ultimately his decision to plead guilty.  *Id.* at 25-26.  He relies on the precept that the government cannot knowingly use false evidence to obtain a tainted conviction.  *Id.*  Mr. Goguen also claims that this Court deprived him of his due process rights, which contributed to inducing his guilty plea.  *Id.* at 27-28.  Mr. Goguen's arguments on this point overlap with his request for recusal, which the Court denied.  *See Recusal Order* at 38.

### B.   The Government's Response

### 1.   Attorney Tzovarras' Affidavit

In accordance with this Court's order that allowed him to respond to Mr. Goguen's multiple accusations against him, Attorney Hunter Tzovarras completed an affidavit.  *Gov't's Opp'n*, Attach. 1, *Aff. of Hunter Tzovarras* (*Tzovarras Aff.*).  Attorney

Tzovarras states that he has been licensed as an attorney in the state of Maine and in the United States District Court since 2009 with a practice primarily focused on criminal defense. *Id.* ¶¶ 1-2. Attorney Tzovarras states that he has represented over 1000 clients in criminal matters, about forty of whom have been federally charged. *Id.* ¶ 3. He states he has represented six defendants, not including Mr. Goguen, facing child pornography charges in federal court. *Id.*

Turning to Mr. Goguen's claim that Attorney Tzovarras gave him inaccurate advice about whether the image attached to the prosecution version met the legal definition of child pornography, Attorney Tzovarras recalls that he viewed the image filed under seal with Mr. Goguen in the courtroom before Mr. Goguen entered the guilty plea to the new criminal conduct. *Id.* ¶¶ 5-7. Although Attorney Tzovarras does not remember the image, he says that he does recall concluding that it met the legal definition of child pornography and contained an image of a prepubescent minor. *Id.* ¶¶ 8-9. Attorney Tzovarras states that he was familiar with the federal definition of child pornography and would not have advised Mr. Goguen that an image of a "naked girl sitting outside" alone would have met that definition. *Id.* ¶¶ 10-11.

Attorney Tzovarras next addresses Mr. Goguen's claim that he gave him erroneous legal advice concerning whether the Government could prove that he possessed the images of child pornography on the laptop. *Id.* ¶ 12. In his motion, Mr. Goguen alleges that he did not know that there were any images of child pornography on the laptop and that Attorney Tzovarras failed to conduct an adequate investigation as to whether Mr. Goguen, as opposed to other persons, downloaded the images.

18

*Def.'s Mot.* at 5, 13.  In response, Attorney Tzovarras states that before Mr. Goguen pleaded guilty, Attorney Tzovarras sent Mr. Goguen "all of the written discovery materials provided by the Government, including the computer forensic report, that set forth the Government's evidence as to the child pornography on the laptop seized." *Tzovarras Aff.* ¶ 13.  Attorney Tzovarras says that he reviewed "the computer forensic file at the U.S. Attorney's office, and hired a computer forensic expert to review the materials." *Id.* ¶ 14.  Attorney Tzovarras says that he discussed with Mr. Goguen "the location of the child pornography materials on the laptop," "including where the files were located, when the files were accessed on the laptop . . . and other materials accessed on the laptop in the same timeframe as the child pornography and when it was alleged the computer was in Mr. Goguen's possession." *Id.* ¶ 15.  Attorney Tzovarras states that he "discussed with Mr. Goguen all of the above evidence and how a jury could make the inference that Mr. Goguen was the person who accessed the child pornography on the laptop." *Id.* ¶ 16.  Attorney Tzovarras states that he "informed Mr. Goguen prior to his entry of the guilty plea as to the elements of the offense he was pleading guilty to, including the element that the Government must prove he knowingly possessed child pornography in order to be found guilty." *Id.* ¶ 17.  Attorney Tzovarras further states that he

> would not have told Mr. Goguen that simply possessing the laptop itself was sufficient to convict him of the charge, but advised Mr. Goguen that having possession of the laptop at the times it's alleged the child pornography was accessed on the computer is evidence a fact-finder could consider in determining whether he knowingly possessed the illegal materials.

*Id.* ¶ 18.

In his motion, Mr. Goguen alleges that Attorney Tzovarras failed to undertake an adequate investigation of the underlying facts; specifically, Mr. Goguen claims that Attorney Tzovarras failed to investigate whether the laptop was password protected, whether Mr. Goguen had possession of the laptop at crucial times, whether the confidential informant had correctly alleged that Mr. Goguen was working at the Together Place Food Pantry, and whether the confidential informant was biased against Mr. Goguen. *Def.'s Mot.* at 13. Attorney Tzovarras reiterates that he reviewed the Government's forensic report, he hired his own computer forensic expert, his forensic expert found no issues with the Government's forensic report, and he met with Mr. Goguen and went over the experts' reports before Mr. Goguen entered a guilty plea. *Tzovarras Aff.* ¶¶ 20-23. Regarding the password issue, Attorney Tzovarras states that he does not recall whether Mr. Goguen raised a password issue, but that if he had done so, Attorney Tzovarras would have raised the issue with his computer forensic expert and he has "no notes of this being done." *Id.* ¶ 24. Attorney Tzovarras affirms that the discovery revealed that Mr. Goguen had in fact not worked at the Together Place Food Pantry and therefore no further investigation was needed on this point. *Id.* ¶ 25. Regarding the identity of the informant, Attorney Tzovarras states that he asked the PO whether the anonymous tip to the USPO had been recorded and the PO informed him that it had not and that the PO did not know the identity of the informant. *Id.* ¶ 26. Attorney Tzovarras says that Mr. Goguen provided him with the name of the person he thought was the informant and if the matter had gone to trial, Attorney Tzovarras intended to

subpoena the person and challenge his credibility at trial. *Id.* ¶ 27. Attorney Tzovarras states that he did not subpoena the alleged informant to testify at the suppression hearing because his testimony was not relevant to the issues presented at the suppression hearing. *Id.*

In his motion, Mr. Goguen alleges that Attorney Tzovarras misinformed him that the Government's burden of proof for the new criminal charge was only more probable than not, not beyond a reasonable doubt. *Def.'s Mot.* at 21. Attorney Tzovarras denies that he misinformed Mr. Goguen about the Government's burden of proof for the new criminal charge. *Tzovarras Aff.* ¶ 29.

### 2.    The Government's Memorandum

In its opposition, the Government first references Mr. Goguen's prior motion to withdraw guilty plea and admission and incorporates its response to his earlier motion as well as this Court's analysis of that motion, which the Government contends is correct. *Gov't's Opp'n* at 2. The Government also notes that some of the issues have no bearing on whether Mr. Goguen should be allowed to withdraw his guilty plea and admission and that the Court and the Magistrate Judge previously ruled on issues Mr. Goguen now presents. *Id.*

The Government turns to Mr. Goguen's explanations for why he delayed filing the motion to withdraw. *Id.* at 3. The Government notes that the Court addressed this issue in its September 6, 2019, order denying Mr. Goguen's earlier-filed motion to withdraw guilty plea and admission. *Id.* (citing *Order on Mot. to Withdraw Plea and Admission* at 43-46). The Government argues that the "'defenses' [Mr. Goguen]

sees to the pending case [a]re not defenses at all." *Id.* The Government explains that Mr. Goguen's claims of actual innocence of the 1996 sexual assault conviction and the 2012-13 SORNA conviction can only be challenged on direct appeal or through a habeas corpus petition. *Id.* (citing *Goguen v. United States*, No. 1:19-cv-00351-JAW, 2020 U.S. Dist. LEXIS 53022 (Mar. 27, 2020)).

Next, the Government addresses Mr. Goguen's claim that the image attached to the prosecution version in the possession of child pornography case is not actually child pornography. *Id.* The Government reviews the guilty plea colloquy, which it says met the standards of Rule 11; the fact that the attachment was not the only image of child pornography Mr. Goguen downloaded, but only an exemplar; and Attorney Tzovarras' affidavit in which he states that he viewed the attached image and concluded that it met the definition of child pornography and had hired and received a report from an expert in computer forensics. *Id.* at 3-4.

The Government describes Mr. Goguen's accusations about his access to the laptop and knowledge of its contents as "simply false." *Id.* at 4. The Government notes that Mr. Goguen acknowledged at his Rule 11 that he "downloaded and possessed images and videos of children engaged in sexual acts." *Id.* (citing *Order on Mot. to Withdraw Plea and Admission* at 27-28). The Government observes that before Mr. Goguen made this "important admission," he "had reviewed the evidence, hired a computer forensic expert to review the discovery and the law enforcement forensic report, and had discussed the evidence and the forensics with his attorney." *Id.* (citing *Tzovarras Aff.* ¶¶ 12-18). The Government points to the law enforcement

report that itemized numerous images and videos of child pornography on the laptop and internet searches for Attorney Michael Waxman, who had previously represented Mr. Goguen. *Id.* at 5.

Turning to Mr. Goguen's claim that the conviction that led to his being placed on supervised release was invalid, making the search the USPO conducted illegal, the Government notes that Mr. Goguen did not appeal the SORNA conviction and that this Court already determined that the search of Mr. Goguen's computer was valid under the existing supervised release conditions. *Id.* at 6 (citing *Order on Mot. to Withdraw Plea and Admission* at 36-37).

The Government says that Mr. Goguen's double jeopardy argument has "no merit . . .." *Id.* Citing *United States v. Rentas-Felix*, 235 F. Supp. 3d 366, 379-80 (D.P.R. 2017), the Government says that Mr. Goguen is wrong about double jeopardy in claiming that the same conduct cannot be used as a basis for a new criminal charge and a revocation of supervised release. *Id.*

The Government is openly skeptical of some of Mr. Goguen's claims against Attorney Tzovarras and argues that none of Mr. Goguen's additional legal issues would have been meritorious. *Id.* at 7-9.

