UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

UNITED STATES OF AMERICA    )
                            )
         v.                 )        No. 1:16-cr-00167-JAW-1
                            )
ROBERT GOGUEN               )

**ORDER ON MOTION TO DISMISS FOR VINDICTIVE PROSECUTION AND
MOTION FOR DISCOVERY**

Four years after his guilty plea for possession of child pornography in violation
of 18 U.S.C. § 2252A(a)(5)(B), but before his sentencing, a defendant moves to dismiss
the indictment against him as the product of vindictive prosecution and for discovery
from the government. The Court denies the motion to dismiss as untimely because
the defendant has failed to demonstrate good cause to excuse his four-year delay in
filing. Furthermore, even if timely, the Court denies the motion to dismiss as non-
meritorious. Finally, the Court denies the defendant's motion for discovery.

## I.    PROCEDURAL HISTORY

On December 14, 2016, a federal grand jury indicted Robert Goguen for
possession of child pornography, an alleged violation of 18 U.S.C. § 2252A(a)(5)(B).
*Indictment* (ECF No. 1). After the Court resolved several motions, Mr. Goguen
entered a plea of guilty on September 15, 2017. *Min. Entry* (ECF No. 64). Due to
extensive post-guilty plea motions, the Court has not yet sentenced Mr. Goguen for
his possession of child pornography. On November 16, 2018, the Court concluded
that Mr. Goguen's prior conviction for sexual assault in the second degree in the state
of Connecticut in 1996 constituted a "prior conviction . . . under the laws of any State

relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor" and he was therefore subject to a ten-year mandatory minimum term of incarceration. *Order on Def.'s Mem. in Opp'n to the Appl. of the Mandatory Minimum under 18 U.S.C. § 2252A(b)(2)* (ECF No. 92) (*Mandatory Minimum Order*) (quoting 18 U.S.C. § 2252A(b)(2)).

In January 2019, the parties filed sentencing memoranda in anticipation of the scheduling of a sentencing hearing, *Gov't's Mem. in Aid of Sentencing* (ECF No. 100); *Def.'s Sentencing Mem.* (ECF No. 102), and the case seemed to be nearing resolution. However, Mr. Goguen expressed dissatisfaction with his attorney and on February 7, 2019, the Court allowed Attorney Hunter Tzovarras to withdraw and Attorney Ronald Bourget to enter his appearance in the case on behalf of Mr. Goguen. *Order* (ECF No. 110). On April 22, 2019, Attorney Bourget filed a motion to withdraw Mr. Goguen's guilty plea. *Mot. to Withdraw Guilty Plea* (ECF No. 113). On September 6, 2019, the Court issued an order, denying the motion to withdraw guilty plea. *Order on Def.'s Mot. to Withdraw Guilty Plea* (ECF No. 120).

On January 16, 2020, Mr. Goguen, who was dissatisfied with his new counsel's efforts and expressed a preference to represent himself, filed a pro se motion to withdraw his guilty plea and for this Judge to recuse himself. *Def.'s Pro Se Mot. to Withdraw the Guilty Plea(s) and Req. for an Order to Disqualify Hon. John A. Woodcock, Jr.* (ECF No. 132). On February 24, 2020, the Court denied his motion to recuse, *Order on Def.'s Mot. to Recuse* (ECF No. 144), and on July 23, 2020, the Court denied his pro se motion to withdraw his guilty plea. *Order on Mot. to Withdraw*

*Guilty Plea and Admission* (ECF No. 159). On October 6, 2020, Attorney Bourget filed a supplemental sentencing memorandum and the Government responded on October 19, 2020. *Def.'s Suppl. Sentencing Mem.* (ECF No. 167); *Gov't's Reply to Def.'s Sentencing Mem.* (ECF No. 172).

On October 21, 2020, Attorney Ronald Bourget moved to withdraw as Mr. Goguen's defense attorney, and the Court granted his motion on October 23, 2020. *Mot. for Leave to Withdraw as Counsel Me. Rules of Professional Conduct Rule 1.16 Rule 1.2* (ECF No. 173); *Order* (ECF No. 174). On October 27, 2020, the Court appointed Attorney Peter Rodway to represent Mr. Goguen. *Order* (ECF No. 177).

On March 5, 2021, Attorney Rodway filed a motion to dismiss for vindictive prosecution and a motion for discovery on the motion. *Mot. to Dismiss for Vindictive Prosecution* (ECF No. 184) (*Def.'s Mot.*); *Mot. for Disc. Regarding Vindictive Prosecution* (ECF No. 185) (*Def.'s Disc. Mot.*). On April 2, 2021, the Government responded to Mr. Goguen's motion to dismiss and motion for discovery. *Gov't's Opp'n to Def.'s Mot. to Dismiss for Vindictive Prosecution* (ECF No. 188) (*Gov't's Opp'n*); *Gov't's Opp'n to Def.'s Mot. for Disc. Regarding Vindictive Prosecution* (ECF No. 189) (*Gov't's Disc. Opp'n*). On April 15, 2021, Mr. Goguen replied to the Government's opposition to the motion to dismiss. *Reply to Gov't's Resp. to Mot. to Dismiss* (ECF No. 190) (*Def.'s Reply*).

## II.  FACTUAL BACKGROUND

### A.  Robert Goguen's Criminal History: 1996 to 2013

For purposes of his motion for vindictive prosecution, Robert Goguen's long history with the criminal justice system began on March 29, 1996, in the state of Connecticut, when he was arrested for the state charge of Sexual Assault – Second Degree.[1] *Third Revised Presentence Investigation Report* ¶ 31 (ECF No. 168) (*PSR*). On September 6, 1996, Mr. Goguen pleaded guilty to this charge and in accordance with his guilty plea, he was sentenced to ten years of incarceration, execution suspended after four years, followed by five years of probation. *Goguen v. Comm'r of Corr.*, 225 A.3d 977, 978 (Conn. App. Ct. 2020), *cert. granted*, 234 A.3d 980 (Conn. 2020).

On January 18, 2006, Mr. Goguen was arrested in the commonwealth of Massachusetts for failure to register as a sex offender. *PSR* ¶ 33. On August 14, 2006, the Pittsfield District Court sentenced him to six months of incarceration, which it suspended, and probation until July 13, 2007. *Id.* On January 13, 2007, Mr. Goguen was charged with violating his probation and on February 1, 2007, the Pittsfield District Court sentenced him to six months of incarceration for the violation. *Id.*

On January 12, 2011, a federal grand jury in the District of Maine indicted Mr. Goguen for failure to register as a sex offender, an alleged violation of 18 U.S.C. § 2250(a)(1). *See United States v. Goguen*, No. 1:11-cr-00003-JAW-1, *Indictment*

---

[1]     Mr. Goguen had three prior convictions before his 1996 conviction for gross sexual assault, but none relevant to these proceedings. *PSR* ¶¶ 28-30.

(ECF No. 1). On July 14, 2011, Mr. Goguen pleaded guilty to that charge. *Id.*, *Min. Entry* (ECF No. 43). On September 14, 2012, the Court sentenced Mr. Goguen to sixteen months of incarceration, three years of supervised release, a $100 special assessment, and no fine. *Id.*, *Min. Entry* (ECF No. 79); *id.*, *J.* (ECF No. 80). On January 30, 2013, upon Mr. Goguen's motion, the judgment was amended to reflect a federal sentence of thirty-seven months. *See id.*, *Am. J.* (ECF No. 90).

