UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ROBERT FREDERICK GOGUEN,    )
    )
    Petitioner,    )
    )    1:11-cr-00003-JAW
    v.    )    1:17-cv-00492-JAW
    )    1:16-cr-00167-JAW
UNITED STATES OF AMERICA,    )    1:24-cv-00273-JAW
    )
    Respondent    )

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTIONS,
RECOMMENDED DECISION ON MOTION FOR RELEASE, AND
ORDER ON MOTION FOR AN EVIDENTIARY HEARING**

Petitioner moves pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence in two related cases. (Motion, 1:11-cr-00003-JAW, ECF No. 442; Motion, 1:16-cr-00167-JAW, ECF No. 248.)

In the first federal case, which began in 2011, Petitioner pled guilty and was convicted of failing to register and update his registration as a sex offender; the Court sentenced Petitioner to thirty-seven months in prison to be followed by three years of supervised release. (Amended Judgment, 1:11-cr-00003-JAW, ECF No. 90.) Petitioner did not file a direct appeal. After Petitioner was released from prison, the Court twice revoked his supervised release and imposed additional terms of incarceration. (Revocation Judgments, 1:11-cr-00003-JAW, ECF Nos. 113, 404.)

In the second federal case, which began in 2016, Petitioner pled guilty to possession of child pornography, unsuccessfully sought to withdraw his guilty plea, and was convicted and sentenced to 168 months in prison to be followed by 20 years of supervised release.

(Orders, 1:16-cr-00167-JAW, ECF Nos. 120, 159; Judgment, 1:16-cr-00167-JAW, ECF No. 205.)  The First Circuit affirmed.  *United States v. Goguen*, No. 21-1741, 2023 WL 2662911, at *1 (1st Cir. Jan. 25, 2023).

Petitioner asserts several claims, including that his guilty pleas were not valid because he received ineffective assistance of counsel.  The Government contends that the motions should be dismissed because they represent second or successive habeas petitions, because they were not filed within the statute of limitations, and because they otherwise lack merit.  (Response, 1:11-cr-00003-JAW, ECF No. 458; Response, 1:16-cr-00167-JAW, ECF No. 261.)

Following a review of the record and after consideration of Petitioner's motions and the Government's requests for dismissal, I recommend the Court grant the Government's requests and dismiss the motions.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

A.    State Convictions and Maine Residence

The charges and records in the federal cases revealed two relevant state court cases against Petitioner.  In 1996, Petitioner was convicted in Connecticut state court for a second degree sexual assault involving an intoxicated and unconscious sixteen-year-old; Petitioner was sentenced to ten years in prison with six years suspended.  He was released in April 2000.  In August 2006, Petitioner was convicted in Massachusetts for failing to register as a sex offender; Petitioner was sentenced to six months in prison with all six months suspended, to be followed by eleven months of probation.

In August 2009, Petitioner applied for and obtained a Maine driver's license with a Brooksville, Maine address listed as his residence.  In a July 2010 meeting with police, Petitioner told the officers that he had lived in Maine for sixteen months and had a valid driver's license.

## B.    2011 Federal Criminal Case and First Revocation Proceeding

Although Petitioner moved to Maine, the Maine Bureau of Identification had no record that Petitioner had ever registered with the Maine Sex Offender Registry.  In January 2011, the grand jury indicted Petitioner for knowingly failing to register and update his registration as required under the Sex Offender Registration and Notification Act ("SORNA") in violation of 18 U.S.C. § 2250(a).  (Indictment, 1:11-cr-00003-JAW, ECF No. 1.)  The indictment referred to the 1996 prior conviction in Connecticut.  (*Id.*)  In July 2011, Petitioner pleaded guilty.  (Change of Plea Hearing, 1:11-cr-00003-JAW, ECF No. 43.)  The Court sentenced Petitioner to a term of thirty-seven months in prison, to be followed by a term of three years of supervised release.  (Amended Judgment, 1:11-cr-00003-JAW, ECF No. 90.)  Petitioner did not appeal from the conviction or the sentence.

Petitioner served the term of incarceration and began the term of supervised release in May 2013.  (Petition for Arrest, 1:11-cr-00003-JAW, ECF No. 96.)  Shortly thereafter, Petitioner was found in possession of a laptop computer that contained adult pornography; with Petitioner's consent, the Court modified the conditions of supervised release to require that Petitioner comply with the computer monitoring program and allow the probation office to conduct periodic unannounced examinations of his computers based on reasonable

suspicion of evidence of contraband evidence or a violation of supervision. (Order, 1:11-cr-00003-JAW, ECF No. 95.)

In August 2013, Petitioner was arrested for violating a condition of supervised release, which condition required that Petitioner follow the terms of his sex offender treatment, by viewing pornography while he was at the Penobscot County Judicial Center law library. (Petition for Arrest at 1-2, ECF No. 96.) In September 2013, Petitioner admitted the violation and the Court sentenced Petitioner to five months in prison to be followed by thirty-one months of supervised release. (First Revocation Judgment, 1:11-cr-00003-JAW, ECF No. 113.) At the hearing, the Court ordered that Petitioner must comply with the conditions previously imposed, including the May 2013 amendment regarding the computer monitoring and search agreement, but the first revocation judgment did not explicitly identify the computer monitoring and search provision as a special condition of supervised release. (*See* Order at 44–45, 1:11-cr-00003-JAW, ECF No. 350.) Instead, the first revocation judgment contained the previous condition that Petitioner shall submit to searches of his residence and any other premises under his dominion and control, and fully participate in sex offender treatment as directed by the probation officer. (*Id.*) Petitioner filed an appeal from the first revocation judgment; in October 2014, the First Circuit affirmed. (Judgment of the Court of Appeals, 1:11-cr-00003-JAW, ECF No. 142.)