As for Mr. Goguen's dissatisfaction with Attorney Bourget, the Government points out that Attorney Bourget did not represent Mr. Goguen at the time he entered his guilty plea and admitted the supervised release violations. *Id.* at 9. Therefore, the Government says, Attorney Bourget's efforts as Mr. Goguen's defense counsel cannot provide a basis for him to withdraw his guilty plea and admission. *Id.*

23

Finally, as regards Mr. Goguen's allegations of governmental misconduct, the Government says that his arguments "have no merit, have no relevance to the defendant's pending motion, or have been considered and rejected by this Court." *Id.*

### C.    Robert Goguen's Reply

In his reply, Mr. Goguen notes that he recently filed another motion (referring to the motion for indicative ruling), which sets forth "grave judicial errors (and possible government misconduct)" that he says deprived him of due process and warrant relief. *Def.'s Reply* at 1.  Mr. Goguen then incorporates into his reply his contentions against Attorney Jon Haddow in his motion for indicative ruling. *Id.* at 2.

He argues that the Government does not contest his factual allegations or rebut his legal arguments for many of his claims. *Id.* Specifically, Mr. Goguen asserts that the Government does not dispute his contentions that the 1996 sexual assault conviction in Connecticut is constitutionally infirm and that he is actually innocent of both the 1996 conviction and the 2012-13 SORNA conviction. *Id.* at 3. Mr. Goguen also says that the Government does not dispute his claim that he asked Attorney Tzovarras to withdraw his guilty plea and admission and Attorney Tzovarras failed or refused to do so. *Id.* at 4.

Regarding the Government's response to his assertion that the image of child pornography attached to the prosecution version did not amount to child pornography, Mr. Goguen notes that the Government failed to refer to the so-called *Dost* factors in analyzing the image. *Id.*; *see United States v. Dost*, 636 F. Supp. 828,

832 (S.D. Cal. 1986), *aff'd sub nom. United States v. Weigand*, 812 F.2d 1239 (9th Cir. 1987), *aff'd*, 813 F.2d 1231 (9th Cir. 1987).

Mr. Goguen is unimpressed with the Government's arguments about his access to the laptop, arguing that the Government did not contest any of his asserted facts. *Id.* at 4-5. He concludes that he "stand[s] by" his prior argument. *Id.* at 5.

Mr. Goguen reiterates his view that as he was not guilty of the 1996 Connecticut conviction, he could not be guilty of the SORNA violation. *Id.* at 5-6. In doing so, he reiterates the arguments he raised in his pending motion. *Id.* He also argues that the Government "now attempts to mislead the Court to believe that USPO's search of the laptop in November 2015 was somehow authorized by the May 2013 search condition, which the Government insists [he] consented to." *Id.* at 6. He states that the Court "recently recognized there was no condition permitting USPO to search the laptop in 2015; 'I suspect that using the phrase "agreed upon," I thought the earlier condition was in the revocation judgment.'" *Id.* (quoting *Recusal Order* at 31).

Mr. Goguen also "stand[s] by" his double jeopardy argument. *Id.* at 7.

Mr. Goguen restates his arguments about the SOTP and his accusations that the Government used the terms of the SOTP as a "Trojan Horse" to gain entry to his home and the laptop. *Id.*

For the remainder of the reply, Mr. Goguen reiterates that the Government "does not dispute or contest any of the facts or correlating evidence, nor raises any legal challenge . . .." *Id.* at 7-12. He also claims that the Government

25

"inappropriately attempts to distract the Court" by stating that the Court rejected claims raised in Attorney Bourget's "deficient motion" and by raising unrelated claims of ineffective assistance of counsel and then stating that Mr. Goguen failed to show deficient performance on these claims. *Id.* at 9.

Mr. Goguen acknowledges that the Government disputes the facts supporting his allegation that judicial misconduct led to his entry of a guilty plea and admission. *Id.* at 12. Again, however, Mr. Goguen "stand[s] by" his argument. *Id.* Finally, Mr. Goguen expressly rejects some portions of Attorney Tzovarras' affidavit. *Id.* at 13-14.

## III.   LEGAL STANDARDS

A defendant may withdraw a guilty plea before he is sentenced if he or she "can show a fair and just reason for requesting the withdrawal." FED. R. CRIM. P. 11(d)(2)(B). Under this standard, courts consider:

> [1] whether the plea was voluntary, intelligent, knowing and in compliance with Rule 11; [2] the strength of the reasons offered in support of the motion [to withdraw]; [3] whether there is a serious claim of actual innocence; [4] the timing of the motion; and [5] any prejudice to the government if the withdrawal is allowed.

*United States v. Dunfee*, 821 F.3d 120, 127 (1st Cir. 2016) (some alterations in original) (quoting *United States v. Isom*, 580 F.3d 43, 52 (1st Cir. 2009)).[5] The "core concerns of Rule 11—whether the plea was voluntary, intelligent, and knowing—are the most important factors to consider." *Isom*, 580 F.3d at 52 (citations and internal quotation marks omitted). "A defendant does not have an 'unfettered right to retract

---

[5]   Another possible factor is whether the plea was pursuant to a plea agreement. *See United States v. Caramadre*, 807 F.3d 359, 366 (1st Cir. 2015). In Mr. Goguen's case, there was no plea agreement at either his original conviction and sentencing or his guilty plea for new criminal conduct and revocation admission, and this factor is not applicable.

a guilty plea' and he bears the burden to establish a fair and just reason for withdrawal." *Dunfee*, 821 F.3d at 127 (quoting *United States v. Merritt*, 755 F.3d 6, 9 (1st Cir. 2014)).

## IV.   DISCUSSION

### A.   Whether the Plea was Voluntary, Intelligent, and Knowing

The First Circuit has written that "whether the defendant's guilty plea was entered voluntarily, intelligently, and knowingly is regarded as the 'most significant' of the relevant factors." *Id.* (quoting *United States v. Cotal-Crespo*, 47 F.3d 1, 3 (1st Cir. 1995)).  The First Circuit focuses first on whether the trial court followed the requirements of Rule 11 at the hearing during which the defendant entered a guilty plea.  *Id.*  Unlike his earlier motion, in this pro se motion to withdraw guilty plea and admission, Mr. Goguen makes no claim that the Court failed to comply with requirements of Rule 11.  *See United States v. Goguen*, Nos. 1:11-cr-00003-JAW, 1:16-cr-00167-JAW, 2019 U.S. Dist. LEXIS 152148, at *15-38 (D. Me. Sept. 6, 2019).

Here, Mr. Goguen "solemnly admitted in open court that he [was] in fact guilty of the offense with which he [was] charged . . .." *Lefkowitz v. Newsome*, 420 U.S. 283, 288 (1975) (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)).  The law generally holds a defendant to the representations he makes to a court, *United States v. Gates*, 709 F.3d 58, 69 (1st Cir. 2013), and "declarations in open court carry a strong presumption of verity . . .."  *Dunfee*, 821 F.3d at 128 (quoting *United States v. Santiago Miranda*, 654 F.3d 130, 138 (1st Cir. 2011) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977))).  Accordingly, Mr. Goguen "may not thereafter raise

27

independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Lefkowitz*, 420 U.S. at 288 (quoting *Tollett*, 411 U.S. at 267).

These principles are especially forceful in Mr. Goguen's case. By September 15, 2017, when he entered his guilty plea and admitted the supervised release violations, Mr. Goguen had become a seasoned litigator, both with his defense lawyers and representing himself. Ever since his 1996 guilty plea in Connecticut to the sexual assault charge, Mr. Goguen has persistently challenged the repercussions of his decision, and he continued to actively litigate his SORNA case in this Court after he pleaded guilty and was sentenced.

By September 15, 2017, there were already one hundred and ninety-two docket entries in docket number 1:11-cr-00003-JAW. On November 14, 2011, after pleading guilty to the SORNA violation on July 14, 2011, Mr. Goguen filed a pro se motion to withdraw his guilty plea together with a motion for his then counsel Don Brown to withdraw. *Pro Se Mot. by Def. for Donald Brown to Withdraw as Attorney and to Withdraw Plea of Guilty* (ECF No. 51). In this motion, Mr. Goguen made arguments less well developed but similar to the arguments he is now making: that Attorney Brown had failed to perform an adequate investigation before Mr. Goguen entered his guilty plea, that Attorney Brown had misinformed him about the correct law, that Attorney Brown had unduly pressured him to plead guilty, and that he was innocent of the SORNA violation to which he had pleaded guilty. *Id.* at 1-3.

After the Court granted Mr. Goguen's pro se motion for Attorney Brown to withdraw and appointed Attorney Jon Haddow, *Oral Order Granting Mot. for Attorney Brown to Withdraw as Attorney* (ECF No. 58), Attorney Haddow formally withdrew the pro se motion to withdraw guilty plea on May 22, 2012, and requested that the Court set Mr. Goguen's sentencing hearing for a time after a trial in Maine state court was completed. *Def.'s Notice of Withdrawal of Mot. to Withdraw Guilty Plea with Mot. to Set Sentencing After Def.'s Trial in State Ct. Proceedings* (ECF No. 67). The Court granted the motion to withdraw the motion to withdraw guilty plea on June 13, 2012, before proceeding to a sentencing hearing on September 14, 2012. *Order Granting Mot. to Withdraw Pro Se Mot. to Withdraw Guilty Plea* (ECF No. 68); *Min. Entry* (ECF No. 79); *J.* (ECF No. 80).