## B. The Petitions for Revocation on the 2011 Federal Charge

### 1. The First Petition for Revocation: Accessing Pornography at the Penobscot County Judicial Center's Law Library

On August 16, 2013, the Government acting for the Probation Office (PO) filed a petition to revoke Mr. Goguen's supervised release. *Id.*, *Pet. for Warrant or Summons for Offender under Supervision* (ECF No. 96). The petition alleged that Mr. Goguen had violated special condition number two of his supervised release conditions by accessing pornography at the Penobscot County Judicial Center law library on August 5, 2013. *Id.* at 1-2. On September 23, 2013, Mr. Goguen appeared before the Court and admitted the violation. *Id.*, *Min. Entry* (ECF No. 112). The same day, the Court imposed a sentence of five months of imprisonment and thirty-one months of supervised release. *Id.*, *Revocation J.* (ECF No. 113). Mr. Goguen filed an appeal and on October 9, 2014, the Court of Appeals for the First Circuit affirmed the revocation judgment. *Id.*, *J.* at 1 (ECF No. 142).

### 2. The Second Petition for Revocation: Possession of Child Pornography and Failure to Participate in Sex Offender Treatment

On November 13, 2015, the Government acting for the PO filed a second petition to revoke Mr. Goguen's supervised release. *Id.*, *Pet. for Warrant or Summons for Offender under Supervision* (ECF No. 144). The petition alleged that Mr. Goguen had violated the supervised release preamble by possessing child pornography on his laptop and special condition number two by possessing child pornography and other pornography and erotica. *Id.* at 1-2.

Under 18 U.S.C. § 3583(k), if a defendant under federal supervised release committed a new sex-related crime while on supervised release, a court was required to impose a special penalty of not less than five years of incarceration. Mr. Goguen challenged the applicability of this provision to his case and on November 2, 2016, the Court ruled that the five-year mandatory period did not apply to his case because when he pleaded guilty to the failure to register crime, the Court had mistakenly failed to inform him about this provision. *Id.*, *Order on Mem. in Opp'n to the Gov't's Req. to Apply the Penalty Ranges under 18 U.S.C. § 3583(k)* (ECF No. 170). The Court concluded that it must limit Mr. Goguen's term of incarceration for violations of the terms of his supervised release to a maximum of two years.[2] *Id.* at 37. Following the

---

[2]     The Court issued this decision before the United States Supreme Court substantially invalidated 18 U.S.C. 3583(k) because the provision violated the right to trial by jury. *United States v. Haymond*, 139 S. Ct. 2369, 2385-86 (2019) (Breyer, J., concurring in judgment). The Court cites Justice Breyer's concurring opinion because *Haymond* was a 4-1-4 split decision and, applying *Marks v. United States*, 430 U.S. 188, 193 (1977), numerous circuit courts of appeal have determined "Justice Breyer's opinion controls because 'he concurred in the judgment[ ] on the narrowest grounds.'" *United States v. Savarese*, 842 F. App'x 448, 451 n.2 (11th Cir. 2021); *see also United States v. Doka*, 955 F.3d 290, 298 (2d Cir. 2020) (describing Justice Breyer's opinion as "the controlling rule"); *United States v.*

Court's November 2, 2016 order, after some additional motions were resolved, on September 15, 2017, Mr. Goguen admitted the two violations alleged in the Government's petition. *Id.*, *Min. Entry* (ECF No. 193).

Despite his September 15, 2017 admissions, the Court has not yet sentenced Mr. Goguen for his supervised release violations. The delay has been in part due to motions filed in the new criminal case against Mr. Goguen, 1:16-cr-00167-JAW-1, and in part to motions filed in the revocation petition. On April 22, 2019, Mr. Goguen through Attorney Ronald Bourget filed a motion to withdraw his guilty plea in 1:16-cr-00167-JAW-1, but the Clerk's Office confirmed that he intended the motion to allow a withdrawal of his admission in the revocation proceedings. *Mot. to Withdraw Guilty Plea* (ECF No. 113 - 1:16-cr-00167-JAW-1), (ECF No. 289 - 1:11-cr-00003-JAW-1); *Order on Def.'s Mot. to Withdraw Guilty Plea* at 5, n.2 (ECF No. 120 - 1:16-cr-00167-JAW-1) (ECF No. 293 - 1:11-cr-00003-JAW-1) (*Order on Mot. to Withdraw I*). On September 6, 2019, the Court denied Mr. Goguen's motion to withdraw his September 15, 2017 admission. *Order on Mot. to Withdraw I* at 49.

As the revocation petition was being scheduled for a sentencing hearing, on October 22, 2019, Mr. Goguen urgently urged the Court to allow him to file a motion to withdraw his admission, based on substantive arguments that he contended his defense lawyer had not argued. *United States v. Goguen*, No. 1:11-cr-00003-JAW-1, *Ex Parte Mot.* (ECF No. 296). In a rare concession, on October 22, 2019, the Court

---

*Coston*, 964 F.3d 289, 295 (4th Cir. 2020) (same); *United States v. Ewing*, 829 F. App'x 325, 329 (10th Cir. 2020) ("[w]e therefore conclude . . . that Justice Breyer's opinion controls").

allowed Mr. Goguen to file motions pro se, even though he continued to be represented by Attorney Bourget. *Id.*, *Min. Entry* (ECF No. 300).

On October 23, 2019, Mr. Goguen, acting pro se, filed a motion to amend his previous challenge against the revocation judgment. *Id.*, *Mot. to Am. Previous Challenge Against Revocation J.* (ECF No. 303). On February 4, 2020, the Court denied Mr. Goguen's motion to amend the previous challenge against the revocation judgment. *Id.*, *Order on Mot. to Am. Previous Challenge Against Revocation J.* (ECF No. 315).

Meanwhile, in this criminal case, on January 16, 2020, Mr. Goguen filed a motion to withdraw guilty plea and admission.[3] *Def.'s Pro Se Mot. to Withdraw the Guilty Pleas(s) and Request for an Order to Disqualify Hon. John A. Woodcock, Jr.* (ECF No. 132), and on July 23, 2020, the Court issued an order, denying the motion. *Order on Mot. to Withdraw Guilty Plea and Admission* (ECF No. 159) (*Order on Mot. to Withdraw II*).

On April 16, 2020, in the revocation proceeding, Mr. Goguen, again acting pro se, filed a motion for relief in an expedited manner. *United States v. Goguen*, No. 1:11-cr-00003-JAW-1, *Req. for the Article III Judge to Provide by any Equitable Means Necessary by Indicative Ruling Relief in an Expedited Manner* (ECF No. 331). On July 23, 2020, the Court denied the motion for indicative ruling. *Id.*, *Order on Mot.*

---

[3] With his January 16, 2020 motion to withdraw, Mr. Goguen filed a motion for this Judge to recuse himself, which the Court denied on February 24, 2020. *Order on Def.'s Mot. to Recuse* (ECF No. 144).

*for the Article III Judge to Provide by any Equitable Means Necessary by Indicative Ruling Relief in an Expedited Manner* (ECF No. 351).