## C. Second Revocation Proceeding and 2016 Criminal Case

After receiving an anonymous tip regarding Petitioner's conduct, probation officers performed a home inspection in October 2015, seized a laptop from Petitioner's apartment, and discovered that the laptop contained pornographic images and video, including child

pornography. (Motion for Warrant, 1:11-cr-00003-JAW, ECF No. 144.) Petitioner was arrested for two alleged violations of his supervised release. (Arrest Warrant, 1:11-cr-00003-JAW, ECF No. 146.) As the matter proceeded, Petitioner sought to avoid certain penalty enhancements based on an issue regarding the applicable maximum penalties. (Memorandum on § 3583(k) Penalties, 1:11-cr-00003-JAW, ECF No. 163.) In November 2016, because Petitioner had previously been misinformed of the maximum penalties he could face for a violation of the terms of supervised release, the Court limited the maximum possible penalty to two years in prison. (Order, 1:11-cr-00003-JAW, ECF No. 170.)

In December 2016, the grand jury issued a new indictment charging Petitioner with possessing child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2252(b)(2), and 2256(8)(a). (Indictment, 1:16-cr-00167-JAW, ECF No. 1.) In January 2017, within both the second revocation proceeding and the new federal criminal case, Petitioner sought to suppress the evidence discovered on the laptop. (Motions to Suppress, 1:11-cr-00003-JAW, ECF No. 174; 1:16-cr-00167-JAW, ECF No. 21.) In June 2017, the Court denied the motions. (Recommended Decision, 1:11-cr-00003-JAW, ECF No. 186, 1:16-cr-00167-JAW, ECF No. 44; Order, 1:11-cr-00003-JAW, ECF No. 190; 1:16-cr-00167-JAW, ECF No. 48.) At a hearing in September 2017, Petitioner admitted the two alleged violations of the conditions of supervision and pled guilty to the new criminal offense. (Second Revocation Hearing, 1:11-cr-00003-JAW, ECF No. 193; Change of Plea Hearing, 1:16-cr-00167-JAW, ECF No. 64.)

### D.    First § 2255 Motion in the 2011 Criminal Case

In December 2017, Petitioner filed a document identifying three of his prior attorneys and referring to ineffective assistance of counsel; the Court construed the filing as an attempt to raise postconviction claims within the 2011 case[1] and directed the Clerk to mail a § 2255 motion form to Petitioner so that he could assert his claims in the ordinary manner if he wished to do so; Petitioner extensively supplemented his § 2255 motion under the docket number of the 2011 case.  (Section 2255 Motion, 1:11-cr-00003-JAW, ECF No. 194; Order, 1:11-cr-00003-JAW, ECF No. 195; Supplements to § 2255 Motion, 1:11-cr-00003-JAW, ECF Nos. 199, 236; Motions to Amend, 1:11-cr-00003-JAW, ECF Nos. 204, 215, 252.)

In September 2018, I recommended that the § 2255 motion be denied because the claims asserted regarding the original judgment and the first revocation judgment were barred by the one-year statute of limitations; the Court adopted the recommended decision in February 2019 over Petitioner's objection.  (Recommended Decision on § 2255 Motion, 1:11-cr-00003-JAW, ECF No. 253; Order, 1:11-cr-00003-JAW, ECF No. 280.)   In February 2019, Petitioner filed an appeal from the denial of the § 2255 motion; the First Circuit later affirmed.  (Notice of Appeal, 1:11-cr-00003-JAW, ECF No. 281; Judgment of the Court of Appeals, 1:11-cr-00003-JAW, ECF No. 324.)

---

[1] Two of the attorneys Petitioner named in the filing had worked on Petitioner's 2011 case and not the 2016 case.  The third attorney that Petitioner named in the filing evidently worked on one of Petitioner's prior state court cases and was not involved in either the 2011 federal case or the 2016 federal case.

6

### E.    Motions to Withdraw Admissions in Second Revocation Proceeding and Motions to Withdraw Guilty Plea in 2016 Criminal Case

In April 2019, Petitioner, through counsel, filed motions to withdraw his admissions to the revocation petition and to withdraw his guilty plea in the 2016 criminal case.  (First Motion to Withdraw Guilty Pleas, 1:11-cr-00003-JAW, ECF No. 289, 1:16-cr-00167-JAW, ECF No. 113.)  In September 2019, the Court determined that Petitioner had not established a fair and just reason to withdraw his admissions and guilty plea.  (Order on First Motion to Withdraw Guilty Pleas, 1:11-cr-00003-JAW, ECF No. 293, 1:16-cr-00167-JAW, ECF No. 120.)  In January 2020, Petitioner filed a pro se motion renewing his effort to set aside his admissions and guilty plea.  (Second Motion to Withdraw Guilty Pleas, 1:11-cr-00003-JAW, ECF No. 312, 1:16-cr-00167-JAW, ECF Nos. 132, 135.)  In July 2020, the Court denied the pro se motion as well.  (Order on Second Motion to Withdraw Guilty Pleas, 1:11-cr-00003-JAW, ECF No. 350, 1:16-cr-00167-JAW, ECF No. 159.)