Following his release from incarceration, the USPO petitioned to revoke Mr. Goguen's supervised released on August 16, 2013, based on an allegation that Mr. Goguen had viewed adult pornography at the county law library. *First Warrant Pet.* On September 8, 2013, Mr. Goguen filed a pro se motion for Attorney Haddow to withdraw from his case based on Attorney Haddow's alleged failure to comply with Mr. Goguen's directives, obtain Mr. Goguen's consent to legal actions, and present witnesses and arguments at his SORNA sentencing hearing, *Mot. for Appointment of Counsel* (ECF No. 109). Mr. Goguen withdrew his pro se motion for appointment of new counsel at the revocation hearing on September 23, 2013. *Tr. of Proceedings, Final Revocation Hr'g* at 2:10-20 (ECF No. 139) (*Revocation Hr'g Tr.*). Mr. Goguen then admitted the supervised release violation and the Court sentenced him to five

months of imprisonment and thirty-one months of supervised release.  *Id.* at 4:04-6:04; *Min. Entry* (ECF No. 112); *Revocation J.*

On October 1, 2013, Mr. Goguen filed a pro se notice of appeal from the revocation judgment.  *Revocation Notice of Appeal.*  Then on October 28, 2013, Mr. Goguen filed a pro se motion for reconsideration, contending that he did not commit the violation he admitted to on September 23, 2013, and that "contrary to the prosecution's statement in the court during the hearing, [he] was never found watching anything and [made] no statement saying so."  *Mot. for Recons.* at 2 (ECF No. 125).  He also objected to the conditions of supervised release that led to his revocation violation and to the conditions of supervised release the Court imposed at the September 23, 2013, revocation hearing.  *Id.* at 3-7.  On February 26, 2014, the Court denied Mr. Goguen's motion for reconsideration, *Order on Mot. for Recons., Mot. for Possible Appointment of Counsel, and Mot. for Release of Seized Property* (ECF No. 140), and on October 9, 2014, the Court of Appeals for the First Circuit affirmed the revocation judgment, concluding that Mr. Goguen's "waiver of rights respecting his revocation hearing was knowing and voluntary and that the conduct of the revocation hearing otherwise was consistent with Fed. R. Crim. Proc. 32.1." *First Circuit J.*  The First Circuit also rejected Mr. Goguen's complaint about the SOTP condition in the conditions of supervised release.  *Id.*

On November 13, 2015, the Government filed a second petition for revocation of supervised release.  *Second Warrant Pet.*  From November 13, 2015, to September 15, 2017, Mr. Goguen filed through counsel a complex motion concerning the

applicability of a five-year statutory minimum for the revocation violation and a motion to suppress evidence that resulted in an evidentiary hearing, as well as a motion in limine in his case for new criminal conduct. *See Order on Mem. in Opp'n to Gov't's Req. to Apply Penalty Ranges under 18 U.S.C. § 3583(k)* (ECF No. 170); *Recommended Decision on Mot. to Suppress* (ECF No. 186; ECF No. 44) (*Suppression Recommended Decision*); *Suppression Order*; *Mot. in Limine Order*.

In addition to the litigation in these cases, the PSR in this case confirms that Mr. Goguen had been convicted of criminal offenses in the courts of Connecticut and Massachusetts at the time of his guilty plea and admission and had a criminal history category of IV. *Presentence Investigation Report* ¶¶ 28-35, 37.

The point of this recitation is that when Mr. Goguen appeared before the Court on September 15, 2017, he was acutely aware of the serious consequences that flow from entering a plea of guilty to a criminal charge and, more than many defendants, Mr. Goguen could not claim ignorance of the criminal justice system in federal and state court.

Finally, the Court notes that it extensively addressed Mr. Goguen's assertions that his plea to the new criminal conduct and his admission of the revocation violations were not knowing and voluntary in its September 6, 2019, order denying his motion to withdraw guilty plea and admission. *Order on Mot. to Withdraw Plea and Admission* at 1-49. To the extent Mr. Goguen's pro se motion revisits the arguments the Court addressed on the knowing and voluntary nature of his guilty plea and admission, the Court reaffirms its September 6, 2019, order.

31

In summary, the Court affirms its finding and conclusion that on September 15, 2017, Mr. Goguen knowingly, intelligently, and voluntarily pleaded guilty to the new criminal charge of possession of child pornography and admitted the violations of the conditions of supervised release. This finding and conclusion is the "most significant" of the factors that the Court considers in rejecting Mr. Goguen's motion to withdraw his guilty plea and admission. *Dunfee*, 821 F.3d at 127.

**B.    The Strength of the Reason for Withdrawal**

   **1.    Actual Innocence**

      **a.    Whether the Image Met the Definition of Child Pornography**

In his pro se motion to withdraw guilty plea and admission, Mr. Goguen asserts for the first time that the image of child pornography attached as a sealed exhibit to the prosecution version in the possession of child pornography case does not meet the legal definition of child pornography. *Def.'s Mot.* at 4. This claim is frivolous.

To begin, the gravamen of the new criminal charge against Mr. Goguen was that he possessed an image of child pornography. *Possession Indictment* at 1 ("On about November 10, 2015, in the District of Maine, defendant **ROBERT GOGUEN** knowingly possessed any material that contained an image of child pornography"). On September 13, 2017, before the revocation and Rule 11 hearing, the Government filed a prosecution version of the offense. *Prosecution Version of Offense*, *United States v. Goguen*, 1:16-cr-00167-JAW (D. Me. Sept. 13, 2017), ECF No. 62 (*Prosecution Version*). The prosecution version expressly alleged that Mr. Goguen possessed an image of child pornography and further stated that there were "[s]everal images of

32

child pornography and videos of child pornography . . . located in the allocated space of the Hard Drive." *Id.* at 1.  The prosecution version explicitly stated that

> the images and videos saved in the allocated space of the Hard Drive included images and videos of children, under the age of twelve (12), engaged in sexual acts including oral sex and vaginal sex, with adults and other children.  The defendant downloaded the images and videos of child pornography.

*Id.* at 1-2.

During the revocation and Rule 11 hearing, the Court asked Mr. Goguen about the contents of the prosecution version:

> THE COURT: Mr. Goguen, would you stand again, sir?  Mr. Goguen, I have before me a prosecution version of the offense, which is dated September 13, 2017.  It makes reference to an Exhibit A, which is under seal and contains an image of child pornography.  Have you reviewed the prosecution version of the offense and have you looked at Exhibit A?
>
> THE DEFENDANT: I have, Your Honor.
>
> THE COURT: Now, this is a very important document, correct?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: It basically sets forth in some detail what it is the Government says you did to commit this crime.  Do you understand?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Did you look at it carefully to make certain that it is accurate?
>
> THE DEFENDANT: I have, Your Honor.
>
> THE COURT: And, again, Mr. Goguen, I have a very important question for you and require an honest and truthful answer.  Do you disagree in any way with what is set forth in the prosecution version of the offense?
>
> THE DEFENDANT: I do not, Your Honor.

> THE COURT: Is the information set forth in the prosecution version of the offense true to your own personal knowledge?
>
> THE DEFENDANT:  It is, Your Honor.

*Tr. of Proceedings*, *Partial Final Revocation & Change of Plea Hr'g* at 19:17-20:17 (ECF No. 285; ECF No. 112) (*Revocation/Rule 11 Tr.*).

Based on this colloquy, the Court needs go no further.  In admitting the contents of the prosecution version, regardless of whether an image was attached or what the attached image depicted, Mr. Goguen admitted committing the crime of possession of child pornography.  Specifically, he admitted downloading images and videos of children under twelve engaged in oral and vaginal sex with adults and other children, and by this description alone, the images and videos meet the statutory definition of child pornography.  *See* 18 U.S.C. § 2256(2)(B), (8)(A).

In addition, Mr. Goguen admitted that an image from the allocated space of the Hard Drive was attached to the prosecution version under seal as Exhibit A:

> THE COURT: And do you agree that the image that is set forth in Exhibit A is an image of a child under the age of twelve or alternatively a prepubescent minor?
>
> THE DEFENDANT: Yes, Your Honor.

*Id.* at 20:18-21.

To the extent that Mr. Goguen's motion to withdraw his guilty plea and admission focuses on this image attached as Exhibit A and alleges that Attorney Tzovarras gave him inaccurate advice about the legal definition of child pornography and that the image does not meet the legal definition of child pornography, the Court rejects Mr. Goguen's claims.  Attorney Tzovarras has sworn by affidavit that he was

34

aware of the federal definition of child pornography, that he viewed the image and concluded that it met that definition, and that he would not, as Mr. Goguen alleged, have told Mr. Goguen that an image of a naked child outside is sufficient to meet that definition. *Tzovarras Aff.* ¶¶ 6-11. The Court accepts Attorney Tzovarras' sworn statements as true.

Finally, to resolve any loose end, the Court retrieved Exhibit A to the prosecution version from the Court vault and reviewed the image. In *Sullivan v. Marchilli*, 827 F.3d 197 (1st Cir. 2016), the First Circuit discussed the United States Supreme Court's "nudity 'without more'" statement in *New York v. Ferber*, 458 U.S. 747 (1982). *Sullivan*, 827 F.3d at 199 (quoting *Ferber*, 458 U.S. at 765 n.18); *see also Osborne v. Ohio*, 495 U.S. 103, 112 (1990) ("We have stated that depictions of nudity, without more, constitute protected expression"). The *Sullivan* Court analyzed the image in that case, which depicted a naked adolescent girl on a beach, and concluded that the image met the definition of child pornography because it "showed a lewd exhibition." 827 F.3d at 200.

In *United States v. Silva*, 794 F.3d 173 (1st Cir. 2015), the First Circuit discussed the term "lascivious" as used in federal child pornography statutes. *Id.* at 181-82. The *Silva* Court noted that "lascivious is a 'commonsensical' term and that there is no exclusive list of factors—such as the so-called *Dost* factors—that must be met for an image (or film) to be lascivious." *Id.* at 181 (citing *United States v. Frabizio*, 459 F.3d 80, 85 (1st Cir. 2006)). At the same time, though not exclusive, the First Circuit has sometimes referred to the *Dost* factors in its analysis of whether an image

35

meets the statutory definition of sexually explicit conduct.[6]  *See Sullivan*, 827 F.3d at 199.  Here, the image in Exhibit A is of a young girl, perhaps six or seven years of age, unquestionably prepubescent, fully naked, sitting on what appears to be a marble counter.  The image is cropped so that her body takes up about ninety percent of the image.  She is facing the camera, appears to be wearing lipstick, and her hair is placed over her left shoulder.  Her right leg, cropped at the knee, is hanging over the counter and her left leg is tucked under her right thigh.  Her arms are positioned in such a way that they do not cover any part of her body.  Her genitals are clearly visible.