On October 5, 2020, the Clerk's Office set the revocation petition for a sentencing hearing on November 20, 2020, *id.*, *Notice of Hr'g* (ECF No. 364), and defense counsel filed a supplemental sentencing memorandum in the criminal case on October 6, 2020. *Def.'s Suppl. Sentencing Mem.* (ECF No. 167). However, in the criminal case, on October 14, 2020, Mr. Goguen filed a motion for new defense counsel. *Def.'s Req. for Substitute Counsel* (ECF No. 170). On October 27, 2020, the Court granted Mr. Goguen's motion for new counsel and appointed his fifth defense attorney on the revocation petition, Peter E. Rodway, Esq. *United States v. Goguen*, No. 1:11-cr-00003-JAW-1, *Order* (ECF No. 375). The scheduling of the sentencing hearing in 1:11-cr-00003-JAW-1 is being held in abeyance while the Court rules on the pending motions to dismiss for vindictive prosecution and for discovery in 1:16-cr-00167-JAW-1.

### 3. The 2016 Possession of Child Pornography Charge

On December 14, 2016, a federal grand jury indicated Robert Goguen on a new criminal charge, the possession of child pornography, an alleged violation of 18 U.S.C. § 2252A(a)(5)(B). *Indictment* (ECF No. 1). In the run-up to trial, Mr. Goguen filed several motions, including a motion to suppress on January 22, 2017. *Def.'s Mot. to Suppress Evidence Regarding New Criminal Charges and Supervise Release Revocation Hr'g* (ECF No. 21) (*Mot. to Suppress*). Upon resolution of those issues, on June 20, 2017, the Clerk's Office scheduled this criminal case for jury selection on

July 11, 2017 with trial to follow. *Trial List* (ECF No. 49). Upon defense motions, the case was rescheduled on July 26, 2017 for September 11, 2017 and later for October 3, 2017. *Trial List* (ECF Nos. 57, 61). On September 15, 2017, Mr. Goguen entered a plea of guilty to the charge of possession of child pornography. *Min. Entry* (ECF No. 64).

Sentencing on the 2016 child pornography charge was delayed by the need to resolve whether Mr. Goguen had a predicate felony that would trigger the application of a ten-year mandatory minimum term of incarceration. Mr. Goguen filed a motion on that issue on April 8, 2018. *Def.'s Mem. in Opp'n to the Appl. of the Mandatory Minimum under 18 U.S.C. § 2252A(b)(2)* (ECF No. 83). On November 16, 2018, the Court issued an order, denying Mr. Goguen's opposition to the mandatory minimum sentence. *Mandatory Minimum Order*.

From April 22, 2019 through July 23, 2020, the sentencing hearing on Mr. Goguen's new criminal conduct was delayed by the multiple motions to withdraw his guilty plea described above. As mentioned, on October 27, 2020, the Court granted Mr. Goguen's motion for new counsel and appointed Attorney Peter E. Rodway to represent Mr. Goguen in the child pornography case, his third attorney in the 2016 criminal charge. *Order* (ECF No. 177).

On March 5, 2021, Mr. Goguen through Attorney Rodway filed a motion to dismiss for vindictive prosecution and a motion for discovery on his vindictive prosecution motion. *Mot. to Dismiss for Vindictive Prosecution* (ECF No. 184) (*Def.'s Mot.*); *Mot. for Disc. Regarding Vindictive Prosecution* (ECF No. 185) (*Def.'s Disc.*

*Mot.*).  On April 2, 2021, the Government filed its opposition to the motion to dismiss and motion for discovery.  *Gov't's Opp'n to Def.'s Mot. to Dismiss for Vindictive Prosecution* (ECF No. 188) (*Gov't's Opp'n*); *Gov't's Opp'n to Def.'s Mot. for Disc. Regarding Vindictive Prosecution* (ECF No. 189) (*Gov't's Disc. Opp'n*).  On April 15, 2021, Mr. Goguen filed a reply to the Government's response to his motion to dismiss.  *Reply to Gov't's Resp. to Mot. to Dismiss* (ECF No. 190) (*Def.'s Reply*).

## III.  THE PARTIES' POSITIONS

### A.  Robert Goguen's Motion to Dismiss for Vindictive Prosecution

In his motion to dismiss for vindictive prosecution, Mr. Goguen emphasizes the timing in significant events leading up to his indictment.  *Def.'s Mot.* at 1-2.  Mr. Goguen notes that the events underlying his 2016 indictment took place on November 10, 2015 when a Probation Officer concluded that Mr. Goguen possessed a computer containing child pornography.  *Id.* at 1.  The Probation Office quickly initiated a petition to revoke Mr. Goguen's supervised release on November 13, 2015 and soon thereafter, a dispute arose as to whether he would be subject to a mandatory five-year minimum term of incarceration on the revocation petition.  *Id.* at 1-2.  Mr. Goguen observes that this Court resolved that issue in favor of Mr. Goguen on November 2, 2016 and limited his term of incarceration on the pending petition for revocation to two years, not the five-year mandatory minimum that the Government had argued for.  *Id.* at 2.  Mr. Goguen points out that the grand jury indicted him for possession of child pornography, the same conduct underlying the revocation petition, on December 14, 2016, "[j]ust over a month after Mr. Goguen had succeeded in the

exercise of his constitutional and statutory rights to challenge the penalty imposition in his revocation for of his supervised release." *Id.* Mr. Goguen asserts that there was "no new evidence developed between the time of Mr. Goguen's arrest on the revocation and the time of his indictment, 13 months later." *Id.*

Mr. Goguen admits that he "missed the deadline for filing a timely motion to dismiss to address this matter." *Id.* But he says that he was relying on his counsel and that, even though he had been represented by three lawyers, none informed him that vindictive prosecution represented "a possible avenue of defense to the indictment." *Id.* Nor was he, "as a lay person," aware of "the doctrine of vindictive prosecution." *Id.*

Turning to the timing issue first, Mr. Goguen acknowledges that a motion to dismiss for vindictive prosecution under Federal Rule of Criminal Procedure 12(b)(3)(iv) must be made before trial. *Id.* at 3 (citing FED. R. CRIM. P. 12(b)(3)(iv)). Even so, Mr. Goguen points out that a court may consider "the defense, objection, or request if the party shows good cause." *Id.* For good cause, Mr. Goguen claims both cause and prejudice. *Id.* For cause, he reiterates that his late filing is a "direct result of the dereliction of the duties of competence and diligence by his former counsel" and for prejudice, he says he has been prevented from raising a meritorious motion due his lawyers' mistakes. *Id.* at 3-4.

Addressing the merits of his motion, Mr. Goguen posits that there are two ways a defendant may prove a vindictive prosecution: actual vindictiveness and presenting circumstances that reveal a sufficient likelihood of vindictiveness to warrant a

presumption of vindictiveness. *Id.* at 5. He acknowledges that the question of actual vindictiveness is "not ripe" because the Court has not ruled on his motion for discovery and it is unknown whether discovery will "bear[ ] fruit." *Id.* at 6. Yet, he argues that a presumption of vindictiveness is warranted because of the Government chose to indict Mr. Goguen on the same conduct underlying the revocation petition only after it lost the mandatory penalty issue. *Id.* at 7. Mr. Goguen points out that by indicting Mr. Goguen, the Government increased Mr. Goguen's potential penalty for this same conduct from a maximum of two years to a minimum of ten years and a maximum of twenty years. *Id.* at 8. Mr. Goguen is suspicious of the timing between the Court's November 2, 2016 order and the grand jury's December 14, 2016 indictment. *Id.* at 7-9.