### F.    Rule 60(b) Motion / Second § 2255 Motion in the 2011 Criminal Case

In July 2021, citing Federal Rule of Civil Procedure 60(b), Petitioner filed a motion for relief from the Court's order denying his first § 2255 motion.  (Motion, 1:11-cr-00003-JAW, ECF No. 390.)   Petitioner also filed a proposed amended § 2255 motion.  (Attachment, 1:11-cr-00003-JAW, ECF No. 390-1.)   In September 2021, I issued a recommended decision noting that much of Petitioner's filings were likely barred by the gatekeeping provisions on second or successive habeas motions, and that the Court could consider at least some of the arguments without precertification from the First Circuit because the arguments regarding the § 2255 statute of limitations were arguably within the

proper scope of Rule 60(b). (Recommended Decision at 6–8, 1:11-cr-00003-JAW, ECF No. 400.) Nevertheless, I concluded that the arguments that might properly be considered failed because Petitioner filed the motion long after the time limits applicable to a Rule 60(b) motion and because the arguments lacked merit. (*Id.*) The Court later adopted the recommended decision over Petitioner's objection, and Petitioner filed an appeal from the decision. (Order, 1:11-cr-00003-JAW, ECF No. 417; Notice of Appeal, 1:11-cr-00003-JAW, ECF No. 419.)

## G.    Combined Sentencing and Appeals

In September 2021, the Court held a combined sentencing hearing for the 2016 case and the second revocation proceeding within the 2011 case. (Sentencing Hearing, 1:11-cr-00003-JAW, ECF No. 402, 1:16-cr-00167-JAW, ECF No. 203.) For the violation of supervised release, the Court calculated a guideline range of 8 to 14 months in prison and a statutory range of 24 months. (Sentencing Transcript at 66–67, 1:11-cr-00003-JAW, ECF No. 414, 1:16-cr-00167-JAW, ECF No. 211.) For the new criminal offense, the Court calculated a guideline range of 135 to 168 months in prison and a statutory range of 120 to 240 months. (*Id.* at 65–66.) The Court sentenced Petitioner to 168 months incarceration and twenty years of supervised release for the new criminal offense and 24 months incarceration for the violation of supervised release, to be served consecutively. (*Id.* at 83–

8

84; Second Revocation Judgment, 1:11-cr-00003-JAW, ECF No. 404; Judgment, 1:16-cr-00167-JAW, ECF No. 205.)

Petitioner filed appeals in both cases; the First Circuit consolidated the appeals and affirmed in January 2023.  (Judgment of the Court of Appeals, 1:11-cr-00003-JAW, ECF No. 432, 1:16-cr-00167-JAW, ECF No. 219.)

## H.    Additional Postconviction Motions and Rule 60(b) Appeal

In November 2023, the Court appointed counsel and instructed the Probation Office to investigate whether Petitioner was entitled to a sentence reduction in the 2016 case following a potentially relevant guideline amendment adopted by the United States Sentencing Commission.  (Order, 1:16-cr-00167-JAW, ECF No. 223; Sua Sponte Motion, 1:16-cr-00167-JAW, ECF No. 224.)  In January 2024, the Government and Petitioner's counsel jointly moved to reduce the term of incarceration in the 2016 case to 151 months. (Joint Motion to Reduce Sentence, 1:16-cr-00167-JAW, ECF No. 232.)  The Court expressed concern about the request and deferred ruling on the motions to modify Petitioner's sentence.  (Order, 1:16-cr-00167-JAW, ECF No. 234.)  Because he intended to file and litigate § 2255 motions in both cases before pursuing a sentence modification, at Petitioner's request, the Court later dismissed without prejudice the motion to reduce his sentence.  (Motion to Dismiss Sua Sponte Motion for Sentence Modification, 1:16-cr-00167-JAW, ECF No. 244; Order, 1:16-cr-00167-JAW, ECF No. 245.)

Also in January 2024, Petitioner wrote to the Court asking to extend by sixty days the deadline for him to file a § 2255 motion in both cases, asserting that staff at the Bureau of Prisons lost the documents Petitioner was preparing to file; the letter was docketed as a

motion in both cases.  (Motion to Extend Time, 1:11-cr-00003-JAW, ECF No. 440, 1:16-cr-00167-JAW, ECF No. 229.)  In February 2024, the Court granted the motions in both cases without commenting on Petitioner's stated reason for the extension.  (Order, 1:11-cr-00003-JAW, ECF No. 441; Order, 1:16-cr-00167-JAW, ECF No. 233.)

In April 2024, Petitioner filed the current § 2255 motion in the 2011 case.  (Third § 2555 Motion, 1:11-cr-00003-JAW, ECF No. 442.)  Petitioner, through counsel, moved to extend the deadline to June 18, 2024, to file a response to a different motion, and in a pro se letter attached to the motion, requested more time to file a § 2255 motion in the 2016 case.  (Motion to Extend Time, 1:16-cr-00167-JAW, ECF Nos. 239, 239-1.)  The Court granted the motion. (Order, 1:16-cr-00167-JAW, ECF No. 242.)  In July 2024, Petitioner filed the § 2255 motion in the 2016 case.  (Fourth § 2255 Motion, 1:16-cr-00167-JAW, ECF No. 248.)

In January 2025, the First Circuit affirmed the Court's decision regarding the Rule 60(b) motion, which was in substance a second § 2255 motion in the 2011 case.  (Judgment of the Court of Appeals, 1:11-cr-00003-JAW, ECF No. 462.)