Applying the *Dost* factors, the Court finds that the image meets the definition of child pornography.  Although the girl's genitals are not the focus of the image, she is entirely naked in a coy and suggestive pose in a setting and posture inappropriate for such a young girl.  The Court finds that the image attached to the prosecution version as Exhibit A "show[s a] young [child] . . . fully nude and engaging in activities

---

6      There are six *Dost* factors:
       (1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;

       (2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

       (3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

       (4) whether the child is fully or partially clothed, or nude;

       (5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; [and]

       (6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.
636 F. Supp. at 832.

that display[] [her] genitalia in a manner that . . . a jury reasonably could deem to be intended to sexually arouse the viewer." *United States v. Charriez-Rolón*, 923 F.3d 45, 53 (1st Cir. 2019) (some alterations in original) (internal quotation omitted). "[T]hat is enough to show that the image[ is] 'lascivious.'" *Id.* (citing *Silva*, 794 F.3d at 181).

Based on Mr. Goguen's admission to the verbal description of the images and video on the computer and based on its review of the image attached to the prosecution version, the Court firmly rejects Mr. Goguen's contention that he is actually innocent because he did not possess images that meet the statutory definition of child pornography.

### b.    Access to Computer

Mr. Goguen's second point about his actual innocence is his current contention that the Government could not prove that he was the individual who downloaded the child pornography onto the laptop. *Def.'s Mot.* at 5. In fact, he accuses Brandon "the computer kid" of being the true culprit. *Id.*

The Court rejects Mr. Goguen's claim of actual innocence as it relates to this point. At the revocation and Rule 11 hearing, Mr. Goguen did not couch his admission as an acknowledgement that the Government could sustain its burden of proof; instead, Mr. Goguen admitted that he "downloaded the images and videos of child pornography." *Prosecution Version* at 2. To believe Mr. Goguen's current claim of innocence would require the Court to disbelieve his earlier admission of guilt before the Court. In other words, Mr. Goguen now says that the Government could have not

proven a fact that he admitted, a fact uniquely within his own personal knowledge, that is, whether he was the person who downloaded the child pornography onto the laptop.

Even without the admission, the Government's case against Mr. Goguen, though circumstantial, would have been enough for a jury to conclude that he was the person who downloaded the child pornography onto the laptop.  In its response to Mr. Goguen's motion to suppress, the Government noted Mr. Goguen's possession of the laptop, his nervous appearance before the PO, and his equivocal and perhaps evasive responses to the PO's questioning.  *Gov't's Resp. to Def.'s Mot. to Suppress Evid. Regarding New Criminal Charges and Supervised Release Revocation Hr'g* (ECF No. 175; ECF No. 25).  In its opposition to the pending motion, the Government also notes the nature of the internet searches on the laptop that occurred during the same timeframe as the downloading of child pornography.[7]  *Gov't's Opp'n* at 5.  In

---

[7]     The Government refers to a forensic report confirming internet searches concerning legal malpractice and Attorney Michael Waxman around November 6, 2015.  *Gov't's Opp'n* at 5.

The Court's docket reflects that Mr. Goguen filed a pro se lawsuit on August 30, 2011, against a number of government officials.  *See Aff. of Cassandra S. Shaffer, Esq.*, Attach. 7, *Docket Record* at 1, *Goguen v. Gilbair*, 1:12-cv-00048-JCN (D. Me. Feb. 6, 2012), ECF No. 2.  On July 5, 2013, Attorney Michael Waxman entered an appearance on behalf of Mr. Goguen.  *Entry of Appearance on Behalf of Pl., Robert Goguen, Gilbair*, 1:12-cv-00048-JCN (D. Me. July 5, 2013), ECF No. 67.  Attorney Waxman represented Mr. Goguen at a jury trial, which resulted in a defense verdict on October 9, 2015.  *Verdict Form, Gilbair*, 1:12-cv-00048-JCN (D. Me. Oct. 9, 2015), ECF No. 131.

On October 18, 2015, Mr. Goguen filed a pro se appeal and wrote on his notice of appeal that Attorney Waxman had "abandoned [his] case . . . ."  *Notice of Appeal, Gilbair*, 1:12-cv-00048-JCN (D. Me. Oct. 18, 2015), ECF No. 134.  On December 8, 2017, in another motion, Mr. Goguen engaged in a lengthy description of his problems with Attorney Waxman's representation.  *Req for Relief from J. or Order and Req. for New Trial, Gilbair*, 1:12-cv-00048-JCN (D. Me. Dec. 8, 2017), ECF No. 161.  Mr. Goguen claimed that his attorney "was totally incompetent."  *Id.* at 10.  One forensic report contained in a spreadsheet the Government attached to its opposition to Mr. Goguen's motion in this case reveals numerous searches on or around November 6, 2015, for Michael Waxman and legal malpractice.  *Gov't's Opp'n*, Attach. 3, *Case Info* at 1-5.  These searches, given their nature and timing, suggest that Mr. Goguen was the person doing the searching.

The Government then points to the forensic reports.  *Gov't's Opp'n* at 5.  The Government notes that in the April 19, 2016, forensic report, the examiner concluded that a user of the computer

addition, Attorney Tzovarras obtained an independent forensic evaluation which did not offer any obvious exculpatory explanation.  *Gov't's Opp'n* at 4; *Tzovarras Aff.* ¶¶ 14, 20-22.

When a federal defendant elects to plead guilty to a crime, he necessarily weighs whether the Government could prove the case at trial against the benefits of a guilty plea, including the possibility of a three-level reduction for acceptance of responsibility under the United States Sentencing Guidelines.  Attorney Tzovarras presented to Mr. Goguen the elements of the case and the Government's evidence and Mr. Goguen, not Attorney Tzovarras, made the decision to plead guilty.  *See Revocation/Rule 11 Tr.* at 5:05-11.[8]  Mr. Goguen's belated current conclusion—that if the matters had gone to trial or hearing, the Government could not have proven that he committed the crime and violations he admitted—is not a valid ground to allow him to withdraw his guilty plea and admission.

### 2.    The Prior Convictions

---

downloaded on the same laptop with the Waxman searches eight images and five videos of child pornography during the month of November 2015.  *Id.* (citing *Gov't's Opp'n*, Attach. 2, *Forensic Exam. Report* at 3).

In his motion, Mr. Goguen insinuates that "the computer kid (Brandon) from upstairs" may have been responsible for the child pornography downloads.  *Def.'s Mot.* at 5.  But assuming a factfinder would have learned about the Waxman searches and the child pornography downloads occurring in the same timeframe, Mr. Goguen would have properly taken into consideration in deciding whether to enter his guilty plea and admission that a factfinder might find that the person who did the Waxman searches also downloaded the child pornography and that Mr. Goguen was that person.

[8]      The revocation and Rule 11 transcript states:

THE COURT: You understand that in deciding to plead guilty to the new criminal charge and admitting the probation or supervised release violation, you have a right to receive Mr. Tzovarras's advice; however the decision as to whether to plead guilty or admit the violation is not Mr. Tzovarras's, it is yours[.  Do] you understand that?

THE DEFENDANT: I do.
*Revocation/Rule 11 Tr.* at 5:05-11.

In his motion, Mr. Goguen presses his argument that Attorney Tzovarras should have challenged the legality of his underlying convictions and that Attorney Tzovarras' failure to do so misled Mr. Goguen into admitting his guilt of the new criminal conduct and the revocation violations. *Def.'s Mot.* at 11-12. Mr. Goguen says that Attorney Tzovarras should have disputed the legality of the 1996 Connecticut and the 2012-13 federal convictions. *Id.* The 1996 Connecticut criminal judgment is long since final.[9] Regarding the 2012-13 SORNA judgment of this Court, Mr. Goguen had the right to appeal that conviction but elected not to do so, and the First Circuit recently affirmed the denial of a certificate of appealability for his § 2255 habeas corpus petition. *2020 First Circuit J.*; *Mandate* (ECF No. 348). The Magistrate Judge correctly ruled that Mr. Goguen's remedies were to be "found in 28 U.S.C. § 2255 or the appellate process," *Stone v. Holder*, 859 F. Supp. 2d 48, 53 (D.C.C. 2012)), not in a motion to withdraw a guilty plea. *See Goguen*, 2020 U.S. Dist. LEXIS 53022, at *2 ("The proper avenues for collaterally attacking a criminal judgment are a direct appeal or pursuant to a habeas corpus petition under 28 U.S.C. § 2255" (citing *Olson v. United States*, Civil Action No. 06-0565 (JR), 2006 U.S. Dist. LEXIS 84650, at *2-3 (D.C.C. Nov. 21, 2006))). Even if Mr. Goguen's argument is slightly different, namely that Attorney Tzovarras' legal advice misled him, the argument stumbles at its premise: Attorney Tzovarras correctly informed Mr. Goguen that his purposed legal

---

[9]     Mr. Goguen unsuccessfully filed a state habeas petition regarding the 1996 conviction in the state of Connecticut. *See Goguen v. Comm'r of Corr.*, 195 Conn. App. 502, 505, 225 A.3d 977 (Conn. App. Ct. 2020).

challenges to the 1996 Connecticut and 2012-13 federal convictions could not be the basis of a defense to the charges in these pending cases.

Mr. Goguen also uses his position that his underlying convictions are unconstitutional and invalid to argue that the USPO's search pursuant to the terms of supervised release was illegal. *Def.'s Mot.* at 6. To this argument, the Court applies the same logic as above—that the purposed legal challenges to the underlying convictions cannot not be the basis of a defense to the charges in these pending cases.

### 3.    The Double Jeopardy Issue

In his motion, Mr. Goguen claims that the Government cannot charge that he violated the terms of supervised release and indict him on a new criminal charge based on the same events without running afoul of the double jeopardy clause. *Def.'s Mot.* at 7. Mr. Goguen quotes only a portion of *Johnson*, 529 U.S. 694:

> The Supreme Court also delineated that "[w]here the acts of violation are criminal in their own right, they may be the basis for separate prosecution, which would raise an issue of double jeopardy if the revocation of supervised release were also punishment for the same offense."