## B.    Robert Goguen's Motion for Discovery

In a companion motion, Mr. Goguen seeks discovery from the Government to assess whether he can show actual vindictiveness in the initiation of the 2016 charge. *Def.'s Disc. Mot.* at 1. Specifically, he seeks "any and all documents covering the time period from November 10, 2015 until the present time regarding Mr. Goguen, including but not limited to, notes, memoranda, e-mails, text messages, handwritten notes, and internal memoranda to include the 'prosecution memo' submitted by the line Assistant United States Attorney to superiors as part of the approval process for bringing the instant indictment." *Id.* Mr. Goguen argues that he has met the First Circuit standard for discovery by coming forth with "some" objective evidence tending to show prosecutorial vindictiveness. *Id.* (quoting *United States v. Bucci*, 582

F.3d 108, 113 (1st Cir. 2009)).  He says the objective evidence is found in the chronology of the events in this case.  *Id.* at 2-4.  He maintains that there is "no apparent reason" for the Government to have delayed indictment and he contends that the Government's decision must therefore have been motivated by the ruling unfavorable to the Government on November 2, 2016.  *Id.* at 4.

### C.  The Government's Opposition to Robert Goguen's Motion to Dismiss

The Government first reviews the legal standards that the First Circuit applies to claims of vindictive prosecution.  *Gov't's Opp'n* at 1-4.  The Government then argues that Mr. Goguen's motion is untimely.  *Id.* at 4-7.  The Government notes that the grand jury indicted Mr. Goguen on December 14, 2016 and his pretrial motions were due by January 20, 2017.  *Id.* at 4-5 (citing *Speedy Trial Order* at 1 (ECF No. 16)).  As Mr. Goguen did not file the vindictive prosecution motion until March 5, 2021, the Government observes that the motion is "over four years too late."  *Id.* at 5.

The Government discusses Mr. Goguen's main point for good cause in the late filing, namely that his prior lawyers were ineffective and the Government says that it is "not at all clear that an attorney's ineffective assistance—even if established— constitutes good cause."  *Id.*  The Government then seeks to distinguish *United States v. Santana-Dones*, 920 F.3d 70, 81 (1st Cir. 2019), a case Mr. Goguen relied upon in his ineffective assistance argument.  *Id.* at 5-6.  At the same time, the Government concedes that the First Circuit "has not foreclosed an argument that ineffective assistance of counsel could constitute good cause under Rule 12(c)(3)."  *Id.* at 6.  But it suggests that such an argument would face "an uphill battle."  *Id.*

Characterizing the motion itself as "without merit," the Government says that Mr. Goguen is unable to demonstrate prejudice because the motion itself would have been unsuccessful if timely filed. *Id.* at 7. The Government turns to the merits of the motion. *Id.* at 7-11. The Government argues that "other than pointing to the timing of the pending indictment," Mr. Goguen has "failed to produce any support for his vindictive prosecution claim." *Id.* at 7. The Government says that Mr. Goguen's argument fails to account for the following facts that disrupt the claim of vindictive prosecution:

1) The Government sought a search warrant to search for evidence of a new federal crime soon after the PO seized the laptop;

2) The Government issued a target letter to Mr. Goguen on July 25, 2016;

3) On January 6, 2016, the Government discussed the possibility of a new criminal charge; and

4) On November 17, 2016, the Government again discussed the possibility of a new criminal charge.

*Id.* at 8-9. To the contrary, the Government proffers that "the evidence shows that the facts and circumstances surrounding the 2015 crime alleged in the pending indictment compelled a federal prosecution." *Id.* at 9. The Government contends that there was "no urgency" to expedite a new criminal charge. *Id.* The Government says it "took the time necessary to understand the important forensic and fact issues in

the investigation in preparation for presenting the evidence to a grand jury and, if necessary, to a trial jury." *Id.* Nor, the Government suggests, is there any indication that the prosecution handled this criminal prosecution in a way "to retaliate" against Mr. Goguen "for the exercise of a constitutional right." *Id.* at 10.

## D. The Government Opposition to Discovery

The Government notes that the "standard for obtaining discovery on a vindictive prosecution claim is rigorous." *Gov't's Disc. Opp'n* at 2. Quoting *United States v. Bucci*, 582 F.3d 108, 113 (1st Cir. 2009), the Government recites the standard for discovery in vindictive prosecution cases:

> In light of the presumption that a prosecutor has acted in good faith in exercising his discretion to make charging decisions, courts require a defendant seeking discovery first to come forth with "some" objective evidence tending to show the existence of prosecutorial vindictiveness.

*Id.* The Government maintains that "more than chronal proximity is required." *Id.* (quoting *United States v. Pimienta-Redondo*, 874 F.2d 9, 13 (1st Cir. 1989)). The Government reviewed caselaw in which discovery requests in vindictive prosecution cases were denied. *Id.* at 2-4.

## E. Robert Goguen's Reply

In his reply, Mr. Goguen argues that the Government "has miscategorized the context in which to evaluate the presumption of vindictiveness, thus reaching the wrong conclusion." *Def.'s Reply* at 1. Mr. Goguen says that the Government applied the standard for prosecutorial discretion in the pretrial process, but he maintains that the "current situation is much more analogous to prosecutorial retaliation following a successful appeal." *Id.* Quoting *United States v. Tobin*, 598 F. Supp.

2d 125, 129 (D. Me. 2009), Mr. Goguen says that "courts view quite skeptically the government's decision to file more severe charges following a defendant's successful appeal of his conviction." *Id.* He urges the Court to apply a "presumption of vindictiveness" from the "suspicious sequence" here. *Id.* at 2. He points out that the Government waited "nearly 14 months" to indict him, which he contends is an "unreasonably long time." *Id.* Furthermore, he observes that the same conduct underlying the revocation petition also formed the basis of the indictment. *Id.* Mr. Goguen points out that the forensics on the computer were completed as of April 19, 2016, seven months before the November 17, 2016 conference, when the Government revealed that it intended to indict Mr. Goguen on new charges, and to corroborate his point, he attached a forensic report authored by Homeland Security Investigations as exhibit one, which was dated April 19, 2016. *Id.* at 3-4. Mr. Goguen notes that the Government failed to point to any reason, such as the need for additional evidence, to explain "why it did not indict Defendant until after the Court's decision on revocation penalties." *Id.*

### F. Robert Goguen's Reply to the Discovery Motion

Mr. Goguen did not file a reply to the Government's response to his motion for discovery.

### G. Telephone Conferences of Counsel

On May 3, 2021, the Court held a conference of counsel by telephone. *Min. Entry* (ECF No. 192). The Court noted that from December 2016 until the grand jury indicted Mr. Goguen, AUSA Mullis made several representations to the Court

17

concerning the possibility of indictment and that in November 2016, AUSA Mullis mentioned the need for further consultations on the forensics of the expert report. The Court suggested that it had not determined how to rule on Mr. Goguen's motion but indicated that if the Government wished to present further documentary evidence of AUSA Mullis' correspondence with Attorney Tzovarras or his interactions with the expert, it might assist the Court in assessing the pending motion.

On May 17, 2021, the Court held a second telephone conference with counsel and AUSA Lowell indicated that there was no corroborating documentation in the Government files other than what it had already disclosed. In other words, AUSA Mullis, who was then handling the prosecution for the Government, did not email Attorney Tzovarras, who was defending Mr. Goguen, concerning the prospect of an indictment nor were there any memoranda that would substantiate the Government's intentions during the year before the indictment. AUSA Lowell explained that AUSA Mullis tended to communicate orally over the telephone with defense counsel.

## IV. DISCUSSION

Mr. Goguen moves for dismissal of the indictment for possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and for discovery of materials relevant to the Government's decision to indict him. The Court first concludes that Mr. Goguen's motion to dismiss is untimely and that no good cause exists for an extension of time. Despite the motion's untimeliness, the Court considers its merits and concludes that the circumstances in this case do not support dismissal of the

18

indictment for prosecutorial vindictiveness. The Court denies Mr. Goguen's motion to dismiss and motion for discovery.