## DISCUSSION

### A.    Second or Successive § 2255 Motions

The Court lacks jurisdiction to consider a second or successive petition unless the First Circuit has specifically authorized the Court to consider it.  *Trenkler v. United States*, 536 F.3d 85, 96 (1st Cir. 2008) ("We have interpreted [section 2255(h)] as 'stripping the district court of jurisdiction over a second or successive habeas petition unless and until the court of appeals has decreed that it may go forward'") (quoting *Pratt v. United States*,

129 F.3d 54, 57 (1st Cir. 1997)).[2]  The record lacks any evidence to suggest the First Circuit has authorized Petitioner to file a second or successive § 2255 motion.  To the contrary, the First Circuit previously concluded that Petitioner's prior Rule 60(b) motion was in substance a prohibited second or successive petition and did not authorize the district court to consider his claims.

The current motions are not barred, however, if they are not considered "second or successive" motions under the Antiterrorism and Effective Death Penalty Act (AEDPA.) The AEDPA did not define the term "second or successive petition," which is instead "a term of art" in the context of the Supreme Court's habeas corpus case law.  *Slack v. McDaniel*, 529 U.S. 473, 486 (2000).  "Not every literally second or successive § 2255 petition is second or successive for purposes of AEDPA."  *Sustache-Rivera v. United States*, 221 F.3d 8, 12 (1st Cir. 2000).  A later-filed petition may proceed in the district court without preauthorization in some circumstances, including where: (1) the prior petition was withdrawn or dismissed for technical or procedural reasons unrelated to the

---

[2] Section 2255(h) provides that:

> [a] second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain –
>
>> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
>>
>> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

Section 2244(b)(3)(A) states: "Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."  *See also* First Circuit Rule 22.1.

merits, such as failure to pay a filing fee, *see Stewart v. Martinez-Villareal*, 523 U.S. 637, 645 (1998), (2) the claims challenge an intervening criminal judgment, such as one following a plenary resentencing after a reversal on appeal, s*ee Magwood v. Patterson*, 561 U.S. 320, 339 (2010), or (3) the claims were previously not ripe, meaning that the petitioner did not have a prior opportunity to assert the claims.  S*ee Panetti v. Quarterman*, 551 U.S. 930, 947 (2007); *Restucci v. Bender*, 599 F.3d 8, 9–10 (1st Cir. 2010).

The Government argues that both current § 2255 motions are barred because most of Petitioner's claims within the motions are the same, the claims could have been or were raised in the earlier § 2255 motions, and the Court sentenced Petitioner at one combined hearing for both the new criminal conduct and the revocation of supervised release.   The Government's argument, however, is inconsistent with the reasoning in *Magwood*, where the Supreme Court held that the second or successive provision "must be interpreted with respect to the judgment challenged." *Magwood*, 561 U.S. at 332–33.  The *Magwood* Court allowed a subsequent petition to proceed because it challenged a new judgment even though the petition raised issues that could have been raised in the prior petition attacking the prior judgment because "[a]n error made a second time is still a new error." *Id.* at 339.

Petitioner's prior § 2255 motions attacked the first judgment in the 2011 case.  The prior § 2255 motions did not attack the judgment in the 2016 case.  They could not have challenged the judgment in the 2016 case because that criminal proceeding was not yet complete at the time of the second motion. The Government also contends that the revocation judgment and the judgment in the 2016 case constitute one judgment.  Although there was one sentencing hearing and the same underlying conduct provided the basis for

both the revocation and the new case, the Court imposed separate sentences on separate judgment forms, and the judgments were filed in separate cases. The 2016 case involved a new offense with an independent statutory range, whereas the revocation was necessarily tied to the first judgment in the 2011 case, with the maximum penalty impacted by the prior time spent in prison and the maximum penalty for the original crime. *See Johnson v. United States*, 529 U.S. 694, 701 (2000) (attributing postrevocation penalties to the original conviction); *United States v. Haymond*, 588 U.S. 634, 648 (2019). Under the circumstances, consistent with the Supreme Court's reasoning and decision in *Magwood*, there is no subject matter jurisdiction obstacle for the current § 2255 motion in the 2016 case because the motion challenges a new intervening judgment and thus does not qualify as a second or successive petition.

Petitioner's current § 2255 motion in the 2011 case is a different matter, however. Petitioner has twice attacked the original judgment in the 2011 case, and the Court and the First Circuit have already determined that the second attempt generated the second or successive gatekeeping provisions. The Court lacks jurisdiction to consider the claims in the current § 2255 motion within the 2011 case, therefore, unless the circumstances of the second revocation permit it.