*Def.'s Mot.* at 7 (quoting *Johnson*, 529 U.S. at 700). The full quotation from *Johnson* reads:

> While this understanding of revocation of supervised release has some intuitive appeal, the Government disavows it, and wisely so in view of the serious constitutional questions that would be raised by construing revocation and reimprisonment as punishment for the violation of the conditions of supervised release. Although such violations often lead to reimprisonment, the violative conduct need not be criminal and need only be found by a judge under a preponderance of the evidence standard, not by a jury beyond a reasonable doubt. Where the acts of violation are criminal in their own right, they may be the basis for separate prosecution, which would raise an issue of double jeopardy if

41

the revocation of supervised release were also punishment for the same offense. <u>Treating postrevocation sanctions as part of the penalty for the initial offense, however (as most courts have done), avoids these difficulties.</u>

*Johnson*, 529 U.S. at 700 (emphasis supplied) (internal citation omitted).[10]  As the full quotation reveals, in *Johnson*, the Supreme Court rejected the double jeopardy argument that Mr. Goguen is making here.  *See Rentas-Felix*, 235 F. Supp. 3d at 379-80; *see also United States v. Roy*, 438 F.3d 140, 143 (1st Cir. 2006) ("[R]evocation proceedings are not criminal proceedings" (quoting *United States v. York*, 357 F.3d 14, 24 (1st Cir. 2004) (citations omitted) (quoting *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984)))).  The law does not support Mr. Goguen's double jeopardy argument and it offers no basis to allow him to withdraw his guilty plea.

### 4.    The Supervised Release Conditions and SOTP Contracts

In his motion, Mr. Goguen argues that there was no supervised release condition permitting the USPO to search his laptop in 2015 and that the Court recognized this statement as true.  *Def.'s Reply* at 6 (citing *Recusal Order* at 31).  He also argues that the SOTP contract provision prohibiting him from possessing adult pornography, which is incorporated into the revocation judgment conditions of supervised release through the second special condition, was an improper deprivation of his constitutional right to religious freedom; that this prohibition was not in effect after September 2013; and that the earlier May 2013 modification to his special conditions was nonbinding even though he signed it because it was the result of

---

[10]    The Court would find it troubling if an attorney selectively quoted *Johnson* in the fashion Mr. Goguen did, leaving out the critical next sentence, which contradicts his argument.

duress, coercion, and threats by the USPO.  *Def.'s Mot.* at 8-9.  The Court reviews the search conditions in this case, its previous analysis in the recusal order, and the SOTP contract arguments.

After Mr. Goguen pleaded guilty to the SORNA violation on July 14, 2011, the Court imposed three years of supervised release after his period of incarceration and attached certain conditions to his term of supervised release.  *Am. J.*  One of the terms of his supervised release reads:

> Defendant shall fully participate in sex offender treatment as directed by the supervising officer.  He shall scrupulously abide by all policies and procedures of that program.

*Id.* at 4.  Mr. Goguen's term of supervised release commenced on May 11, 2013.  *First Warrant Pet.* at 1.  On May 23, 2013, Mr. Goguen was found in possession of a laptop computer that contained numerous images of pornography and on the same day, the USPO filed a request to modify the conditions of supervised release with the consent of the offender.  *Req. for Modifying the Conditions or Term of Supervision with the Consent of the Offender* (ECF No. 93) (*May 23, 2013, Req. to Modify*).  Mr. Goguen consented to a new condition that required him to comply with the computer monitoring program and to allow the USPO to conduct "periodic unannounced examinations of his/her computer(s) . . .  performed by the probation officer based on reasonable suspicion of contraband evidence or a violation of supervision."  *Id.*  The Court approved the consented to modification on May 28, 2013.  *Order Granting Pet. to Modify Supervised Release* (ECF No. 95).

On August 16, 2013, the USPO filed a petition for warrant or summons for offender under supervision, alleging that he had failed to comply with Special Condition #2, participation in sex offender treatment, by accessing adult pornography at law library computers at the Penobscot County Judicial Center. *First Warrant Pet.* at 1-2. On September 23, 2013, Mr. Goguen admitted violating the term of his supervised release that required him to participate in sex offender treatment, *id.* at 1–2; *Min. Entry* (ECF No. 112), and on the same day, the Court sentenced Mr. Goguen to five months of imprisonment and thirty-one months of supervised release. *Revocation J.*

Even though at the September 23, 2013, hearing the Court ordered that "the defendant shall comply with all standard and special conditions previously imposed in this case on the amended judgment dated January 31, 2013, and subsequently amended on May 28, 2013," *Revocation Hr'g Tr.* at 20:19-23, the computer search condition inadvertently was not placed in the September 23, 2013, revocation judgment. *Revocation J.* at 4. Despite this oversight, the revocation judgment contained two special conditions relevant here:

> 1.     Defendant shall at all times readily submit to a search of his residence, and of any other premises under his dominion and control, by his supervising officer, upon the officer's request when the officer has reasonable basis to believe that such a search will lead to the discovery of evidence of violation of the terms of supervised release, including pornographic materials that Defendant is prohibited from possessing under the rules of his sex offender treatment program. Failure to submit to such a search may be grounds for revocation; and

> 2.     Defendant shall fully participate in sex offender treatment as directed by the supervising officer. He shall scrupulously abide by all policies and procedures of that program. During sex offender treatment,

> Defendant shall, if required by the therapeutic program, undergo periodic random polygraph examinations to ensure compliance with the therapeutic program requirements.  No violation proceedings will arise solely on Defendant's failure to pass a polygraph examination or on Defendant's refusal to answer polygraph questions based on 5th Amendment grounds.

*Id.*

In the fall of 2015, the anonymous tipster alleged that Mr. Goguen had been "showing porn to children and bragging about getting away with doing stuff he [wa]s not supposed to and duping the government." *Second Am. Revocation Report* at 7. The tipster alleged that Mr. Goguen had been changing "the sim cards in his phone to conceal the dirty pictures."  *Id.*  This information, combined with the PO's knowledge of corroborating information, Mr. Goguen's "anxious and unusually nervous" appearance, *Suppression Recommended Decision* at 4, and Mr. Goguen's equivocal responses to the PO's questions, allowed the PO to perform a search of his computer to determine whether the tipster's information was true pursuant to the first special condition of supervised release set in the revocation judgment.  In sum, the PO concluded he had a "reasonable basis to believe that [a search of the laptop would] lead to the discovery of evidence of violation of the terms of supervised release . . .." *Revocation J.* at 4.  When the PO accessed the laptop, he found images and videos of child pornography.

Mr. Goguen appealed the September 23, 2013, revocation judgment, *Revocation Notice of Appeal*, and moved the Court to appoint new counsel. *Pro Se Mot. to Appoint New Counsel* (ECF No. 117).  He claimed that his waiver of rights at the revocation hearing was not knowing and voluntary and that the Court erred in

its imposition of a sex offender treatment condition as one of his conditions of supervised release. *First Circuit J.* at 1. On October 9, 2014, the Court of Appeals for the First Circuit affirmed the revocation judgment, concluding that the Court committed "no error, let alone plain error." *Id.* Specifically, the First Circuit wrote:

> We also conclude that the district court, in imposing a special condition requiring the defendant to undergo sex-offender treatment, did not err by delegating to the United States Probation Office the choice of the particular treatment program in which to enroll the defendant, even if such treatment program included a restriction on the use of adult pornography.

*Id.* at 1 (citing *United States v. Sebastian*, 612 F.3d 47, 52 (1st Cir. 2010)).

Mr. Goguen raises again the same issue the First Circuit decided against him concerning the adult pornography prohibition condition. *Def.'s Mot.* at 8. In *Sebastian*, the First Circuit wrote that they "see no plain error in requiring [the defendant] to comply with a pornography ban if and only as required by any treatment program he may attend—in effect, remitting the matter to the judgment of the treatment program." 612 F.3d at 52. The First Circuit noted that the defendant could "challenge specific applications of any program's requirements when actually imposed in the future." *Id.* In *United States v. Medina*, 779 F.3d 55 (1st Cir. 2015), the First Circuit expressed reservations about a ban on adult pornography, but the appellate court observed that a ban "conditioned on the requirements imposed by a sex offender treatment program, as in *Sebastian*," may be justified. *Id.* at 64. The First Circuit determined that the ban was justified in this case when it affirmed this Court's revocation judgment.

The Court turns to Mr. Goguen's assertion that he should be allowed to withdraw his guilty plea and admission because he never signed the SOTP contract after he was released from incarceration in January 2014 and therefore the SOTP ban on his possession of adult pornographic materials was not applicable to him and could not be used as a basis for the computer search. *Def.'s Mot.* at 9. In contrast, the USPO asserts that Mr. Goguen remained bound by the terms of the SOTP that he had signed in May 2013. *Second Am. Revocation Report* at 6-7. Assuming the USPO is correct, Mr. Goguen's argument falls of its own weight.

Moreover, even if Mr. Goguen did not sign a new contract with the SOTP in January 2014, when he recommenced supervised release, it makes no difference. Condition two of the special conditions in the September 23, 2013, revocation judgment expressly required him to "fully participate in sex offender treatment as directed by the supervising officer." *Revocation J.* at 4. The special condition also required Mr. Goguen to "scrupulously abide by all policies and procedures of that program." *Id.* The special condition did not make his compliance with the policies of the SOTP contingent upon his agreement to the terms of a contract between Mr. Goguen and the SOTP. The special condition simply required him to comply with the terms of the SOTP. The PO was aware that possession of pornography was forbidden under the policies of Mr. Goguen's SOTP; therefore, his reasonable suspicion that Mr. Goguen possessed pornography on his blue laptop—along with the other factors— provided reasonable grounds to perform a computer search under Special Condition One of the revocation judgment.