## A. Legal Standards

"A vindictive prosecution—one in which the prosecutor seeks to punish the defendant for exercising a protected statutory or constitutional right—violates a defendant's Fifth Amendment right to due process." *United States v. Jenkins*, 537 F.3d 1, 3 (1st Cir. 2008). Courts have long acknowledged the "uncontroversial principle" that "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'" *United States v. Goodwin*, 457 U.S. 368, 372 (1982) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)). At the same time, "the very purpose of instituting criminal proceedings against an individual is to punish; therefore, the mere presence of a punitive motivation behind prosecutorial action does not render such action constitutionally violative." *United States v. Tobin*, 598 F. Supp. 2d 125, 128 (D. Me. 2009) (quoting *United States v. Aviles-Sierra*, 576 F. Supp. 2d 235, 237 (D.P.R. 2008) (citation and internal punctuation omitted)). Thus, "a defendant may be penalized for violating the law, but not punished for exercising his rights." *Id.*

"A defendant may establish a vindictive prosecution either (1) by producing evidence of actual vindictiveness or (2) by demonstrating circumstances that reveal a sufficient likelihood of vindictiveness to warrant a presumption of vindictiveness." *Jenkins*, 537 F.3d at 3. Once a presumption of vindictiveness is raised, the government must rebut the presumption "by showing objective reasons for its

charges." *Id.* In this case, there is no claim that the prosecutor was actually vindictive against Mr. Goguen and the Court discusses only whether Mr. Goguen has demonstrated circumstances that reveal a sufficient likelihood of vindictiveness to warrant a presumption of vindictiveness.

## B. Timeliness

Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(A)(iv), a defendant must raise any claim of vindictive prosecution by pretrial motion "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." FED. R. CRIM. P. 12(b)(3)(A)(iv). However, Rule 12(c)(3) provides that a court may consider untimely Rule 12(b)(3) motions "if the [movant] shows good cause." FED. R. CRIM. P. 12(b)(3). A showing of "good cause" is "fact-specific" and requires that the movant provide "a good reason for failing to file a motion on time" and demonstrate "some colorable prospect of cognizable harm resulting from a failure to allow the late filing." *United States v. Santana-Dones*, 920 F.3d 70, 81 (1st Cir. 2019) (citing *United States v. Ayer*, 857 F.2d 881, 885 (1st Cir. 1988)).

As the First Circuit explained in *Santana-Dones*, "[g]ood cause for allowing a defendant to file motions out of time demands more than the appearance of new counsel seeking to second-guess the decisions of prior counsel." 920 F.3d at 81 (citing *United States v. Trancheff*, 633 F.3d 696, 698 (8th Cir. 2011)). This is so because "allowing new counsel to reopen an expired deadline in order to pursue strategic options forgone by prior counsel would put a premium on changing counsel and unfairly advantage the defendant." *Id.*

The Government and Mr. Goguen agree his motion to dismiss for vindictive prosecution is untimely. *Def.'s Mot.* at 2; *Gov't's Opp'n* at 4-7. The deadline for filing pretrial motions in this case was January 22, 2017 and Mr. Goguen filed the pending motion to dismiss on March 5, 2021, making the motion more than four years late. *Order* (ECF No. 23); *Def.'s Third Mot. to Enlarge Time to File Pretrial Mots.* (ECF No. 22); *Def.'s Mot.* Nevertheless, Mr. Goguen says the Court should find good cause for this extraordinarily long delay because (1) the delay was caused by his prior attorneys' failures to advise him of the potential defense of vindictive prosecution and (2) there is a cognizable risk that Mr. Goguen's inability to raise the vindictive prosecution issue may make him subject to "a substantial prison sentence," including a ten-year mandatory minimum sentence. *Def.'s Mot.* at 3-4.

For five reasons, the Court concludes there is no good cause to permit Mr. Goguen to file his motion under Rule 12(c)(3). First, the four-year delay in this case is extreme. In the Court's view, the need for finality in this long-running criminal case weighs strongly against permitting Mr. Goguen to postpone his sentencing by continuing to relitigate his guilty plea as he has for approximately four years. This is especially true where, as here, the circumstantial evidence supporting Mr. Goguen's vindictive prosecution claim is thin.

Second, the crux of Mr. Goguen's good cause argument is first that Attorney Tzovarras did not catch the possibility of a vindictive prosecution motion and second that, if he considered a vindictive prosecution motion, he failed to file one. The problem with these arguments is that – other than the demonstrable fact that

Attorney Tzovarras did not file a motion to dismiss for vindictive prosecution – they are wholly speculative. The record does not reveal whether a vindictive prosecution argument did or did not occur to Attorney Tzovarras or whether Attorney Tzovarras considered filing such a motion and decided not to do so. The record also does not reveal whether, if Attorney Tzovarras decided not to file a vindictive prosecution motion, why he made that decision. As the Court has just stated it, considerations about what Attorney Tzovarras knew, when he knew it, and why he did not file this motion to dismiss are wholly without record support and are purely speculative.

In light of the paucity of the record, Mr. Goguen's good cause argument amounts to second guessing the actions and strategy of prior counsel, which the First Circuit specifically cautioned against in *Santana-Dones*. As the burden to demonstrate good cause for the delay rests with Mr. Goguen, the lack of evidence falls against Mr. Goguen, not the Government. On the issue of good cause, the Court is left with argument without evidence and argument alone does not suffice to sustain Mr. Goguen's burden to show good cause for delay.

Third, Mr. Goguen's situation is materially distinguishable from prior cases in which this Court or the First Circuit has found good cause under Rule 12(c)(3). This is not a situation where the facts necessary to support a claim of vindictive prosecution came to light after or near the pretrial motion deadline. *See, e.g.*, *United States v. Ocean*, No. 1:15-cr-00040-JAW-09, 2015 U.S. Dist. LEXIS 167444, at *12 (D. Me. Dec. 18, 2015) (finding good cause when a defense attorney needed to review 30,000 pages of discovery and discovered information forming the basis of a motion

to suppress only after the pretrial motion deadline passed).  Nor is this a situation where Attorney Rodway discovered a favorable precedent decided after Mr. Goguen's prior counsel withdrew.  *See United States v. Cameron*, 729 F. Supp. 2d 418, 421  (D. Me. 2010), *aff'd in part and rev'd in part* 699 F.3d 621 (1st Cir. 2012).  To the contrary, the facts and law underlying Mr. Goguen's claim of vindictive prosecution were always available to Mr. Goguen's prior attorneys and to Mr. Goguen himself when he was acting pro se.  For whatever reason, these competent attorneys did not raise the issue over the last four years.  Consistent with *Santana-Dones*, the Court declines Mr. Goguen's new counsel's invitation to "second-guess the decisions of prior counsel." 920 F.3d at 81.

Fourth, Mr. Goguen's assertion that an attorney's failure to consider an argument constitutes good cause under Rule 12(c)(3) would substantially undermine Rule 12(b)(3).  Rule 12(b)(3) would not serve its structural purpose of channeling certain motions into pretrial proceedings if an attorney may invoke Rule 12(c)(3) whenever the attorney fails to make a timely filing or discovers a potential argument after a mandatory deadline.  Adopting Mr. Goguen's interpretation of Rule 12(c)(3) would  "put a premium on changing counsel and unfairly advantage the defendant," contrary to the First Circuit's interpretation of Rule 12(c)(3) in *Santana-Dones*.  920 F.3d at 81; *see also Puckett v. United States*, 556 U.S. 129, 134 (2009) (emphasizing the importance of "the contemporaneous-objection rule" which "prevents a litigant from 'sandbagging' the court—remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor").