A claim challenging a revocation judgment is not necessarily second or successive if the claim was not ripe during the prior petition attacking the original sentence. *See United States v. Buenrostro*, 638 F.3d 720, 725 (9th Cir. 2011) ("A prisoner whose conviction and sentence were tested long ago may still file petitions relating to denial of parole, revocation of a suspended sentence, and the like because such claims were not ripe

for adjudication at the conclusion of the prisoner's first federal habeas proceeding"); *D'amario III v. United States*, No. 5-340, 2010 WL 3780977, at *1 (D.R.I. Sept. 20, 2010) ("the First Circuit Court of Appeals concluded . . . that the District Court was mistaken in the transfers because the motions were not second or successive § 2255 motions as they challenged [Petitioner's] . . . revocations of supervised release, not his underlying convictions").  However, persuasive authority teaches that a revocation judgment is not equivalent to a plenary resentencing and does not qualify as an entirely new intervening judgment under *Magwood*, which means a petitioner is not permitted to raise claims attacking the original judgment that were ripe at the time of the prior petition.  *See Villarreal v. United States*, No. 5:21-CV-05040-KES, 2022 WL 22289054, at *1 (D.S.D. Apr. 20, 2022) (finding no jurisdiction because subsequent petition raised "claims arising out of [Petitioner's] original 2010 prosecution" and were not "based on the several revocations of supervised release that have occurred since [Petitioner's] release from prison").  As one court explained:

> The sanctions imposed for defendant's violations of supervised release did not reset the habeas clock pursuant to § 2255 to permit defendant to challenge his original guilty pleas. . . [T]o hold otherwise would give defendants an incentive to violate supervised release in order to restart the clock on their original conviction. . . Moreover, even if the revocation of supervised release reset the habeas counter, it would only do so with respect to the terms of defendant's supervised release and would not permit defendant to challenge his underlying sentence and conviction.

*United States v. Akhter*, No. 1:15-CR-124, 2020 WL 4353560, at *5 (E.D. Va. July 29, 2020).

Applying the reasoning in this case, the Court lacks jurisdiction to consider the claims within the current § 2255 motion in the 2011 case that challenge the validity of the prior state court convictions, the original federal conviction and sentence, or the first revocation judgment, (*see* Third § 2255 Motion at 1–16, 19–20), but the Court has jurisdiction to consider the claims in that motion challenging the events after October 2015 and impacting the second revocation judgment. (*See* Third § 2255 Motion at 16–25.)

**B.    Statute of Limitations**

The Government contends that the motions are barred by the statute of limitations. "A 1-year period of limitation" applies to a collateral attack on a federal conviction. 28 U.S.C. § 2255(f). The period begins to run from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* When there are multiple claims at issue, "the period of limitation in 28 U.S.C. § 2255(f) should be applied on a claim-by-claim basis." *Capozzi v. United States*, 768 F.3d 32, 33 (1st Cir. 2014).

Petitioner does not allege, nor does the record reflect, that the Government imposed an impediment to a timely filing; Petitioner's claims do not rely on a right newly recognized

by the Supreme Court and made retroactively applicable to cases on collateral review; and Petitioner does not allege newly discovered facts in support of his section 2255 claims. Because paragraphs (2), (3), and (4) do not apply, therefore, the limitations period began to run when the relevant judgment of conviction became final.

The Court entered the two relevant judgments on September 20, 2021. The First Circuit affirmed in the consolidated appeals on January 25, 2023, and issued its mandate on February 16, 2023. Petitioner then had ninety days to seek a writ of certiorari from the United States Supreme Court. Sup. Ct. R. 13. Because Petitioner did not file a request for a writ of certiorari, Petitioner's judgments became final following the expiration of the ninety-day period on May 17, 2023. *See Clay v. United States*, 537 U.S. 522, 532 (2003) ("We hold that, for federal criminal defendants who do not file a petition for certiorari with this Court on direct review, § 2255's one-year limitation period starts to run when the time for seeking such review expires"). The limitation period for filing a § 2255 motion to challenge the judgments was set to expire one year later, on May 17, 2024. *See Rogers v. United States*, 180 F.3d 349, 355 n.13 (1st Cir. 1999) ("When a statute of limitations is measured in years, the last day for instituting the action is the anniversary date of the start of the limitations period") (quotation omitted). The Court received the current § 2255 motion in the 2011 case on April 8, 2024, more than one month before the deadline. The statute of limitations, therefore, does not present an obstacle to the claims within the

Court's subject matter jurisdiction contained in the current § 2255 motion challenging the second revocation judgment.[3]

Petitioner's current § 2255 motion in the 2016 case requires further analysis. On January 16, 2024, Petitioner filed a motion to extend the limitations period for sixty days; the Court granted the motion on February 8, 2024, and set the deadline for sixty days later, which was April 8, 2024. On April 17, 2024, defense counsel requested an extension of time to June 18, 2024, to file a response to a pending motion and attached to the motion Petitioner's pro se letter request to extend the time to file a § 2255 motion. Petitioner's pro se letter request was received by the court separately on April 15, 2024. On April 17, 2024, the Court granted the counseled motion, set a deadline of June 18, 2024, and dismissed as moot the pro se letter request.

Petitioner signed and dated the current § 2255 motion in the 2016 case on May 11, 2024, approximately one week before the limitations period would have expired without any extensions, and approximately one month before the twice extended deadline. The Court did not receive Petitioner's motion through the mail until July 29, 2024, however, approximately ten weeks after the original deadline, and approximately six weeks after the twice extended deadline.

---

[3] The Government argues that the motion is untimely because Petitioner's first § 2255 motion in December 2017 was dismissed as untimely. The argument fails because, as discussed above, *see supra* Part A, postconviction motions must be analyzed with reference to the particular judgment directing the prisoner's confinement. The first § 2255 motion attacked the original judgment and first revocation judgment, which ordered the periods of confinement that Petitioner has already served. The current § 2255 motion challenges a related but different proceeding and judgment which occurred after the first § 2255 proceedings were completed.