47

Next, Mr. Goguen challenged the legality of the computer search when he filed a motion to suppress on January 22, 2017. *Def.'s Mot. to Suppress Evid. Regarding New Criminal Charges and Supervise Release Revocation Hr'g* (ECF No. 174; ECF No. 21) (*Def.'s Mot. to Suppress*). The Magistrate Judge held an evidentiary hearing on March 31, 2017, *Min. Entry* (ECF No. 183; ECF No. 41), and issued a recommended decision recommending the denial of the motion on May 5, 2017, *Suppression Recommended Decision*, which this Court affirmed on June 19, 2017. *Suppression Order*. Mr. Goguen had the perfect right to evaluate the soundness of the orders on the motion to suppress in making his decision to enter a guilty plea and admit to the supervised release violations as opposed to going to trial and challenging the rulings on appeal. Mr. Goguen certainly knew in September 2017 whether he had signed a new contract in January 2017 with the SOTP, and he could have evaluated whether that fact provided a basis for challenging the computer search. Instead, on September 15, 2017, he entered a non-conditional guilty plea and admission and he has not demonstrated that his guilty plea and admission were anything but knowing, voluntary, and intelligent acts.

Finally, the Court finds unpersuasive Mr. Goguen's claim that he was forced to sign under duress the May 23, 2013, modification, which added the computer search condition. *Def.'s Mot.* at 9. Mr. Goguen's argument is flatly contradicted by the waiver he signed on May 23, 2013. *See May 23, 2013, Req. to Modify*, Attach. 1, *Waiver of Hr'g to Modify Conditions of Probation/Supervised Release or Extend Term of Supervision* at 1. Again, the Court is allowed to rely on representations that Mr.

48

Goguen made to the Court. Similarly, the Court rejects Mr. Goguen's contention that in May 2013, he was similarly forced to sign under duress the contract with the SOTP. *Def.'s Mot.* at 9. As of May 2013, he was required as a condition of supervised release to "abide by all policies and procedures" of the SOTP, conditions that the First Circuit upheld on appeal. *Revocation J.* at 4; *First Circuit J.* at 1. Lastly, as noted above, it does not matter whether the May 2013 modification and SOTP contract were in effect as of November 2015 because the search was authorized under the special conditions that were in effect at the time of the computer search.

### 5.    The Search of the Computer

Mr. Goguen is especially forceful in his belief that the search of the laptop which contained child pornography was illegal. *Def.'s Mot.* at 9, 12-20. This issue is multilayered. In addition to the procedural history discussed in the preceding section, on January 22, 2017, Attorney Tzovarras filed a motion to suppress the results of the search of the laptop. *Def.'s Mot. to Suppress.* Attorney Tzovarras claimed that the search of the computer was not based on reasonable suspicion and that the subsequent search warrant was based on tainted information. *Id.* at 1. The Magistrate Judge held an evidentiary hearing, and on May 5, 2017, he issued a recommended decision in which he recommended that the Court deny the motion to suppress. *Suppression Recommended Decision* at 1.

The recommended decision squarely addressed one of the main points of Mr. Goguen's pending motion: whether the PO had a "reasonable basis to believe" that the search would lead to the discovery of evidence in violation of the terms of his

supervised release, including pornographic material that Mr. Goguen was prohibited from possessing as a condition of his SOTP. *Id.* at 5-8. The Magistrate Judge reviewed the same arguments that Mr. Goguen is pressing now: the veracity of the anonymous tipster, the search language of the conditions of supervised release, and the PO's grounds for executing the search. *Id.* On June 16, 2017, the Court affirmed the Magistrate Judge's recommended decision and denied the motion to suppress. *Suppression Order.*

At the Rule 11 and partial revocation hearing on September 15, 2017, the Court reviewed with Mr. Goguen the fact that by pleading guilty, he was waiving the right to challenge on appeal the legality of the orders on the motion to suppress evidence. *Revocation/Rule 11 Tr.* at 15:14-24. Mr. Goguen expressly acknowledged that by pleading guilty, he was waiving the right to challenge this ruling. *Id.*

On April 22, 2019, Mr. Goguen through counsel filed a motion to withdraw guilty plea and admission and, in that motion, he raised the same issues he is pressing here. *First Mot. to Withdraw Plea and Admission* at 4. In fact, Mr. Goguen argued that he should be allowed to withdraw his guilty plea and admission in order to challenge the legality of the computer search that led to the new criminal charge and revocation petition. *Id.* On September 6, 2019, the Court addressed those issues and resolved them against Mr. Goguen. *Order on Def.'s Mot. to Withdraw Plea and Admission* at 32-37.

Mr. Goguen returns attempting to recast the same issues the Court previously ruled on. He is no more successful this time.

Unlike the earlier motions, this time Mr. Goguen explicitly frames his motion to withdraw his guilty plea and admission on the ground that they were the "product of ineffective assistance of counsel." *Dunfee*, 821 F.3d at 126. The First Circuit wrote that to analyze a motion to withdraw guilty plea based an ineffective assistance of counsel, the Court uses the "two-part standard articulated in *Strickland v. Washington*, 466 U.S. 668 . . . (1984)." *Id.* at 128.[11] The *Dunfee* Court explained:

> In order to prevail, [the defendant] must "show that, first, counsel's performance in advising [his] guilty plea[] fell below the standard of performance of reasonable proficient counsel, and second, that by such inadequate performance, [the defendant] was induced to enter [a] guilty plea[] which he otherwise would not have entered."

*Id.* (some alterations in original) (quoting *United States v. Isom*, 85 F.3d 831, 837 (1st Cir. 1996)). Furthermore, in *Dunfee*, the First Circuit noted that "the *Strickland* test imposes 'highly deferential' judicial scrutiny of counsel's performance and 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Lopez-Nieves v. United States*, 917 F.2d 645, 648 (1st Cir. 1990) (quoting *Strickland*, 466 U.S. at 689)).

Mr. Goguen's primary point of dissatisfaction with Attorney Tzovarras relates to the USPO search and seizure of the laptop. Yet, Attorney Tzovarras filed a motion to suppress evidence gleaned from the search and seizure and was unsuccessful. Mr. Goguen was upset that Attorney Tzovarras did not do more to challenge the

---

[11]    The Court also discussed the *Strickland* standard in its September 6, 2019, order, and applied it briefly to Attorney Tzovarras' handling of the suppression motion for the computer search. *Order on Mot. to Withdraw Plea and Admission* at 32-37. Since the argument is raised more clearly and explained more fully in the pending motion, the Court revisits the standard and its application to Mr. Goguen's arguments.

anonymous tipster, whose call led the PO to Mr. Goguen's residence on November 10, 2015.  But Attorney Tzovarras did question the PO's use of an anonymous tip as part of the basis for searching and seizing the laptop.  *See Recommended Decision* at 6-8.

For Attorney Tzovarras to subpoena the person that Mr. Goguen believed was the tipster to testify at the suppression hearing would have presented a separate set of risks.  There is no evidence here that Mr. Goguen's suspicions about a particular person being the tipster were in fact correct and it would not have strengthened the motion to suppress if Mr. Goguen were wrong.  Next, if the tipster turned out to be the person Mr. Goguen believed him to be and appeared at the hearing, the tipster may well have credibly confirmed the substance of the tip.  To this point, the Magistrate Judge found that "the information contained in the tip was consistent with facts known to Officer Oswald before the probation office received the tip."  *Id.* at 6.  Finally, the Magistrate Judge found that the PO's "reasonable suspicion" justifying the search was based on more than just the contents of the information supplied by the tipster.  *Id.* at 7.

None of Mr. Goguen's complaints about the way Attorney Tzovarras handled the motion to suppress is meritorious.  It was well within Attorney Tzovarras' discretion as defense counsel to judge it wiser for the anonymous tipster to remain anonymous and argue, as he did, that the law views such anonymous tips with skepticism, *see id.* at 6, than to present the anonymous tipster at the suppression hearing and find that he strengthened the reasonableness of the search.

52

In vehement language, Mr. Goguen charges the PO with engaging in "a relentless pattern of unethical, unlawful, and outrageous misconduct," *Def.'s Mot.* at 15, but the Magistrate Judge relied on the testimony of the PO in arriving at his conclusion that the search was legal. To engage in an assault against the personal integrity of the PO would have been a risky tactic, potentially placing Mr. Goguen in a bad light before the Court and the Magistrate Judge absent evidence that the argument was supported by the facts. Despite Mr. Goguen's aggressive language, there is nothing in this record that supports his claims of PO misconduct nor justifies his withdrawal of his guilty plea and admission.

The Court addresses Mr. Goguen's challenges to the computer search based on the enforceability of the SOTP contracts and modification to the special conditions, *Def.'s Mot.* at 9, in the preceding section and concludes that these arguments do not justify his withdrawal of his guilty plea and admission.

### 6.    The More Probable Than Not Allegation

Mr. Goguen also alleges that Attorney Tzovarras misinformed him that the Government would only have to prove the new criminal conduct alleged in the indictment by a more probable than not standard. *Def.'s Mot.* at 21. In his affidavit, Attorney Tzovarras denies that he advised Mr. Goguen that the standard of proof for the new criminal charge was more likely than not. *Tzovarras Aff.* ¶ 29. The Court views as preposterous Mr. Goguen's charge that Attorney Tzovarras misinformed him of the Government's beyond a reasonable doubt standard of proof for the new indictment. As Attorney Tzovarras stated in his affidavit, he is an experienced

criminal defense lawyer and the notion that he misinformed Mr. Goguen about such a basic concept of criminal law simply does not ring true.

Even if Mr. Goguen misheard Attorney Tzovarras (which is not what he alleges), this would not be a sufficient basis for withdrawal of a guilty plea under the second prong of the *Strickland* test. At the revocation and Rule 11 hearing, the Court expressly referred to the "beyond a reasonable doubt" standard during its colloquy:

> THE COURT: Are you also satisfied that the admissible part of that evidence would permit a properly instructed jury to determine beyond a reasonable doubt that your client is guilty of the crime to which he is pleading guilty?
>
> ATTORNEY TZOVARRAS: Yes, Your Honor.