Fifth, Mr. Goguen has failed to prove any prejudice arising from his prior counsel's failure to raise the vindictive prosecution issue. This independently precludes a finding of good cause under Rule 12(c)(3). Mr. Goguen assumed a difficult burden in seeking the dismissal of an indictment based on vindictive prosecution. *See United States v. Bucci*, 582 F.3d 108, 112 (1st Cir. 2009) (describing pretrial circumstantial vindictive prosecution claims as "difficult" because of "broad" prosecutorial discretion and "the presumption" that a prosecutor acts in good faith). Given the facts of his case and the onerous legal standard for pretrial prosecutorial vindictiveness, Mr. Goguen's motion lacks merit and he therefore suffered no prejudice from his attorneys' failures to raise the argument. The Court incorporates its subsequent analysis of the motion's merits into this prejudice analysis. As Mr. Goguen has not shown cause or prejudice for the more than four-year delay in filing this motion, the Court concludes he has not shown good cause and that the motion is untimely.

## C. Circumstantial Vindictiveness

As mentioned, the merits of Mr. Goguen's motion are integral to the Court's analysis of whether Mr. Goguen has shown prejudice under Rule 12(c)(3)'s good cause standard. Therefore, despite its untimeliness, the Court assesses Mr. Goguen's motion on the merits. The Court would deny Mr. Goguen's motion to dismiss even if it were timely filed and even if good cause excused the untimeliness.

Turning to the merits, the classic situation where courts will apply a presumption of prosecutorial vindictiveness is the government's decision to file more

severe charges following a defendant's successful appeal of a conviction. *See Goodwin*, 457 U.S. at 381 ("a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision"); *see also Tobin*, 598 F. Supp. 2d at 129 (citing cases). The Goguen case does not fit this classic pattern. Instead, Mr. Goguen claims that the Government acted vindictively because it indicted him for possession of child pornography after he prevailed on a sentencing issue in the revocation proceeding for the same underlying conduct. Although Mr. Goguen analogizes his prosecution to a prosecution initiated by the Government after a defendant's successful appeal, *see Def.'s Reply* at 1-2, Mr. Goguen's analogy cannot transform this prosecution into something it is not.

It is "difficult" to prove circumstantial pretrial prosecutorial vindictiveness. *Bucci*, 582 F.3d at 112. Prosecutors possess "broad discretion . . . to determine who should be prosecuted and for what crime." *Id.* In the pretrial setting, there is a "presumption that the prosecutor has exercised that discretion in good faith." *Id.* A prosecutor's "[p]ersistence is not per se vindictive." *See United States v. Jimenez*, No. 19-CR-10278-RWZ, 2020 U.S. Dist. LEXIS 230523, at *2 (D. Mass. Dec. 8, 2020) (finding no vindictiveness where a prosecutor filed a superseding indictment after the defendant's successful motion to suppress). Thus, "[c]ourts should go very slowly in embracing presumptions of prosecutorial vindictiveness in pretrial proceedings." *United States v. Stokes*, 124 F.3d 39, 45 (1st Cir. 1997). For example, the First Circuit has explained that "the mere bringing of a new indictment with added counts is not in itself vindictive behavior." *United States v. Young*, 955 F.2d 99, 108 (1st Cir. 1992).

More specific to Mr. Goguen's case, there is nothing unusual or inherently improper about the government prosecuting both a revocation petition and new criminal charges based on the same underlying conduct. *United States v. Mulero-Algarín*, 866 F.3d 8, 9 (1st Cir. 2017) ("While on supervised release following his serving a 135-month term of imprisonment for a 2002 conviction for a federal drug felony, Héctor Mulero-Algarín committed a second federal drug felony in 2014. In doing so, he committed two offenses: violation of the conditions of his supervised release and the new drug offense"). Indeed, the United States Sentencing Guidelines expressly contemplate that such dual prosecutions will occur for violations of the terms of supervised release that constitute new criminal conduct and recommends that sentences for the violations of supervised release run consecutive to sentences for new criminal conduct. U.S.S.G. § 5G1.3(d), comment n.4(C); *id.* § 7B1.3(f), comment n.4. Nor is it surprising that the Government would bring a petition for revocation of supervised release first, simply because the procedure for initiating a petition for revocation is simpler than the presentation to a grand jury required for an indictment.

Given the procedural history leading to Mr. Goguen's indictment, it is highly relevant that the Sentencing Guidelines anticipate a supervised release violator may essentially face dual proceedings—a revocation proceeding and a formal criminal charge—for new criminal conduct. There will inevitably be cases where the government brings a petition for revocation before it indicts a defendant for the same new criminal conduct and it is also inevitable that defense counsel will secure

victories in the defense of a revocation petition before the indictment is handed down. It cannot be that if an indictment follows a defendant's legal victory on a pending revocation petition, the indictment itself is evidence of a vindictive prosecution.[4]

Accordingly, one way to assess whether the presumption of vindictiveness should apply is to carefully review the record and determine whether the Government had indicated before the adverse supervised release decision that it intended to initiate new criminal charges against the defendant based on the same criminal conduct underlying the petition for revocation. If so, a defendant's argument that the prosecution was vindictive is substantially less persuasive.

To explore whether Mr. Goguen's circumstances warrant a presumption of vindictiveness, the Court sets forth the full chronology leading up to Mr. Goguen's December 14, 2016 indictment and the filing of the pending motions:

1) March 29, 1996: Mr. Goguen was arrested for Sexual Assault – Second Degree in the state of Connecticut;

2) September 6, 1996: Mr. Goguen pleaded guilty to Sexual Assault – Second Degree in the state of Connecticut and was sentenced to ten years of incarceration, execution suspended after four years plus five years of probation;

---

[4]    Defense counsel could achieve victories on a pending petition for revocation, ranging from limiting the potential statutory penalties, recalculating the applicable guideline range, excluding or limiting evidence, or even obtaining a dismissal of the revocation petition.  The price to the government for losing an important issue during the period that a revocation petition is pending but before an indictment is brought cannot be that the government has engaged in a vindictive prosecution when the defendant is subsequently been indicted for the same conduct underlying the revocation petition.

3) January 18, 2006:  Mr. Goguen was arrested for failure to register as a sex offender in the commonwealth of Massachusetts and was later sentenced to six months of incarceration, suspended, and probation until July 13, 2007.