In response to the Government's argument that the statute of limitations barred the § 2255 motion, Petitioner cited the prison mailbox rule.  (Reply at 4, 1:16-cr-00167-JAW, ECF No. 254.)   Unlike ordinary civil cases, the filing date for a § 2255 motion is not determined by the date on which the Court receives the document; the filing date is governed instead by the prison mailbox rule:

> A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing. If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

Rule 3(d) of the Rules Governing Section 2255 Proceedings.  Petitioner later asserted under penalty of perjury that he had deposited the motion "into the FCI Jesup inmate mailbox on 12 May 2024, and postage was prepaid."  (Supplemental Brief, 1:16-cr-00167-JAW, ECF No. 257.)

Petitioner satisfied several of the elements of Rule 3(d), as the Government implicitly concedes.  Petitioner set forth the asserted date of deposit, used prepaid postage, and his filings contained sworn statements consistent with the format set forth in 28 U.S.C. § 1746.  Petitioner, however, failed to establish one element of Rule 3(d): he did not assert that he used the prison's legal mail system.  Rather, his statement that he deposited the § 2255 motion into the "inmate mailbox" is consistent with the use of the ordinary or non-legal mail system at the prison.  In the Government's subsequent response, it emphasized the omission of any assertion that Petitioner used the prison's system for legal mail rather than the prison's system for ordinary non-legal mail, and Petitioner did

18

not reply despite having the opportunity to do so.  Under the circumstances, Petitioner cannot rely on the prison mailbox rule.[4]

Without the benefit of the prison mailbox rule, the § 2255 motion in the 2016 case is deemed to have been filed on July 29, 2024, approximately six weeks after the expiration of the limitations period.  The claims, therefore, are barred by the one-year statute of limitations unless a recognized exception applies.[5]

"[T]he AEDPA statute of limitations defense is not jurisdictional" and "is subject to equitable tolling in appropriate cases."  *Holland v. Florida*, 560 U.S. 631, 645 (2010) (internal quotations omitted).  "To obtain tolling . . . a petitioner bears a substantial burden to establish . . . that he exercised reasonable diligence in trying to preserve his rights but was prevented from timely filing by extraordinary circumstances."  *Dominguez v. Duval*, 527 F. App'x 38, 40 (1st Cir. 2013); *see also Trapp v. Spencer*, 479 F.3d 53, 61 (1st Cir. 2007) (discussing illustrative cases).  "The diligence prong covers those affairs within the

---

[4] In addition, Petitioner's statements about the date of deposit in the mail are difficult to credit given that he has mailed many filings over many years in more than one case, and there has apparently been no similar delay for his other filings.  Petitioner did not assert any other such delay, he did not provide an explanation for the cause of the delay, and a cursory review of Petitioner's other filings shows that the time between his stated submission dates and the Court's dates of receipt was ordinarily a few days to approximately one week.  For example, in the middle of the ten-week period in which Petitioner asserted that his § 2255 motion was in the mail, Petitioner filed a different motion dated June 24, 2024, which the Court received just four days later, on June 28, 2024.  (Motion for Summary Judgment, 1:11-cr-00003-JAW, ECF No. 446.)

[5] In its response to the § 2255 motion in the 2016 case, the Government acknowledged that the Court granted the second extension of the deadline to June 18, 2024, for the filing of the § 2255 motion, but the Government raised the question of whether a district court has the authority to consider a request for request to extend the deadline to file a § 2255 motion prior to the filing of the motion. (Response at 5 n.4, 1:16-cr-00167-JAW.)  Because Petitioner's motion was filed after the extended deadline, the Court need not address the Government's observations regarding the Court's ability to extend the deadline.

petitioner's control, while the extraordinary-circumstances prong covers matters outside his control." *Blue v. Medeiros*, 913 F.3d 1, 8 (1st Cir. 2019).

The only potential basis for equitable tolling that Petitioner raised was the unavailability of the law library computers and certain other legal resources for an unspecified period. That allegation, without more, is insufficient to establish exceptional circumstances or diligence. Petitioner has not described the extent and duration of any deprivation of legal resources and how it prevented him from initiating his collateral attack. *See Paulcin v. McDonough*, 259 F. App'x 211, 213 (11th Cir. 2007) (finding equitable tolling unwarranted because the petitioner "failed to allege how his inability to obtain [the] legal materials thwarted his efforts to file a timely federal proceeding"). Petitioner also failed to explain why he needed the additional legal resources to file the § 2255 motion in the 2016 case but evidently did not need the additional resources to file the § 2255 motion in the 2011 case. Further explanation and evidence are particularly necessary here because a comparison of the two § 2255 motions reveal substantial overlap in the claims asserted and arguments presented. Equitable tolling is not warranted.

Petitioner also raises a gateway innocence claim. A sufficient showing of "actual innocence" can provide "a gateway through which a petitioner may pass" to reach the merits of a postconviction challenge despite a procedural default or the expiration of the statute of limitations. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). To establish a gateway innocence claim, a petitioner must show that it is more likely than not that, "in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable

20

doubt." *House v. Bell*, 547 U.S. 518, 538 (2006) (discussing *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

In this case, Petitioner's gateway innocence claim fails because he does not present any new exculpatory evidence regarding his possession of child pornography. Petitioner claims that counsel could have found with further investigation additional evidence regarding alternative users of the laptop, but Petitioner does not present or describe the evidence. Petitioner also asserts that he is "innocent" of various "sentencing factors" or guideline issues that were applied against him, but those issues do not impact an assessment of the evidence as to whether Petitioner possessed child pornography. *See Bousley v. United States*, 523 U.S. 614, 623 (1998) ("It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency").