*Revocation/Rule 11 Tr.* at 19:11-16. Moreover, the Court discussed the standard with Mr. Goguen:

> THE COURT: At trial you would be presumed innocent and the Government would have the burden of proving that you are guilty beyond a reasonable doubt. And you would not have the burden of proving that you are not guilty. Do you understand?
>
> THE DEFENDANT: I do.

*Id.* at 16:23-17:03. These exchanges show that even if Attorney Tzovarras had made this error, it would not have changed Mr. Goguen's plea because the Court informed him of the correct burden of proof. In short, the Court rejects as inaccurate Mr. Goguen's burden of proof allegation against Attorney Tzovarras.

### 7. The Conditional Guilty Plea

In his motion, Mr. Goguen reasserts an argument that Attorney Bourget made in his motion to withdraw guilty plea and that the Court rejected, namely that

Attorney Tzovarras provided ineffective assistance of counsel regarding the guilty plea and admission because he failed to inform Mr. Goguen that he could have entered a conditional plea of guilty and a conditional admission and reserved the right to appeal the conviction and violation to the Court of Appeals for the First Circuit. *Def.'s Mot.* at 21. The Court rejected this assertion in its September 6, 2019, order on Mr. Goguen's earlier-filed motion to withdraw guilty plea and admission. *Order on Mot. to Withdraw Plea and Admission* at 29-32. The Court incorporates in this order its discussion in the September 6, 2019, order.

### 8.   Ineffective Assistance of Counsel

In his motion, Mr. Goguen asserts that Attorney Tzovarras' representation was ineffective for various reasons and that Attorney Tzovarras' deficient performance justifies the withdrawal of Mr. Goguen's guilty plea and admission. *Def.'s Mot.* at 11-21. The Court discusses these arguments in the sections above and concludes that none passes the *Strickland* test for ineffective assistance of counsel. The Court also incorporates its prior analysis of Mr. Goguen's earlier ineffective assistance of counsel claims in its September 6, 2019, order to the extent that the claims overlap. *See Order on Mot. to Withdraw Plea and Admission* at 32-39.

Mr. Goguen also claims that Attorney Bourget's performance was deficient. *Def.'s Mot.* at 22-23. The Government points out that Attorney Bourget did not represent Mr. Goguen until after he pleaded guilty to the new criminal conduct and admitted the revocation conduct and states that "[t]he alleged deficiencies have no bearing on the pending motion." *Gov't's Opp'n* at 9. The Court agrees with the

Government that Attorney Bourget's representation had no impact on Mr. Goguen's guilty plea and admission and therefore is not a basis for a withdrawal of guilty plea and admission. To the extent Mr. Goguen uses his reply to incorporate his ineffective assistance of counsel claims against Attorney Haddow in his motion for indicative ruling, *Def.'s Reply* at 2, the Court applies the same logic.

### 9.      Governmental and Judicial Misconduct

In his motion, Mr. Goguen alleges that the USPO made multiple false statements that ultimately resulted in his decision to plead guilty and that this Court deprived him of his due process rights in a way that contributed to his decision to plead guilty. *Def.'s Mot.* at 24-28. As discussed above, Mr. Goguen already litigated his motion to suppress, and the Court considered the evidence and affirmed the Magistrate Judge's recitation of the facts. *Suppression Order*. This version of the facts does not present false statements by the USPO that amount to governmental misconduct. The Court incorporates its analysis in the recusal order to respond to Mr. Goguen's allegation of judicial misconduct. *See Recusal Order* at 18-38. On both points, Mr. Goguen has not demonstrated a valid reason for the withdrawal of his guilty plea and admission.

### C.      Serious Claim of Actual Innocence

In his motion, Mr. Goguen repeatedly states that he is actually innocent of both the new criminal conduct and the violations of the conditions of his supervised release. The Court discusses this issue in its analysis of the reason for Mr. Goguen's attempt to withdraw his guilty plea and admission and will not repeat that analysis

here. The Court only notes that Mr. Goguen's current claim of actual innocence cannot be reconciled with his decision to admit the prosecution version in the new criminal conduct case and the revocation report in the violations of supervised release case.

### D.   Timing

#### 1.   The Attempted Supplementary Filing

In his motion, Mr. Goguen refers to a filing of December 25, 2017, and claims his pro se motion to withdraw supplements his earlier filing. *Def.'s Mot.* at 1 ("This motion both amends and supplements my 25 December 2017 pro se motion to withdraw both guilty plea(s)"). The docket does not contain a December 25, 2017, filing. The Court extensively discussed the December 25, 2017, pro se motion to withdraw in its order denying Mr. Goguen's earlier-filed motion to withdraw guilty plea and admission and in its order denying Mr. Goguen's motion to recuse. *Order on Mot. to Withdraw Plea and Admission* at 35, 40-46; *Recusal Order* at 33-37.

In short, Mr. Goguen wrote the Court a letter dated December 25, 2017, which amounted to a pro se motion to withdraw his guilty plea and admission. At the time, he was represented by Attorney Tzovarras and it is standard practice for the Court not to docket a pro se motion when a defendant is represented because the filing might not be in the best interest of the defendant. Instead, the Court sends the pro se letter to counsel and awaits word as to whether the attorney wishes to adopt the motion, file it in a modified form, allow the pro se motion to be filed as is, or confer with his client and decide not to press the issue. Attorney Tzovarras neither adopted

nor filed Mr. Goguen's December 25, 2017, motion to withdraw guilty plea and admission and therefore there is no December 25, 2017, pro se motion to withdraw. On Mr. Goguen's behalf, Attorney Ronald Bourget filed a motion to withdraw guilty plea on April 22, 2019. *First Mot. to Withdraw Plea and Admission*. In a forty-nine-page opinion, the Court denied the motion on September 6, 2019. *Order on Mot. to Withdraw Plea and Admission*.

In its September 6, 2019, order on Mr. Goguen's first motion to withdraw guilty plea and admission, after thoroughly analyzing the issue, the Court accepted April 22, 2019, as the date that Mr. Goguen filed a motion to withdraw guilty plea and admission but also concluded that if the December 25, 2017, date applied, Mr. Goguen's delay in filing the motion to withdraw guilty plea and admission was a factor weighing against granting of his motion. *Order on Mot. to Withdraw Plea and Admission* at 41, 43. The Court applies the same logic and reaches the same result again here. The date that Mr. Goguen filed the instant motion to withdraw guilty plea and admission is January 10, 2020, nearly two-and-one-half years after September 15, 2017, the date he pleaded guilty to the new criminal conduct and admitted the supervised release violation. Even if the Court were to accept the December 25, 2017 date, which it does not, the delay from September 15, 2017, to December 25, 2017, would be a factor weighing against granting his current motion to withdraw his guilty plea.

## 2.    The Timing of the Motion to Withdraw Guilty Plea

The Court is not certain what date Mr. Goguen contends should be the effective

date for his filing the motion to withdraw his guilty plea and admission.  Mr. Goguen

filed his current pro se motion on January 10, 2020, more than two years after he

entered his guilty plea and admission.  *Def.'s Mot.*  Attorney Bourget filed a motion

to withdraw guilty plea and admission on April 22, 2019, over a year and a half after

he entered his guilty plea and admission.  *First Mot. to Withdraw Plea and*

*Admission.*  To back the date up for his filing, Mr. Goguen apparently argues that the

Court should use December 25, 2017, as the date that he filed his pro se motion to

withdraw his guilty plea.[12]  *Def.'s Mot.* at 1.  Whatever date is used, the Court finds

Mr. Goguen's motion to withdraw untimely.

Again, on September 15, 2017, Mr. Goguen pleaded guilty to possession of child

pornography and to violating two conditions of his supervised release.  *Min. Entry*

(ECF No. 193); *Min. Entry, United States v. Goguen*, 1:16-cr-00167-JAW (D. Me. Sept.

15, 2017), ECF No. 64.  As Mr. Goguen acknowledges, one of the factors the Court

must consider in resolving a motion to withdraw guilty plea is when a defendant

obtained new information in relation to when he filed the motion to withdraw guilty

plea.  *See Def.'s Mot.* at 1.  Mr. Goguen's motion discusses that when he was in Dover-

Foxcroft jail, he learned from fellow inmates that the image of a child that he

admitted possessing does not meet the legal definition of child pornography and this

---

[12]    As will be seen, Mr. Goguen also provides letters to Attorney Tzovarras that predate his
December 25, 2017, filing.  The Court is not certain whether he is claiming that the Court should use
the first date that he mentioned to Attorney Tzovarras his desire to withdraw his guilty plea and
admission or the December 25, 2017, date when he wrote the Court directly requesting to do so.

led him to request a meeting with Attorney Tzovarras. *Id.* But Mr. Goguen does not

say when he had this conversation with his fellow inmates or when he requested a

meeting with Attorney Tzovarras. Even if his conversations with fellow inmates

could constitute new information for purposes of a motion to withdraw guilty plea,

which the Court doubts, as Mr. Goguen does not supply the date he learned of this

supposedly new information from his fellow inmates, the Court cannot reach this

argument.