4) January 13, 2007: Mr. Goguen was charged with violating his probation;

5)  February 1, 2007: The Pittsfield District Court in the commonwealth of Massachusetts sentenced Mr. Goguen to six months of incarceration for the probation violation;

6) January 12, 2011: A federal grand jury in the District of Maine indicted Mr. Goguen for failure to register as a sex offender;

7) July 14, 2011: Mr. Goguen pleaded guilty to the failure to register charge;

8) September 14, 2012: Mr. Goguen was sentenced to sixteen months of incarceration and three years of supervised release;

9) January 30, 2013, the federal judgment was amended to reflect a federal sentence of thirty-seven months;

10)  August 16, 2013:  The Government filed a petition to revoke Mr. Goguen's supervised release, alleging he accessed pornography at the Penobscot County law library;

11) September 23, 2013: Mr. Goguen admitted the supervised release violation;

12) September 23, 2013: The Court sentenced Mr. Goguen to five months of imprisonment to be followed by thirty-one months of supervised release.  At the sentencing hearing, the Court imposed an eight-level guideline

enhancement under United States Sentencing Guideline § 2A3.5(b)(1)(C) because Mr. Goguen while in failure to register status, committed a sex offense against a minor;

13) November 10, 2015: The PO discovered child pornography on Mr. Goguen's laptop computer during a home visit;

14) November 13, 2015: The Government acting for the PO filed a second petition to revoke Mr. Goguen's supervised release based on his November 10, 2015 conduct;

15) November 16, 2015: The Government raised the applicability of the five-year mandatory minimum under 18 U.S.C. § 3583(k) at Mr. Goguen's initial appearance on the revocation petition, where he was represented by his prior counsel, Jon Haddow; *Tr. of Proceedings*, at 4:7-19 (ECF No. 385) (*Nov. 16, 2015 Tr.*);

16) November 17, 2015: The Court appoints Attorney Hunter Tzovarras to represent Mr. Goguen; *CJA 20* (Nov. 17, 2015);

17) November 24, 2015: The Government obtains a search warrant for Mr. Goguen's laptop, *United States v. HP 2000 Laptop Computer*, No. 1:15-mj-00250-JCN-1, *Search & Seizure Warrant* (ECF No. 2);

18) January 6, 2016: The Court held a conference of counsel in which defense counsel raised the applicability of the five-year mandatory penalty under 18 U.S.C. § 3583(k) and the Court set a briefing schedule on this issue. At this conference, the Assistant United States Attorney (AUSA) stated:

"[O]ne thing I want the court to be aware of, which I told [defense counsel] previously, there's a possibility Mr. Goguen could be facing additional charges in the relatively near future. That just depends on the way things unfold, not even necessarily the way this case unfolds, but just from a factual perspective;" *United States v. Goguen*, No. 1:11-cr-00003-JAW-1, *Tr. of Proceedings* at 19:1-6 (ECF No. 384) (*Jan. 6, 2016 Conf. Tr.*);

19)  January 21, 2016: Mr. Goguen filed a memorandum to void the five-year mandatory minimum;

20) February 3, 2016: The Government filed an opposing memorandum;

21) February 15, 2016: Mr. Goguen filed a reply;

22) April 19, 2016: Immigration and Customs Enforcement issued a Forensic Examination Report of the Goguen laptop, confirming the presence of child pornography and child erotica on the laptop;

23) July 25, 2016: The Government issued a target letter to Mr. Goguen, referring to "substantial evidence relating to you violating federal laws pertaining to the sexual exploitation of children;"

24) September 16, 2016: The Court received Mr. Goguen's Financial Declaration;

25) September 20, 2016: The Court approved Mr. Goguen's Financial Declaration and appoints Attorney Hunter Tzovarras to represent Mr. Goguen in relation to the July 25, 2016 target letter;

26) November 2, 2016: The Court issued its ruling that it would not apply the five-year mandatory term of imprisonment to the petition for revocation, and instead, the Court would apply a two-year maximum term of incarceration. *Order on Mem. in Opp'n to the Gov't's Req. to Apply the Penalty Ranges under 18 U.S.C. § 3583(k)* at 36 (ECF No. 170). In its order, the Court noted that the allegation in the petition alleged new criminal conduct and its decision neither prevented the Government from initiating a new criminal charge against Mr. Goguen nor encouraged it to do so. *Id.*;

27) November 17, 2016: At a conference of counsel, the AUSA again mentioned the possibility of an indictment, saying "And, Your Honor, let me jump in, if I may, let me give the Court a little bit of background of where we're at and where we're going. During the last, I guess, 10 months from now [defense counsel] and I have actually been in contact throughout this process, and the Government intends to indict Mr. Goguen on a new criminal case pending from the same factual underbelly, and we would do this as soon as maybe December or maybe as late as February, and I wish I could have a better estimate, but with computer forensics, it's something that's quite frankly, outside the scope of things that I can readily interpret, and it is something HSI is currently working on;" *United States v. Goguen*, No. 1:11-cr-00003-JAW-1, *Tr. of Proceedings* at 4:19-5:5 (ECF No. 383) (*Nov. 17, 2016 Conf. Tr.*).

28) December 14, 2016: A federal grand jury indicted Robert Goguen for possession of child pornography charging possession on November 10, 2015;

29) September 15, 2017: Mr. Goguen admitted the supervised release violation and pleaded guilty to new criminal charge of possession of child pornography;

30) October 27, 2020: The Court appointed Attorney Peter Rodway to represent Mr. Goguen in both the revocation petition and the new indictment;

31) February 5, 2021: Attorney Rodway raised the possibility of a motion based on vindictive prosecution;

32) March 5, 2021: Attorney Rodway confirmed he is going to file a motion for dismissal based on vindictive prosecution and for discovery;

33) March 5, 2021: Attorney Rodway filed the motion to dismiss for vindictive prosecution and motion for discovery.

This detailed chronology encourages several factual findings by the Court.

First, the Government viewed Mr. Goguen's November 10, 2015 possession of child pornography as serious new criminal conduct worthy of indictment. The conduct underlying the revocation petition plainly supports a new federal charge, especially when one considers that Mr. Goguen is a recidivist sex offender. To reiterate, Mr. Goguen's criminal history includes numerous sexual offenses, such as a prior conviction for sexual assault of an unconscious minor, a federal conviction for failure to register as a sex offender, his sexual assault of a child, which led to the eight-level sentencing enhancement at his first federal sentencing, and his possession

of child pornography that took place while he was on federal supervised release for failing to register as a sex offender. *Gov't's Opp'n* at 9-10. Thus, in light of Mr. Goguen's conduct and criminal history, the Court finds that the Government viewed his conduct as justifying formal prosecution in addition to the revocation proceeding.

Second, the Court also finds that the Government was considering indicting Mr. Goguen grounded on his November 2015 conduct, which also in part formed the basis of the petition for revocation, as early as January 6, 2016. To reach this finding, the Court relied on AUSA Mullis' statement to the Court at the January 6, 2016 conference of counsel on the revocation petition. *Jan. 6, 2016 Conf. Tr.* at 19:1-6.

Third, the Court finds that the Government continued to pursue a new indictment of Mr. Goguen after January 6, 2016 because it obtained a forensic report of his laptop on April 19, 2016, issued a target letter to Mr. Goguen on July 25, 2016, and Mr. Goguen had received appointed counsel on the target letter about five weeks before the Court issued its November 2, 2016 decision.

Fourth, the Court finds that because the standards of proof between a revocation proceeding and a new criminal charge differ and because speedy trial provisions attach to the Government once a person is indicted, it is unremarkable that the Government determined that it needed to prepare this case differently for indictment than for a petition to revoke supervised release for the same conduct. Indeed, as the Government points out, its preparation of the case against Mr. Goguen proved persuasive because once Mr. Goguen was indicted for the new criminal

conduct, he viewed the Government's case as strong enough to plead guilty to the newly indicted charge. *Id.* at 10.

Mr. Goguen's most salient point involves the timing among three events: the April 19, 2016 forensic report, the Court's November 2, 2016 opinion, and the December 14, 2016 indictment. His theory is that the Government would not have prosecuted him for his possession of child pornography if the Court had ruled that he was subject to a five-year mandatory minimum term of incarceration on the supervised release revocation alone. The theory has some facial attractiveness. The Government could achieve a desired end, namely Mr. Goguen's lengthy incarceration, facing a revocation hearing where the burden of proof is only more probable than not, the rules of evidence are not strictly applied, and a judge, not a jury, is the factfinder.