In sum, Petitioner filed timely the § 2255 motion attacking the second revocation judgment in the 2011 case, but because Petitioner did not file within the limitations period the § 2255 motion in the 2016 case, and because neither equitable tolling nor gateway innocence applies here, dismissal of the § 2255 motion in the 2016 case is warranted.

## C.    The Merits

### 1.  Legal Standards

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence

"is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).

"*[P]ro se* habeas petitions normally should be construed liberally in petitioner's favor." *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The burden is on the section 2255 petitioner to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). When "a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

A collateral challenge is not a substitute for an appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982); *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002). "[A] defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence." *Berthoff*, 308 F.3d at 127–28. Procedural default is an affirmative defense. *Sotirion v. United States*, 617 F.3d 27, 32 (1st Cir. 2010). The First Circuit has recognized that "federal courts have the authority to consider procedural default *sua sponte*." *Rosenthal v. O'Brien,* 713 F.3d 676, 683 (1st Cir. 2013) (citing *Brewer v. Marshall,* 119 F.3d 993, 999 (1st Cir. 1997)); *see also Daniels v. United States*, 532 U.S. 374, 382-83 (2001) (recognizing that "procedural default rules

22

developed in the habeas corpus context apply in § 2255 cases") (citing *Frady*, 456 U.S. at 167-68).

An allegation of ineffective assistance of counsel can excuse a procedural default if the petitioner demonstrates that counsel's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The petitioner must also demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A district court reviewing a claim of ineffective assistance of counsel need not address both prongs of the *Strickland* test because a failure to meet either prong will undermine the claim. *Id.* at 697. If a petitioner's "claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail." *Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002) (per curiam).

Under the law of the case doctrine, "issues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion." *Singleton v. United States*, 26 F.3d 233, 240 (1st Cir. 1994) (internal modifications and quotation marks omitted); *see also Elwell v. United States*, 95 F.3d 1146, 1996 WL 516138 at *5 (1st Cir. 1996) (holding that a petitioner "is not entitled on collateral review to relitigate issues raised on direct appeal, absent an intervening change in the law"); *White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004) (collecting cases and explaining limited exceptions).

"Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003) (citation omitted) (quoting *DiCarlo*, 575 F.2d at 954 (quotation marks omitted)).

Summary dismissal of a motion is permitted when the allegations are "'vague, conclusory, or palpably incredible,'" even "'if the record does not conclusively and expressly belie [the] claim.'" *David*, 134 F.3d at 478 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). A court can reasonably require a petitioner to supply the court with salient details of the claim prior to permitting discovery or a hearing. *Id.* (holding that "the district court did not abuse its discretion in refusing to license a fishing expedition").

### 2. Remaining Claims

The following are Petitioner's discernible and timely claims for which the Court has subject matter jurisdiction in the absence of preauthorization from the First Circuit:

1. Petitioner was deprived of due process because the probation officer and the prosecutor knowingly presented false and misleading evidence, (Third § 2255 Motion at 16–17);
2. Petitioner's third attorney provided ineffective assistance regarding the motion to suppress evidence by failing to:
    (a) investigate and refute the anonymous informant's assertions, (*id.* at 18, 22–23);
    (b) argue that the probation office trespassed by entering Petitioner's apartment, (*id.* at 19);

      (c) investigate and argue adequately that Petitioner could not have violated the condition related to the terms of his treatment because he was not subject to any treatment contract, (*id.* at 19–20);

      (d) investigate and argue adequately that the terms of supervised release did not permit the probation office to search Petitioner's electronic devices, (*id.* at 20);

      (e) argue that evidence obtained from an allegedly unlawful 2013 search of a different laptop was used to support the search warrant of the laptop in this case, (*id.* at 21);

      (f) investigate and argue that the second laptop was not password protected, (*id.* at 21–22); and

      (g) argue that it was suspicious that the probation office did not seize and search his other electronic devices, (*id.* at 23);

3. Petitioner's third attorney also provided ineffective assistance by failing to:

      (a) prepare adequately to argue against the Government's motion to apply enhanced statutory penalties, (*id.* at 23–24); and

      (b) assist Petitioner with his effort to withdraw his guilty pleas and pursue an evidentiary hearing, (*id.* at 24–25); and

4. Petitioner's fourth and fifth attorneys provided ineffective assistance by failing to "adequately prepare" and "properly advise" the Court, by not requesting a hearing to contest the truth of information supporting a search warrant, and by failing to obtain a withdrawal of Petitioner's guilty pleas, (*id.* at 25).

The first claim has previously been considered and rejected. Petitioner initially made his allegations during the proceedings involving the motions to suppress evidence. After the Court determined the facts were consistent with statements of the probation office and the Government, and were contrary to Petitioner's assertions, Petitioner later raised in the second motion to withdraw his guilty plea a due process argument based on the same factual assertions. The Court rejected the argument. (Order on Second Motion to Withdraw Guilt Pleas at 53, 56.) Petitioner has not established a basis for a different result here. Petitioner repeats his allegations but has not presented any new persuasive evidence. Petitioner also raised the issue in his brief on appeal, but the First Circuit affirmed. Because Petitioner does not present any compelling newly discovered evidence and because there

has been no intervening change in the law, the First Circuit's rejection of Petitioner's argument and the law of the case doctrine preclude postconviction relief on that issue.