Mr. Goguen then states that on November 25, 2017, he wrote to Attorney

Tzovarras, "emphasizing there were 'quite a few issues' [he] wanted to go over before

heading into a pre-sentence conference; chiefly to discuss the information [he] learned

and to go over withdrawing the plea to redress." *Id.* Mr. Goguen attached a copy of

his November 25, 2017, letter to Attorney Tzovarras and the letter itself does not

support his characterization. *Def.'s Mot.*, Attach. 1, *Letter from Robert Goguen to Att'y*

*Tzovarras* (Nov. 25, 2017) at 1-3.[13] Whatever Mr. Goguen meant in the November

---

13     The letter reads:
       Re: Presentence issues

       Dear Hunter,

       I would like to address quite a few issues before we get to any presentence hearing or
       conference. First off I wasn't very forthcoming to probation during P.S.R., concerning
       my marriage to Jamie Ness. However, more importantly since coming to maine I have
       endured a rather large amo[u]nt of heinous treatment by a number of parties. I do
       believe you may write this off as some delusion I may have or otherwise, that I believe
       that individuals are sing[]ling me with no reason. I assure you 100% this is not the
       case, I'm looking at spending the next decade of my life behind bars, not appealing. I
       can no longer keep living like I can handle everything, no problem. So I am seeking
       your help to present a case to Woodcock, that I have within a very short time endured
       some serious trauma and over last few years compounded have led to a meltdown of
       sorts. Not using the term pitch, but I would like to present to the judge that maybe
       my actions were directly related to issues or certainly participated in me acting like an
       idiot. I'm looking at least spending the next 10 yrs like an animal, maybe after seeing

25, 2017, letter by "quite a few issues," there is no direct mention in the November 25, 2017, letter of withdrawing his guilty plea and admission and, contrary to his description, the Court does not view Mr. Goguen's November 25, 2017, letter as requesting Attorney Tzovarras to file a motion to withdraw guilty plea and admission.

Mr. Goguen also attached a copy of his December 18, 2017, letter to Attorney Tzovarras. *Def.'s Mot.*, Attach. 2, *Letter from Robert Goguen to Att'y Tzovarras* (Dec. 18, 2017).[14]   Mr. Goguen says that he wrote Attorney Tzovarras about "urgent

---

what I've been through Woodcock would be more favorable to a downward departure. Please get ahold of me soon. . . .

P.S. This request may sound dumb but could you please send me a copy of case law. The case I need is State v. Fourtin or Fourtin v. State in Connecticut, I need the judg[]ment or final decision describing the elements of "Physically Helpless" in sexual assault cases. This is relevant to current case, I plan to fight some of P.S.I. and may intrigue Woodcock to remove MMS in process. Thank you again for your patience and consideration, Happy Holidays.

*Id.*

14    The December 18, 2017, letter reads:
Re:  Complicated Situation

Dear Hunter,

I've called your cell phone about five times now asking for you to contact me on urgent matters either by phone or in person. In person would be much better as I could show you documents.  I don't feel comfortable at the moment pleading guilty to this possession of child porn and would like to withdraw my guilty plea immediately.  I don't care about losing the 3 points for acceptance. I believe my arguments out way (sic) the benefits of it.

First off there were some errors in your motion in limin[]e.  The government should not have been able to use any information gathered from the search of my computer in I believe May 2013. That information was the product of an illegal search and seizure. When I was sentenced in Sept 2012 I was not given a special condition for warrantless searches of electronics.  And then probation was improperly granted authority to modify my conditions using this tainted information and further so striking spe[c]ial condition (1) granted special condition (3).  This simply is incorrect and the First Circuit has ruled again[st] this.  My crime had nothing to do[] with computers at all and there fore conditions were not reasonably related to charge.  In December of 2014 I fought to get back seized computer and phone because they were seized improperly. Then in February 2014 again the Government improperly used tainted info from May 2013 to impose (never any search criteria looking for underage girls) the warrantless search condition, which was still improper because conduct in May 2013 was not

61

criminal.  I did not just consent to this condition either, as it shows I had to in order to get back my improperly seized property, all very unconstitutional.  Which would mean then the search and seizure in November 2015 was also improper and unconstitutional.

Now a more seriously deep rooted issue of the validity of the search in November 2015, I would like to fight that I should have never have been convicted of a sex offense in 1996.  I am currently in the Courts in Connecticut fighting this, the evidence I have is overly compelling that the conviction was unconstitutional.  My first platform was Coram Nobis (which is still a form of relief criminally) that I filed to Connecticut Supreme Court rather than my sentencing court, which prompted me to file a habeas.  Like I said I have the evidence just waiting for platform.  The habeas court should rule in my favor to get under the jurisdiction that I remain "in custody" under Connect[icut] legal restraints of status requirements of me registering for a lifetime.  (I have case from 2016 that says yes to this.)  That Maine holds me to Connecticut[']s requirements.  I have the transcripts from plea colloquy from 1996, which show whole process was deficient.  The government[']s facts did not meet a factual basis for the charge, they improperly described the elements of the charge.  The Judge not only allowed this, he abandoned a description of the major element of "physical helpless" and in detail what "sexual intercourse" meant.  My court appointed attorney from then and in recent response (2014) again completely does not know the elements of the charge or post conviction consequences.  The government[']s description of facts clearly shows that alleged victim was capable of communicating both orally and physically.  The alleged.

So I believe all these[] are compelling factors that the search and seizure in Nov 2015, was improper and unconstitutional.  Which we should withdraw guilty plea, move to suppress on various grounds, everything I just mentioned (everything so that I may preserve later if you disagree now), and hopefully defeat not only this action I can probably defeat last two convictions, 3 in a row.  If we are allowed then to show a "prime a facie" (sp) case and Judge finds the argu[]ments are valid but wants to wait for decisi[o]ns, maybe move for P.R. bail.  I'm fighting 7 cases pro se, I'm not going anywhere.  I know you might not like this idea, but this is what I feel is the best move.  If any of these argu[]ments are remotely valid it's worth it to me.
Separately, as described in Court[']s ruling against your last motion on my behalf.  The Court reiterates what defines "child porn," there must be simulated, or actual sexual conduct.  That image to qualify 20 yr cap does not meet standards of child pornography.  Any pic or video that does not involve simulated or actual conduct should be removed.  If there is in what remains in pics or vids, something that actually constitutes prepube[s]cent, I'll concede later after the above has take[n] place first.

I have been working diligently putting things together, I have many documents and evidence in my favor and case law.  If you could please call or come see me ASAP.  Thanks.  Happy Holidays . . .

Robert Goguen

Before you file a motion can you please contact me!

*Id.*

matters" and told him in the letter that he would "like to withdraw [his] guilty plea immediately." *Def.'s Mot.* at 2.  Although Mr. Goguen wrote that he would like "to withdraw [his] guilty plea immediately," he also expressly asked Attorney Tzovarras not to file the motion until Attorney Tzovarras has contacted him.  At the most, Mr. Goguen's December 18, 2017, letter is a description of the issues Mr. Goguen wanted Attorney Tzovarras to present in a future motion to withdraw guilty plea and admission.  The Court views Mr. Goguen's December 18, 2017, letter as a conditioned request to file a motion to withdraw guilty plea and insufficient to start the clock for a filed motion.

Regarding whether the Court should consider Mr. Goguen's December 25, 2017, letter to the Court to be a formally-filed motion to withdraw guilty plea, the Court exhaustively discussed this issue in its September 16, 2019, order denying the motion to withdraw guilty plea and admission that Attorney Bourget filed on his behalf.  *Order on Mot. to Withdraw Guilty Plea* at 35, 40-45.  Mr. Goguen's instant motion gives the Court no basis to reconsider its earlier ruling.  First, Mr. Goguen himself describes his December 25, 2017, letter to the Court as "incoherent."  *Def.'s Mot.* at 2.

Second, Attorney Tzovarras' January 15, 2018, letter to Mr. Goguen, which Mr. Goguen attached to his motion, confirms what the Court surmised in its September 16, 2019, order, namely that Attorney Tzovarras did not adopt Mr. Goguen's motion and instead informed him that the Court had withheld action on his December 25, 2017, motion and had not shared it with the prosecutor.  *Def.'s Mot.*,  Attach. 3, *Letter*

63

*from Att'y Tzovarras to Robert Goguen* (Jan. 15, 2018) at 2-3.  The January 15, 2018, Tzovarras letter also confirms that Attorney Tzovarras needed to meet with Mr. Goguen before proceeding with a motion to withdraw guilty plea.  *Id.* at 3.

Third, Attorney Tzovarras' handwritten notes of a January 24, 2018, conference with Mr. Goguen confirm that Mr. Goguen wanted him to file a motion to withdraw guilty plea and exclude evidence and challenge prior convictions, but Attorney Tzovarras worried that Mr. Goguen "seem[ed] manic" and that he would lose the three-point reduction for acceptance of responsibility.  *Id.* at 4.  There is no indication in these notes that Attorney Tzovarras agreed to file a motion to withdraw guilty plea and admission for Mr. Goguen.  *Id.*  Attorney Tzovarras' notes are consistent with what he told the Court at the January 25, 2018, conference.  *Order on Mot. to Withdraw Plea and Admission* at 44-45.

Fourth, the delay between the September 15, 2017, entry of his guilty plea and admission has widened, the pending motion having been filed on January 10, 2020.  For the reasons set forth in the Court's September 16, 2019, order, the Court views the delay between the guilty plea and admission and the filing of the motion as weighing "significantly against allowing Mr. Goguen to withdraw his guilty plea as it is a period of nearly [twenty-eight] months from his entry of the guilty plea."  *Order on Mot. to Withdraw Guilty Plea* at 46.

### E.   Prejudice to the Government

As the Court noted in its September 6, 2019, order denying the earlier motion to withdraw guilty plea, "[i]f the combined weight of these factors tilts in the

defendant's favor, then the court should consider the quantum of prejudice, if any, that will inure to the government should the motion be granted." *Id.* (quoting *Gates,* 709 F.3d at 69 (internal quotation marks omitted) (citing *United States v. Doyle*, 981 F.2d 591, 594 (1st Cir. 1992))).  Because the Court concludes that the weight of these factors does not tilt in Mr. Goguen's favor, it is not necessary to consider the potential prejudice to the Government.

### F.    Summary

Applying the First Circuit's factors for determining whether to grant a motion to withdraw guilty plea to the facts in Robert Goguen's case, the Court concludes that he has failed to sustain his burden to demonstrate a fair and just reason to withdraw either his guilty plea to the new criminal conduct of possession of child pornography or to withdraw his admission to committing violations of the conditions of his supervised release.

## V.    CONCLUSION

The Court DENIES Defendant's Pro Se Motion to Withdraw the Guilty Plea(s) and Request for an Order to Disqualify Honorable John A. Woodcock, Jr. (ECF No. 309; ECF No. 132).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of July, 2020