But the record simply does not support Mr. Goguen's theory. To the contrary, it was the Government, not Mr. Goguen, that first mentioned the potential applicability of the five-year mandatory minimum statutory sentence under 18 U.S.C. § 3583(k) at Mr. Goguen's November 16, 2015 initial appearance on the revocation petition. *Nov. 16, 2015 Tr.* at 4:7-19. Then, on January 6, 2016, Attorney Tzovarras represented he was contemplating a challenge to the applicability of the five-year mandatory minimum under. *Jan. 6, 2016 Tr.* at 4:24-6:7. It was also at the January 6, 2016 conference of counsel that AUSA Mullis mentioned that the Government was considering indicting Mr. Goguen for his new criminal conduct. *Id.* at 18:25-19:15. Although Attorney Tzovarras had placed on the record his prospective motion as early as January 6, 2016, he did not file the motion until January 21, 2016, only after AUSA

Mullis had confirmed that the Government was considering indicting Mr. Goguen for the new criminal conduct. The case for vindictive prosecution thus faces the additional hurdle that the Government had stated on the record that it was contemplating an indictment in the face of Attorney Tzovarras' contemplated but unfiled challenge to the five-year mandatory minimum on the petition for revocation.

Furthermore, the Government had not only informed the Court in January 2016 that it was considering a new indictment, it obtained a forensic report in April 2016, and in July 2016 placed Mr. Goguen on notice through a target letter that it was still considering bringing possession of child pornography charges against him, causing the Court to appoint Attorney Tzovarras to represent him on the anticipated indictment, all before the Court's November 2, 2016 ruling. In other words, the record confirms that the Court's November 2, 2016 ruling did not change the Government's determination to proceed with a new indictment. Instead, the Government simply completed after the November 2, 2016 ruling what it intended to do before the November 2, 2016 ruling.

There is a nagging question is why the Government waited from January 2016 to December 2016 to make its presentation to the grand jury of Mr. Goguen's new criminal conduct. The Court accepts at face value AUSA Mullis' November 17, 2016 explanation that he needed to consult with the forensic experts before presenting the case to the grand jury. Issues of computer forensics can be complex, and, as the Court noted earlier, it is prudent for a prosecutor to have a criminal case ready to proceed

before obtaining an indictment, particularly since speedy trial clock and disclosure obligations flow soon after indictment.

In this case, the Government had a heightened need for accurate forensics. At the January 6, 2016 conference of counsel in the revocation proceeding, Attorney Tzovarras said that he would "certainly" file a motion to suppress if the Government indicted Mr. Goguen for the criminal conduct underlying the revocation petition. *Jan. 6, 2016 Conf. Tr.* at 19:25. Later on, at the November 17, 2016 conference of counsel in the revocation proceeding, Attorney Tzovarras repeated that, in the yet-to-be indicted criminal case, he intended to file a motion to suppress the fruits of the search of the laptop found in Mr. Goguen's apartment. *Nov. 17, 2016 Conf. Tr.* at 6:6-11. Moreover, AUSA Mullis said that "HSI [was] extremely backed up in their ability to do forensics." *Id.* at 9:3. Once again, it is understandable that the Government would refrain from indicting Mr. Goguen until it was assured that it would have the forensics necessary to prevail on Mr. Goguen's imminent motion to suppress. True to his word, Attorney Tzovarras filed the motion to suppress on January 22, 2017, approximately one month after the Government indicted Mr. Goguen. *Mot. to Suppress.*

Circumstantially, the Court concludes that the Government's delay in indicting Mr. Goguen occurred against the backdrop of an imminent motion to suppress. Thus, even though the Government produced no new forensic report between April 2016 and Mr. Goguen's December 2016 indictment, the Court accepts

that the Government's need to consult with HSI, interpret the report, and determine if the report could survive the motion to suppress, was one factor leading to the delay.

In addition, to conclude that the Government's prosecution of Mr. Goguen was vindictive or initiated in retaliation for his November 2, 2016 victory on the available penalty provisions for the revocation petition, the Court would be required to discount AUSA Mullis' repeated representations to the Court. First, at the January 6, 2016 conference, AUSA Mullis said that he had spoken with Attorney Tzovarras about potentially indicting Mr. Goguen, which Attorney Tzovarras did not dispute. *Jan. 6, 2016 Tr.* at 19:1-4. Second, on November 17, 2016, AUSA Mullis said that the Government had been contemplating Mr. Goguen's indictment for the last ten months and that he had been in touch with Attorney Tzovarras during the ten-month interval concerning the prospective indictment:

> During the last, I guess, 10 months from now, Mr. Tzovarras and I have actually been in contact throughout this process, and the Government intends to indict Mr. Goguen on a new criminal case from the same factual underbelly, and we would be doing this as soon as maybe December and as late as maybe February . . . .

*Nov. 17, 2016 Conf. Tr.* at 4:21-5-1. Attorney Tzovarras was present at both conferences and if AUSA Mullis misrepresented a fact within Attorney Tzovarras' personal knowledge to the Court concerning the Government's longstanding intention to indict Mr. Goguen, he could have and should have corrected the record. He did not. The Court, therefore, finds not only that AUSA Mullis was building the Government's case for a new indictment against Mr. Goguen based on the presence of child pornography on his computer in the fall of 2015, but that AUSA Mullis had

contacted Mr. Goguen's defense counsel as AUSA Mullis completed his investigation of the case for presentation to the grand jury.

With these findings, the Court does not find that it should apply the presumption of vindictive prosecution on the facts in this record because Mr. Goguen has not "demonstrate[ed] circumstances that reveal a sufficient likelihood of vindictiveness to warrant a presumption of vindictiveness." *Jenkins*, 537 F.3d at 3. Furthermore, if the Court applied the presumption of vindictiveness to these facts, it would conclude that the Government successfully rebutted the presumption "by showing objective reasons for its charges." *Id.*

### D. Discovery

Finally, the Court addresses Mr. Goguen's request for discovery concerning the Government's decision to charge him with new criminal conduct based on the November 2015 incident. Here, after Mr. Goguen filed his motion, the Court explained its understanding of the sequence and asked AUSA Todd Lowell whether the Government would voluntarily reveal information that appeared in its file concerning its decision to indict Mr. Goguen. AUSA Lowell subsequently revealed that his search for relevant emails and memoranda to file concerning AUSA Mullis' decision-making process and his communication with Attorney Tzovarras had revealed no documents. As AUSA Mullis is no longer with the United States Attorney's Office in the District of Maine but is with another prosecutorial district elsewhere, AUSA Lowell represented that he had spoken to AUSA Mullis and AUSA Mullis confirmed that it was not his practice to reduce the substance of conversations

with defense counsel to writing or to write memos to file regarding the presentation of matters to a grand jury. Based on this representation, which the Court accepts, the Court denies Mr. Goguen's motion for discovery.[5]

## V.  CONCLUSION

The Court DENIES Robert Goguen's Motion to Dismiss for Vindictive Prosecution (ECF No. 184) and DENIES his Motion for Discovery Regarding Vindictive Prosecution (ECF No. 185).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of June, 2021.

---

[5]     As Attorney Tzovarras was Mr. Goguen's prior defense counsel, Mr. Goguen should have access to Attorney Tzovarras' side of any email exchanges with AUSA Mullis. The Court need not order discovery on materials that Mr. Goguen could obtain without a court order.