Petitioner also raised and the Court considered and rejected the seven ineffective assistance claims. In the order on the second motion to withdraw the guilty pleas, the Court discussed at length and rejected the arguments described above as claims 2(a), (*id.* at 14, 52); 2(c), (*id.* at 47–49); 2(d), (*id.* at 49–52); and 3(a), (*id.* at 39–41). The Court also specifically referenced the arguments Petitioner raised previously which are described above as claims 2(b), (*id.* at 14–15); 2(f), (*id.* at 20); 2(g) (*id.* at 15); and 3(b), (*id.* at 10, 60–64); which confirms that the Court at least implicitly rejected the arguments when it denied relief. (*Id.* at 55, (referring to the asserted ineffective assistance claims regarding the third attorney and "conclud[ing] that none passes the *Strickland* test for ineffective assistance of counsel").) Petitioner did not present any newly discovered evidence on those issues, there has been no relevant and material change in the law since July 2020, and Petitioner has not established that there was any error in the Court's prior assessment of the arguments. Because Petitioner raised essentially the same arguments on appeal, the First Circuit's rejection of the arguments also bars postconviction relief here.

To the extent that there are any differences between Petitioner's ineffective assistance arguments here and his comparable arguments asserted previously before this Court and the First Circuit, the claims still fail. For example, Claim 2(e) fails for the same reason the Court rejected explicitly claim 2(d): because the terms of supervised release permitted searches of Petitioner's electronic property in addition to his real property based on reasonable suspicion, if the Government could establish reasonable suspicion, counsel

26

did not act unreasonably in and Petitioner was not prejudiced by the decision not to challenge the use of evidence from the May 2013 laptop search. Petitioner failed to present any persuasive evidence to suggest that the May 2013 laptop search was unsupported by reasonable suspicion. Even if a higher standard for the search applied because the computer monitoring condition was not implemented, the legality of that search became irrelevant after Petitioner admitted the 2013 violations. Furthermore, even if Petitioner was correct about the inability of the probation officer to consider the evidence obtained from the 2013 laptop search, Petitioner has not established that the evidence from that search was necessary to establish reasonable suspicion for the 2015 searches, given the informant's tip and the other evidence the probation office had regarding Petitioner's conduct.

Claim 2(g), that it was suspicious that the probation office did not seize and search his other electronic devices, fails because the negative inference that Petitioner attempts to draw is unfounded. The decision not to seize additional property does not imply that the probation officer had nefarious motives or acted unlawfully regarding the property that was seized. It is conceivable that there could have been other reasons not to seize additional property, including, for example, that Petitioner behaved differently regarding the laptop as compared to other items. Counsel did not act unreasonably in and Petitioner was not prejudiced by the decision not to present such a questionable argument.

Petitioner contends in claim 3(b) that his third attorney failed to act on the Court's suggestion that it was open to conducting an evidentiary hearing on Petitioner's first request to withdraw his guilty pleas. Petitioner, however, has failed to provide or describe

any additional evidence that would have been presented at a hearing and which could alter the result of the proceedings.  To the contrary, the Court previously found that "there is no need for oral argument or an evidentiary hearing" regarding many of the same ineffective assistance arguments presented in the first motion to withdraw the guilty pleas, (Order on First Motion to Withdraw Guilty Pleas at 46 n.6), which finding the Court implicitly adopted a second time by ruling on the subsequent motion without a hearing.

Petitioner argues in claim 4 that his fourth and fifth attorneys provided ineffective assistance by failing to prepare adequately and to secure the withdrawal of Petitioner's guilty pleas.  The vague allegations necessarily fail because they do not identify specific options and decisions from which the Court could analyze the "actual conduct" and "actual performance" of the attorney, *see United States v. Cronic*, 466 U.S. 648, 661–62, 665–66 (1984), and the record refutes any possible inference that either attorney failed to prepare, *see Kimmelman v. Morrison*, 477 U.S. 365, 385 (1986).  Because each of the other claims regarding the prior attorneys fails, the later-appointed attorneys did not provide ineffective assistance by failing to raise the earlier issues that Petitioner cites here.

In sum, the claims that can survive the statute of limitations and the bar on second or successive petitions fail because they were correctly rejected in prior orders, those orders were affirmed on appeal, and because the claims otherwise lack merit.[6]

---

[6] To the extent that there is any question regarding the analysis of the second or successive issue and the statute of limitations issue, I conclude that the other claims Petitioner raises would nevertheless fail for essentially the same reasons discussed in this section. This Court and the First Circuit have already considered and addressed virtually all the underlying issues and found Petitioner's contentions to be without merit.  To the extent that there are any differences between his other claims and those the Court has previously addressed in prior orders that were affirmed on appeal, a review of the issues does not reveal

## CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases; I, therefore, deny Petitioner's motion for an expedited evidentiary hearing.  (Motion, 1:11-cr-00003-JAW, ECF No. 468.)  In addition, I recommend that the Court deny Petitioner's motions for habeas relief under 28 U.S.C. § 2255.  Because I recommend the Court deny the § 2255 motions, I also recommend the Court deny Petitioner's motion for release pending resolution of the § 2255 motions. (Motion, 1:11-cr-00003-JAW, ECF No. 468.)  I further recommend that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## <u>NOTICE</u>

Any objections to the order on the motion for an evidentiary hearing shall be filed within fourteen (14) days in accordance with Federal Rule of Civil Procedure 72.

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen

---

any error or evidence that could establish deficient performance or prejudice from any of counsel's decisions in connection with the revocation proceeding or in the 2016 case.

(14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 3rd day of April, 2025.